**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

**STELLAR IT SOLUTIONS, INC., F/K/A
STELLAR SOFTWARE
NEWORKS,  INC. and KARTIK
KRISHNAMURTHY**

Plaintiffs

,

against

Case No.:        1:18-cv-02015

MEMORANDUM OF SPECIFIC
POINTS AND AUTHORITIES IN
SUPPORT OF PLAINTIFFS'
MOTION TO POSTPONE THE
EFFECTIVENESS OF THE
DEFENDANT'S DECISIONS
AND/OR FOR A PRELIMINARY
INJUNCTION

**UNITED STATES CITIZENSHIP
AND IMMIGRATION SERVICES**

Defendant

<u>TABLE OF CONTENTS</u>

INTRODUCTION 1

REQUIREMENTS FOR POSTPONEMENT OF THE EFFECTIVENESS
 OF AN AGENCY DECISION 1


BRIEF STATEMENT OF THE RELEVANT FACTS 3

ARGUMENT 15

    I.     THE PLAINTIFFS ARE SUBSTANTIALLY LIKELY TO PREVAIL
          ON THE MERITS 15

        **A.** THE COURT HAS SUBJECT JURISDICTION OVER THIS MATTER
           15

        **B.** THE PLAINTIFFS BOTH HAVE STANDING TO BRING THIS
           ACTION 15

        **C.** THE REASONS PROVIDED BY THE DEFENDANT FOR
           ITS DENIAL OF STELLAR'S PETITION WERE ARBITARY
           AND CAPRICIOUS AND NOT IN ACCORDANCE WITH LAW 20

           1.  THE USCIS'S FINDING THAT "THE RECORD REMAINS
                ABSENT OF EVIDENCE REGARDING THE WORK AT
                THE END-CLIENT'S FACILITY" AND THAT STELLAR
                "FAILED TO PROVIDE A STATEMENT OF WORK
                DETAILING THE PROJECT'S OUTLINE, DESCRIPTION
                AND ROLE AND THE BENEFICIARY'S DUTY" WAS
                ARBITRARY AND CAPRICIOUS IN THAT IT RUNS
                DIRECTLY CONTRARY TO THE EVIDENCE IN THE
                RECORD 20


           2.  THE AGENCY'S FINDING THAT STELLAR LACKED AN
                EMPLOYER-EMPLOYEE RELATIONSHIP WITH MR.

KRISHNAMURTY BECAUSE IT HAD NOT PROVEN THAT IT ACTUALLY "SUPERVISE(S) OR OVERSEE(S) THE BENEFICIARY'S WORK WHILE HE PERFORMS HIS DUTIES AT THE CLIENT'S SITE" IS NOT IN ACCORDANCE WITH LAW IN THAT ONLY THE RIGHT TO CONTROL IS REQUIRED 23

3. THE DECISION WAS ALSO NOT IN ACCORDANCE WITH LAW BECAUSE THE END-CLIENT'S REQUIREMENTS ARE IRRELEVANT TO THE REGULATION UNDER WHICH STELLAR ESTABLISHED THAT THE JOB WAS A SPECIALTY OCCUPATION 26

4. THE UNLAWFULNESS OF THE DENIAL OF STELLAR'S PETITION RENDERS THE DENIAL OF MR. KRISHNAMURTHY'S APPLICATION FOR EXTENSION OF STAY UNLAWFUL 29

II.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM IF THE EFFECTIVENESS OF THE DECISION DENYING STELLAR'S PETITION AND MR. KRISHNAMURTHY'S APPLICATION FOR EXTENSION OF STAY IS NOT POSTPONED 29

A. STELLAR WILL SUFFER IRREPARABLE HARM DUE TO ITS UNCOMPENSABLE LOST OF PROFITS 29

B. MR. KRISHNAMURTHY WILL SUFFER IRREPARABLE HARM BY BEING FORCED TO ABANDON HIS APPLICATION FOR EXTENSION OF STAY 30

C. MR. KRISHNAMURTHY WILL SUFFER IRREPARABLE HARM BY BEING DEPRIVED OF A LAWFUL STATUS IF POSTPONEMENT ISN'T GRANTED 31

D. MR. KRISHNAMURTHY'S UNCOMPENSABLE LOSS OF WAGES IS IRREPARABLE AND EXTRAORDINARY HARM 33

III.    DEFENDANT WILL SUFFER NO HARM FROM THE GRANT
        OF POSTPONEMENT 34

IV.     THE PUBLIC INTEREST FAVORS POSTPONEMENT 35

CONCLUSION 35

CERTIFICATE OF SERVICE 36

## INTRODUCTION

The plaintiffs, Stellar IT Solutions, Inc., F/K/A Stellar Software Network, Inc (Stellar) and Karthik Krishnamurthy, have moved the Court pursuant to 5 U.S.C. § 705, or, in the alternative, for a preliminary injunction, to postpone the effectiveness of the denial of Stellar's nonimmigrant visa petition upon Mr. Krishnamurty's behalf and the corresponding denial of Mr. Krishnamurthy's  application for extension of stay, to prevent them both from suffering irreparable harm inasmuch as the failure to postpone these decisions will cost them both extensive and uncompensable economic losses and will soon require Mr. Krishnamurthy to depart the U.S., thereby abandoning his application, as well as subjecting him to the threat of arrest, forced removal and future long term inadmissibility to the United States.

## REQUIREMENTS FOR POSTPONEMENT OF THE EFFECTIVENESS OF AN AGENCY DECISION

5 U.S.C. § 705 provides that:

> On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

It is not clear what the appropriate legal standard is for granting such a postponement. On its face, the statute seems to require only a showing that postponement is necessary to prevent irreparable harm. Some, but not all, courts have held the standard for the grant of such a postponement is the same as for a preliminary injunction. *Compare Valona v. United States*, 165 F.3d 508, 511 (7th Cir.1998) (showing of irreparable harm sufficient to have administrative order postponed) with *State of Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n*, 812 F.2d 288 (6th Cir.1987) (requiring the same standards to postpone an administrative decision as for a preliminary injunction). There do not appear to be any D.C. Circuit or Supreme Court decisions setting forth the appropriate standard for postponement of the effectiveness of an administrative decision.

Although construing section 705 as requiring the same showing as a preliminary injunction appears both contrary to its plain language and to render it superfluous, even assuming that this is the standard, the plaintiffs satisfy it.

On a motion for a preliminary injunction, the district court must balance four factors: (1) the movant's showing of a substantial likelihood of success on the merits, (2) irreparable harm to the movant, (3) substantial harm to the non-movant, and (4)

public interest. *Davis v. Pension Benefit Guar. Corp.,* 571 F.3d 1288, 1291 (2009).[1]

As we will show, the plaintiffs meet each of these standards.

## BRIEF STATEMENT OF THE RELEVANT FACTS

Karthik Krishnamurthy is a native and citizen of India who was lawfully employed in the United States by Stellar Software Network, Inc. (Stellar), an Ohio-based software consulting company, as a computer professional with authorization from the United States Citizenship and Immigration Services (USCIS) from June 14, 2011 to May 31, 2018. Exhibit A at 59-64, Exhibits E & F.[2] He was offered $108,000 per year in base salary in the instant petition. Exhibit A at 11. His education and experience have been evaluated by a professor with the authority to issue college credit for work experience in the computer field as the equivalent of a Bachelor's degree in Management Information Systems from an accredited institution of higher education in the United States.  Exhibit A, at 30-31. On August 29, 2017, Stellar filed a Petition for a Nonimmigrant Worker (Form I-129) with USCIS seeking to continue to   classify Mr. Krishnamurthy as a temporary worker in a specialty

---

[1] In *Davis* the Court noted that "(t)he Supreme Court has recently addressed the standard for a preliminary injunction. *See Winter v. NRDC*, 129 S. Ct. 365, 375 (2009) (holding that irreparable injury must be likely, 'not just a possibility'). We note that the analysis in *Winter* could be read to create a more demanding burden, although the decision does not squarely discuss whether the four factors are to be balanced on a sliding scale. *See id.* at 392 (Ginsburg, J., dissenting) ('[C]ourts have evaluated claims for equitable relief on a "sliding scale,"' sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high. This Court has never rejected that formulation, and I do not believe it does so today.')." Here as in *Davis* this Court need not decide which standard applies because plaintiff succeeds even without considering the "sliding scale" analysis of *Davenport*.

[2] References to exhibits refer to the exhibits filed with the Complaint.

occupation (H-1B) under section 101(a)(15)(H)(i)(b) of the Immigration and Nationality Act (INA)  with a concurrent request for extension of stay so it could continue to employ him in this status. Exhibit C at 1. A complete copy of that petition with all evidence filed with it can be found in Exhibit A.

According to the terms of that petition, Stellar sought Mr. Krishnamurthy's services as a Senior Project Manager so as to be able to provide them for a temporary period to Sharp Decisions' project at Honda North America, where he would perform the following duties:

• Establishes and implements project management processes and methodologies for the **IT**
community to ensure projects are delivered on time, within budget, adhere to high standards, and meet customer expectations.
• Responsible for assembling project plans and teamwork assignments, directing and
monitoring work efforts daily, identifying resource needs, performing quality reviews:
and escalating functional, quality, timeline issues appropriately
Responsible for tracking key project milestones and adjusting project plans and/or resources
• Coordinates communication with all areas of the enterprise that impacts the scope,
budget, risk and resources of the work effort being managed
• Manages one or more cross-functional medium to large-sized projects of high complexity
• Assist in the request for information (RFI), vendor request for proposal (RFP) processes
as directed, and work closely across business and IT teams to drive effective selection of
delivery and solutions partners
• Lead the business analysis team and process modeling effort and the writing and presentation of requirements documentation to all stakeholders

• Manage sprint planning as required, maintain sprint velocity reports, conduct scrum calls
and lead criteria definitions in user story sizing and acceptance
• Create models for project financial analysis and report and present progress to senior
management, provide build vs buy recommendations, assist management in cost allocation decisions and manage the preparation of budgets and variance reports related
to the business analysis of financial information technology projects and programs
• Drive insightful business and financial analytics to ensure that technology investments
are aligned to key company priorities and recommend opportunities for growth

Exhibit A at 20-21, Exhibit D at 32-33.


On January 23, 2018 the USCIS issued a Request for Evidence pertaining to said petition. Exhibit B.

Although said Request indicated that Stellar had until April 17, 2018 to file a response to this Request, nevertheless on March 20, 2018 USCIS issued a decision denying the petition prior to Stellar having filed an answer to its request. Exhibit C.

The stated bases for this Decision were:

a) Stellar had "not established that you will be a 'United States employer' having an 'employer-employee relationship' with the beneficiary as an H-1B temporary "employee." Exhibit C at 3;  and
b) "The record, as presently constituted, is insufficient to establish that the position offered to the
beneficiary qualifies as a specialty occupation and that the beneficiary will perform services in a specialty occupation for the requested period of intended employment." Exhibit C at 6.

On approximately April 17, 2018 Stellar filed a timely motion to reconsider and reopen with USCIS pertaining to this matter. Exhibit D.

The motion contained substantial new evidence pertaining to the petition including:

- Petitioner's Q & A Regarding Employer-Employee Relationship (explaining how Stellar's relationship with Mr. Krishnamurthy satisfies 9 of the 11 criteria set forth in the USCIS's Policy Memorandum (issued by Associate Director Donald Neufeld) re: Determining Employer-Employee Relationship for Adjudication of H-1B Petitions, Including Third-Party Site Placements, HQ 70/6.2.8, dated January 8, 2010, as incorporated into the USCIS's Adjudicator's Field Manual. Exhibit D at 28-30.
- Letter dated March 16, 2018 from end client, Honda North America, confirming the work to be performed by Kartik Krishnamurthy. The letter also confirms that "Stellar Software Network, Inc. is the employer of Kartik Krishnamurthy. Only Stellar Software Network, Inc. will have the legal right to control the work of Kartik Krishnamurthy as well as the right to assign Kartik Krishnamurthy to this, or any work site location, and has the legal right to control his activities" – Exhibit D at 32-33
- Letter dated April 9, 2018 from Sharp Decisions, Inc. the vendor. The letter states that "Neither, Sharp Decisions nor Honda North America has any employment relationship with Kartik Krishnamurthy – Exhibit D at 37-38
- Copy of North America Master Temporary Services Agreement Order entered into between Sharp Decisions Inc. (The Vendor) and Honda North America Inc. (The end-client) - As stated in the order, the termination date of the order is March 31, 2021  - Exhibit D at 40-45)
- Copy of Contractor Agreement between Sharp Decisions Inc. (the vendor and Stellar's client) and Stellar Software Network Inc. – Exhibit D at 47-52
- Copy of Purchase Order between Sharp Decision Inc. and Stellar Software Network Inc. – Exhibit D at 54-56.
- Latest Performance review of the Beneficiary – Exhibit D at 79-80.
- Copy of Internal Revenue Service (I.R.S.) Revenue Ruling "EMPLOYMENT STATUS UNDER SECTION 530(D) OF THE REVENUE ACT OF 1978" – Exhibit D at 84-89.

The motion further explained how new evidence submitted with the motion, together with the evidence already contained in the record, overcame both bases for denial (quoted language all in italics):

> *This evidence submitted herewith and already in the record shows the petitioner has the legal right to control the beneficiary, whether it chooses (or needs) in practice to exercise it or not, in that it is provided under its agreement with the beneficiary in which he expressly agrees (on the final page) that:*

> (1) ***Kartik Krishnamurthy*** *("Employee") acknowledges that he will work under the supervision and control of **Stellar Software Network, Inc.** ("Employer") throughout the time employee is employed by Employer regardless of the location where he physically provides services. Employee shall be appointed a supervisor which he will continue to report to throughout Employee's employment unless advised in writing to the contrary.*
> (2) *Employer will determine Employee's location and relocation assignments (i.e. where the Employee is to report to work);*
> (3) *Where Employee works at a location not controlled by Employer, Employee will telephone his supervisor no less than once a week regarding his progress on the assigned work.*
> (4) *The Employee acknowledges that although he may be called upon to assist the employees of companies other than Employer in his work, only the Employer, through the Employee's supervisor, has the right to control the work of the Employee on a day-to-day basis.*
> (5) *Employee acknowledges that only the Employer has hired, and will pay, and have the ability to fire the Employee.*

> *Further, this right is expressly acknowledged by the end client Honda North America, enclosed herewith, which states that: "Only Stellar Software Network Inc. will have the legal right to control the work of Kartik Krishnamurthy as well as the right to assign Kartik Krishnamurthy to this, or any, work site location, and has the legal right to control her activities."*

> 1. *The petitioner's legal right to control the beneficiary's work activities is dispositive of the existence of an employer-employee relationship regardless of who exercise actual control*

*There are few propositions more firmly settled in the field of labor law than that the right of control, not actual control, is the gravamen of an employer-employee relationship. See, e.g.,. Clackamas Gastroenterology Assocs., P.C. v. Wells, 538 U.S. 440, 448 (2003), Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323 (1992). The right to control the beneficiary is different from actual control. An employer may have the right to control the beneficiary's job-related duties and yet not exercise actual control over each function performed by that beneficiary. See e.g. . Avis Rent A Car Sys., Inc. v. United States, 503 F.2d 423, 425 n.1 (2d Cir. 1974) ; Trent v. Atl. City Elec. Co., 334 F.2d 847, 863 (3d Cir. 1964), Weber v. Commissioner, 60 F.3d 1104, 1110 (4th Cir. 1995); Breaux & Daigle, Inc. v. United States, 900 F.2d 49, 50 (5th Cir. 1990);  NLRB v. Cement Transp., Inc., 490 F.2d 1024, 1027 (6th Cir. 1974),Sargent v. Commissioner, 929 F.2d 1252, 1253 (8th Cir. 1991); Chin v. United States, 57 F.3d 722, 725 (9th Cir. 1995), Jones v. Goodson, 121 F.2d 176, 177 (10th Cir. 1941), USCIS Adjudicator's Field Manual (AFM) § Chapter 31.3 nt.1..[3] This is also the only reasonable interpretation of  8 CFR § 214.2(h)(4)(ii)(2) which defines a "United States employer" as one who has an employer-employee relationship with respect to employees under this part, as indicated by the fact that it **may** hire, pay, fire, supervise, or otherwise control the work of any such employee ....". (emphasis added).*

*The fact that an employer "may" control the work of an employee (rather than "must"[4]) demonstrates that, consistent with Clackamas, Darden, the*

---

[3] *"Policy material is binding on all USCIS officers and must be adhered to unless and until revised, rescinded or superseded by law, regulation or subsequent policy, either specifically or by application of more recent policy material. ...Examples of policy materials are: Field and Administrative Manuals" AFR 3.4. Thus, the AFM, being an administrative manual, is a policy material binding on all USCIS officers.*

[4] *The Oxford Online Dictionary offers several definitions of "may", only one of which is*

*remotely applicable here: "Used to ask for or to give permission.*
*'you may confirm my identity with your Case Officer, if you wish'*
*'may I ask a few questions?'*
*...*

- *'None of the text or images from this site may be reproduced in whole or part without written permission.' Accordingly there is no circumstances in which the word "may" can convey the idea that an employer **must** control his employ, but rather shows that he merely has permission to do – that is that he has the right to control, whether he chooses to exercise it or not. Or perhaps to cite a more familiar example, the fact that a court "may" grant oral argument in a case certainly doesn't oblige it to do so.*

*decisions of at least 8 circuit courts of appeal and the USCIS's own AFM, it is only the right to control and not the actual exercise of the same which is determinative of an employer-employee relationship.*

*What is more, this is also the law of the Sixth Circuit, which is controlling here, inasmuch as the petitioner is located within its jurisdiction.[5]*

*Sixth Circuit law is clear and consistent in holding that employee status is determined based on the Company's retention of a right to control the manner and means of the worker's service. This right does not need to be exercised, it matters only if the Company retains the right to do so. See, Peno Trucking, Inc. v. C.I.R., 296 F.App'x 449, 456 (6th Cir. 2008); N.L.R.B. v. Cement Transp., Inc., 490 F.2d 1024, 1027 (6th Cir. 1974)("It is the right to control, not its exercise, that determines an employee relationship.")". Jammal v. Am. Family Ins. Grp., No. 1: 13 CV 437, 2017 U.S. Dist. LEXIS 120683, at *3 (N.D. Ohio July 31, 2017).*

 2. *In any event the petitioner is in fact exercising supervisory control over the beneficiary.*

*As the petitioner states in Answer #1 and #2 of its "Q&A":*

**1.  Does the petitioner supervise the beneficiary (off-site or on-site?)?**

*Ans:        Yes, the petitioner will supervise the beneficiary offsite*

**2.   If the supervision is off-site, how does the petitioner maintain such supervision, i.e. weekly calls, reporting back to main office routinely, or site visits by the petitioner?**

*Ans:        Kartik Krishnamurthy will have weekly calls with Srinivas Kethireddy to monitor his progress and training and will be subject to a performance review by Stellar Software Network based upon his work product; continued employment is dependent upon the review. Enclosed is performance*

---

[5]  *See Matter of Anselmo, 20 I&N Dec. 25, 30-32 (BIA 1989), Matter of X, online at https://www.uscis.gov/sites/default/files/err/B6%20-%20Skilled%20Workers,%20Professionals,%20and%20Other%20Workers/Decisions_Issued_in_2013/AUG092013_01B6203.pdf ("Counsel's reliance on Construction and Design is misplaced. The petitioner's business is not located in the same jurisdiction as the cited case. Although the AAO may consider the reasoning of the decision, the AAO is not bound to follow the published decision of a U.S. circuit court case outside of that circuit. See Matter of Anselmo, 20 I&N Dec. 25, 30-32 (BIA 1989).")*

*evaluation of Kartik Krishnamurthy for the year 2017.*

*Furthermore, the fact that the petitioner retains the right to ultimate control of the beneficiary's activities (see paragraphs 1-5 of the Addendum to the petitioner's contract with the beneficiary) explains why the Internal Revenue Service has concluded, based upon common law principles, that companies such as Stellar which provide software consultants to provide services directly to their clients are their employers in fact. See Rev. Rul. 87-41, 1987-1 C.B. 296, 1987 WL 419174 (IRS RRU) Internal Revenue Service (I.R.S.) Revenue Ruling "EMPLOYMENT STATUS UNDER SECTION 530(D) OF THE REVENUE ACT OF 1978" Published: 1987, a copy of which is enclosed. This was the **very same** revenue ruling referred to by the Supreme Court in Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 324 (1992) as an example of the proper application of common-law principles to determine whether an employer-employee relationship existed, thus demonstrating conclusively that the Supreme Court itself consider such a relationship to exist in the instant situation.[6]*

*A more detailed review of the standards established by the Neufeld memo and their application to the instant situation leads inexorably to the conclusion that the petitioner is the employer of the beneficiary.*

## B. ALMOST ALL OF THE INDICIA OF AN EMPLOYER-EMPLOYEE RELATIONSHIP APPLIES TO THE INSTANT POSITION

*In determining the existence of an employer-employee relationship  the USCIS looks for guidance to the aforementioned memorandum of Associate Director Donald Neufeld in which he stated that "In considering whether or not there is a valid 'employer-employee relationship' for purposes of H-1B petition adjudication, USCIS must determine if the employer has a sufficient level of control over the employee. The petitioner must be able to establish that it has the right to control over when, where, and how the beneficiary performs the job and USCIS will consider 11 factors to make such a determination (with no one factor being decisive)." The enclosed "Petitioner's Q & A Regarding Employer-Employee Relationship" addresses each of these issues, and*

---

[6] *Darden* favorably noted that the IRS set forth 20 factors as guides in determining whether an individual qualifies as a common-law "employee" in various tax law   contexts. *Id.*  Virtually all of those factors also point to the instant beneficiary as being an employee of the petitioner. See attached **EXHIBIT 15.** Accordingly, nothing could be clearer then that the *Darden* court would've found an employer-employee relationship in this situation.

*demonstrates that all but factor 9 indicate that an employer-employee relationship exists. Nothing in Mr. Neufeld's memo indicates that all of the relevant factors must be satisfied to establish a bona fide employer-employee relationship between the parties. Here the fact 10 of the 11 relevant factors are satisfied is highly compelling evidence of the existence of an employer-employee relationship.*

*Further, an additional 3 factors recently mentioned by the Service as indicia of an employee-employee relationship, also exist here. See "Petitioner's Q & A Regarding Employer-Employee Relationship" items 12-14.*

## C. THE END-CLIENT CONFIRMS THE TERMS OF THE BENEFICIARY'S EMPLOYMENT.

*Beneficiary is performing services for the end-client client Honda North America. Petitioner hereby submits a letter dated March 16, 2019, from the end client, (**EXHIBIT 3**), confirming the work to be performed by Kartik Krishnamurthy. The letter also confirms that Stellar Software Network is the employer for Kartik Krishnamurthy and that only Stellar will have the legal right to control the work of Kartik Krishnamurthy.*

*This plus the petitioner's satisfaction of 9 of the 11 factors mentioned by the Neufeld memorandum demonstrates that there is a valid employer-employee relationship between the petitioner and the beneficiary.*

### SERVICES IN A SPECIALTY OCCUPATION

### A. THE JOB OFFERED QUALIFIES AS A SPECIALTY OCCUPATION BECAUSE THE OOH PROVIDES THAT INFORMATION TECHNOLOGY PROJECT MANAGERS NORMALLY MUST HAVE A BACHELOR'S DEGREE IN A COMPUTER- OR INFORMATION SCIENCE–RELATED FIELD

*The RFE asserts that:*

*USCIS recognizes the Occupational Outlook Handbook ("OOH"), a publication of the U.S. Department of Labor (DOL), as an authoritative source on the duties and educational requirements of the wide variety of occupations that it addresses. You provided a certified Labor Condition*

*Application (LCA) from the DOL that the proffered position is a* **Computer Occupations - All Other position.** *The OOH does not contain descriptions for this occupation. You did not provide other evidence to show that a bachelor's degree or higher or its equivalent in a specific specialty is normally required for entry into the position.*

*However, the OOH does provide that the job of IT project managers "normally must have a bachelor's degree in a computer- or information science–related field".*
*https://www.bls.gov/ooh/management/computer-and-information-systems-managers.htm#tab-4[7]*

1.    ***The petitioner, in choosing the occupational code of 15-1199 on the ETA 9035 actually was referring to the fact that the job was that of an Information Technology Project Manager (S.O.C. 15-1199.09). However, the ETA 9035 which the petitioner must complete online does not permit the entry of decimals after the six-digit S.O.C. number. So, 15-1199 was the***

---

1.    [7] **What the OOH exactly says is "Computer and information systems managers normally must have a bachelor's degree in a computer- or information science–related field. " However, the OOH elsewhere provides that "Computer and information systems managers (are) often called information technology (IT) managers or IT project managers…" https://www.bls.gov/ooh/management/computer-and-information-systems-managers.htm#tab-1. Therefore it is appropriate to read the word "IT project managers" for that of "Computer and information systems managers" in the text above. Nor is it inappropriate for the petitioner to use the educational requirements for Computer and information systems manager in the OOH without classifying the job under S.O.C. 11-3021.00 - Computer and Information Systems Managers on the LCA. Unlike the OOH, none of the alternative job titles for S.O.C. 11-3021.00 include "information technology project manager". Therefore S.O.C. 15-1199.09 is the only S.O.C. that directly matches the job offered.**

…

### THE END-CLIENT CONFIRMS IT'S BACHELOR'S DEGREE REQUIREMENT TO PERFORM BENEFICIARY'S PROPOSED DUTIES

*Enclosed is the letter from the end-client, Honda North America … confirming that the Beneficiary will be working as a Senior Project Manager Information Technology and that the* **end date of the project is 03/31/2021**. *It also confirms that "The knowledge required in this position requires a Bachelor's degree at a minimum or a Master's degree with course work in Information Technology, Accounting / Finance and Business Management. Kartik Krishnamurthy has a Master's degree in Business Administration from Northeastern University in Boston, Massachusetts, graduate coursework in Information Technology from the State University of New York in Buffalo, New York, the Project Management Professional certification from the Project Management Institute in Newton Square, Pennsylvania and undergraduate Commerce degree from University of Mumbai."*

*Accordingly, the job qualifies as a specialty occupation under both 8 C.F.R.* **214.2(h)(4)(iii)(A)(1) and 4,** *and the beneficiary qualifies to perform it.*

*closest approximation of the actual occupational code the form would permit.*

**B. INASMUCH AS THE JOB OF AN <u>INFORMATION TECHNOLOGY PROJECT MANAGERS</u> NORMALLY REQUIRES A SPECIALIZED DEGREE IT IS IMMATERIAL WHETHER THE PROFFERED POSITION IS MORE COMPLEX OR UNIQUE THAN THAT OF OTHERS WORKING IN THE SAME OCCUPATION.**
*Further RFE states that:*

*The record indicates that you certified to DOL that you were seeking to fill an entry level position, one that has "only a basic understanding of the occupation...performs routine tasks that require limited, if any, exercise of judgment" and pay the person the prevailing wage for an entry level employee. Thus, the LCA does not show that the proffered position is more complex or unique that only an individual with a bachelor's degree or higher in a specific specialty in normally required for entry into the position.*

*The petitioner respectfully reminds the director that it did not submit the LCA with a "Wage Level I" designation. Instead it submitted the certified LCA, which designated the **Wage Level IV***

*Accordingly, the proffered position is not entry level. The issue is, in any event, immaterial in that the petitioner does not rely upon a claim that the proffered position is any more complex or unique than that of any other IT project manager. Rather, the position qualifies as a specialty occupation because a bachelor's degree in a computer- or information science–related field is the normal requirements for the occupation. 8 C.F.R. § 214.2(h)(4)(iii)(A)(1). § 214.2(h)(4)(iii)(A)(1).*

On May 31, 2018 the USCIS reopened its decision of April 17, 2018 denying

this petition, but nevertheless, following that reopening, denied it again. Exhibit E.

The stated bases for this subsequent Decision were much as in the prior

decision:

(a) Stellar had "not established that you will be a 'United States employer' having an 'employer-employee relationship' with Mr. Krishnamuthy as an H-1 B temporary 'employee.'"; Exhibit E at 3.

(b) Stellar had "not demonstrated that the proffered position is a specialty occupation." Exhibit E at 6.

The Decision offered two reasons for its conclusion that Stellar had failed to establish that it was a U.S. Employer: 1) "The record remains absent of evidence regarding the work at the end-client's facility" and 2) Stellar had not proven that it actually "supervise(s) or oversee(s) the beneficiary's work while he performs his duties at the client's site.". Exhibit E at 3.

The Decision also offered two reasons  for its conclusion that Stellar had failed to establish that the job offered Mr. Krishnamurthy was not in a specialty occupation: 1) Stellar supposedly failed to provide "a statement of work detailing the project's outline description, duration, role and the beneficiary's duties to demonstrate the end-client will actually use computer occupations for daily assignments" and 2) "your client has required that the degree must be in a specific specialty." Exhibit E at 5.

Because two of these assertions are flatly contradicted by the record, and a third by the law, while the other is irrelevant, Stellar and Mr. Krishnamurthy has brought this action seeking judicial review of the USCIS's decision. Because both of these plaintiffs will suffer irreparable harm if the effectiveness of this decision is not postponed while this action is pending, they now move the Court to postpone

the effectiveness of the decision (and/or for a preliminary injunction) while this action is pending.

.

**ARGUMENT**

## I.   THE PLAINTIFFS ARE SUBSTANTIALLY LIKELY TO PREVAIL ON THE MERITS

### A. THE COURT HAS SUBJECT JURISDICTION OVER THIS MATTER.

This being a civil action against the United States arising under the Immigration and Nationality Act, 8 U.S.C. § 1101, *et. seq.,* and the Administrative Procedure Act, 5 U.S.C. § 701, *et. seq.,* both laws of the United States, original jurisdiction over this matter is vested in this Court by 28 U.S.C. § 1331.

### B. THE PLAINTIFFS BOTH HAVE STANDING TO BRING THIS ACTION

Stellar has a legally protected interest in a decision by the USCIS on its petition upon Mr. Krishnamurthy's behalf which is not arbitrary and capricious and which is in accordance with law, per 5 U.S.C. § 706(2), and the invasion of this right has caused it concrete and particularized injury in that as a result of this invasion Stellar can no longer employ Mr. Krishnamurthy and so cannot derive the revenue it previously received from the sale of his services to its client;   (2) there is a causal connection between the injury-in-fact and the defendant's challenged behavior in

that it is precisely the defendant's denial of Stellar's petition and Mr. Krishnamurthy's application for extension of stay  which prevents him from working for Stellar and (3) it is certain that the injury-in-fact will be redressed by a favorable ruling in that such a ruling will enable Stellar to employ Mr. Krishnamurthy again and so once more derive revenues from the sale of his services. Accordingly, Stellar has standing to complain of this action. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

Mr. Krishnamurthy likewise has a legally protected interest in a decision by the USCIS on Stellar's petition upon his behalf which is not arbitrary and capricious and is in accordance with law, per 5 U.S.C. § 706(2), and this right has been invaded inasmuch as because of the improper denial of this petition his application for extension of stay has also been denied. Further, as a result of this invasion he can no longer be employed by Stellar and so cannot derive the revenue he previously received from his employment and his presence in the United States has been rendered unlawful;  (2) there is a causal connection between the injury-in-fact and the defendant's challenged behavior in that it is precisely the defendant's denial of Stellar's petition and Mr. Krishnamuthy's application for extension of stay  which prevents him from working for Stellar and (3) it is certain that the injury-in-fact will be redressed by a favorable ruling in that such a ruling will enable Stellar to employ Mr. Krishnamurthy again and so enable him to support himself and lawfully remain

in the United States. Further, Stellar wishes to employ Mr. Krishnamurthy in the offered position. Accordingly, Mr. Krishnamurthy has standing to complain of this action. *Lujan*, *supra*.

What is more, the fact that Mr. Krishnamurthy is the beneficiary rather than the petitioner in this instance by no means deprives him of standing. As the D.C. Circuit Court of Appeals said in finding that the beneficiary of a labor certification filed by a potential employer had standing to seek judicial review under the Administrative Procedure Act (APA) of its denial, even though the prospective employer was not a party to the action:

> neither the statute's text, structure, nor legislative history supplies the requisite "clear and convincing evidence" of a preclusive purpose. *Abbott Labs. v. Gardner*, 387 U.S. 136, 141, 18 L. Ed. 2d 681, 87 S. Ct. 1507 (1967); *see also Shook v. District of Columbia Fin. Responsibility & Management Assistance Auth.*, 328 U.S. App. D.C. 74, 132 F.3d 775, 778-79 (D.C. Cir. 1998). Unlike in *Block v. Community Nutrition Inst.*, 467 U.S. 340, 348, 81 L. Ed. 2d 270, 104 S. Ct. 2450 (1984), for example, where the statute itself set forth a regulatory regime that omitted mention of certain parties, giving rise to an inference that those parties were precluded from litigating in court, *see Block*, 467 U.S. at 349, there is no indication here that Congress itself considered the mechanism by which the Secretary of Labor would make labor certification decisions, or how (and at the request of whom) such decisions would be reviewable in the federal courts. And while the legislative history indicates that Congress intended to restrict further the admission of alien workers when it amended the statute in 1965, *see* S. REP. No. 748, 89th Cong., 1st Sess. (1965), *reprinted in* 1965 U.S. CODE CONG. & ADMIN. NEWS 3328, 3333, that does not speak to the question whether the class of aliens deserving of admission under the statute have standing to challenge in court the Secretary's decision to the contrary. The regulatory regime is completely a creation of the Labor Department's regulations, and under the

Administrative Procedure Act, it is only statutes, not agency regulations, that can preclude otherwise available judicial review. *See* 5 U.S.C. § 701(a)(1); *Gladysz*, 595 F. Supp. at 53-54. In light of the presumption of judicial review, *see McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496 (1991); *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670 (1986), we cannot conclude (despite our suspicions) that Congress intended to preclude the alien from challenging labor certification denials without the alien's employer. *See Block*, 467 U.S. at 351 (holding that, where substantial doubt about congressional intent exists, the general presumption favoring judicial review is controlling).

*Ramirez v. Reich*, 156 F.3d 1273, 1276 (1998)

Here likewise neither the INA's text, structure nor legislative history supplies the requisite "clear and convincing purpose" of an intent to preclude the beneficiary of a nonimmigrant visa petition from seeking judicial review of a denial. For example, there is no indication here that Congress itself considered the mechanism by which the USCIS would make nonimmigrant visa petition decisions, or how (and at the request of whom) such decisions would be reviewable in the federal courts. And even if there were legislative history indicating that Congress intended at one point or another to restrict further the admission of alien workers[8], that does not speak to the question of whether the class of aliens deserving of admission under the statute have standing to challenge in court the USCIS's decision to the contrary. The regulatory regime under which the referenced petition and application for extension of stay was denied is completely a creation of the USCIS's regulations,

---

[8] The history of the Act is one of a forward and back swinging between liberalizing and restricting the admission of foreign workers. *See generally* Gordon, Rosenfeld and Yale-Loehr, 1 *Immigration Law and Procedure* CHAPTER 2. .

and under the Administrative Procedure Act, it is only statutes, not agency regulations, that can preclude otherwise available judicial review. Accordingly, here as in *Ramirez*, this Court has no basis for concluding that Congress intended to preclude the beneficiary of an application for immigration benefits filed by his prospective employer from seeking judicial review of a denial of the same without said employer. *See Block*, 467 U.S. at 351 (holding that, where substantial doubt about congressional intent exists, the general presumption favoring judicial review is controlling). Accordingly, it is not surprising that every Court of Appeals which has reached the issue of whether the beneficiary of an employment-based visa petition (or labor certification) had standing to seek judicial review of its denial without the petitioner as a party has concluded that the beneficiary did. *Mantena v. Johnson*, 809 F.3d 721, 731-33 (2d Cir. 2015), *Kurapati v. United States Bureau of Citizenship & Immigration Servs.*, 775 F.3d 1255, 1259-61 (11th Cir. 2014), *Patel v. United States Citizenship & Immigration Servs.*, 732 F.3d 633, 635-38 (6th Cir. 2013), *Taneja v. Smith*, 795 F.2d 355, 358 n.7 (4th Cir. 1986), *Stenographic Machines, Inc. v. Regional Administrator for Employment and Training*, 577 F.2d 521 (7th Cir. 1978).

Accordingly, both plaintiffs have standing to bring this action.

## C. PLAINTIFFS ARE NOT REQUIRED TO EXHAUST ANY ADMINISTRATIVE REMEDIES PRIOR TO BRINGING THIS ACTION

. "(T)here is no statutory requirement that a petitioner exhaust its administrative remedies before filing suit in United States District Court, and the 'Supreme Court has recognized that, in cases governed by the [APA], section 10(c) of the APA, 5 U.S.C. § 704, . . . limits the discretion of courts to impose exhaustion requirements." *Darby v. Cisneros,* 509 U.S. 137, 153, 113 S. Ct. 2539, 125 L. Ed. 2d 113 (1993);". *EG Enters. v. Dep't of Homeland Sec*., 467 F. Supp. 2d 728, 732 (E.D. Mich. 2006) (finding a failure to appeal a denial of an H-1B petition to the Administrative Appeals Office no bar to action for judicial review of the same). Further, Mr. Krishnamurthy, as the beneficiary of the petition, had no right to administratively appeal USCIS's denial of his employer's petition to classify him as an H-1B nonimmigrant, 8 C.F.R. §214.2(h)(10)(ii), nor the denial of his application for extension of stay. *Id.* Therefore this action is not barred due to either plaintiffs failure to exhaust their administrative remedies.

## D. THE REASONS PROVIDED BY THE DEFENDANT FOR ITS DENIAL OF STELLAR'S PETITION WERE ARBITARY AND CAPRICIOUS AND NOT IN ACCORDANCE WITH LAW

### 1. THE USCIS'S FINDING THAT "THE RECORD REMAINS ABSENT OF EVIDENCE REGARDING THE WORK AT THE END-CLIENT'S FACILITY" AND THAT STELLAR "FAILED TO PROVIDE A STATEMENT OF WORK DETAILING THE

**PROJECT'S OUTLINE, DESCRIPTION AND ROLE AND THE BENEFICIARY'S DUTY" WAS ARBITRARY AND CAPRICIOUS IN THAT IT RUNS DIRECTLY CONTRARY TO THE EVIDENCE IN THE RECORD**

Perhaps the most appalling aspect of what is a singularly incompetent decision is the USCIS's complete disregard of the letter of Honda North America (the Honda letter), the "end-client" at the site of which Mr. Krishnamurthy's services would be provided. Exhibt D at 32-33. Two assertions from the decision demonstrate conclusively that the USCIS simply did not read and/or intentionally disregarded this letter. First, its statement in support of its conclusion that Stellar was not a U.S. employer that "The record remains absent of evidence regarding the work at the end-client's facility", Exhibit E at 3,  and second, its assertion in support of its conclusion that Stellar had failed to establish that the job offered Mr. Krishnamurthy was not in a specialty occupation was that Stellar failed to provide "a statement of work detailing the project's outline description, duration, role and the beneficiary's duties to demonstrate the end-client will actually use computer occupations for daily assignments". Exhibit E at 5. Although the Decision acknowledged that Stellar submitted in support of its motion to reopen and reconsider "A letter from the end-client Honda North America", Exhibit E and 3, the decision shows an inexplicable lack of acquaintance with its contents.

In fact the Honda letter does detail the project's outline, description and duration:

The project name is **'Interactive Network (iN) Redesign'** with an end date
of **03/31/2021.** The Interactive Network (iN) is a suite of portals allowing
two way communication between
Honda and our dealerships. This project is an initiative for Honda to create
a new portal that will
transform the dealer relationship towards one that embraces Honda's core
values. This
redesign effort is a significant undertaking in terms of investment, risk,
change, and stakeholder
impact as it impacts all transaction systems within Honda's main business
units of Auto,
Motorcycle, Marine and Power Equipment." Exhibit D at 32. (emphasis in
original).

It also describes Mr. Krishnamurthy's role[9] as follows:

Kartik Krishnamurthy is The Senior Project Manager and s charged with all
aspects of
managing this crucial initiative from Technology Project Management, Data
Analysis, Process
Reengineering, Financial Modeling, Business Planning/Budgeting and
Compliance as well as
providing direction to the project team consisting of Business Analysts,
Technical Architects and
Developers. This role resides within the Information Services Division -
Dealer Applications at
Honda North America, Inc. The position involves understanding several
parameters in the
context of technology for organizational efficiency, information flows and
management, project
management discipline, ability to understand statistical reports, financial
forecast and variance
analysis, familiarity with Sarbanes Oxley for IT compliance, understanding
of US Generally
Accepted Accounting Principles to review software and other contractual
arrangements in
accordance with US GAAP to identify language that may require non-
standard accounting

---

[9] Plaintiffs assume that the USCIS is referring to Mr. Krishnamurthy's role in the project in its decision, since it is
entirely unclear what it would mean by complaining Stellar did not describe the *project's* "role". Role in what?

treatment, understanding of supply chain and procurement, with all of the
above in the context
of large scale Information Technology Project Management.

Id.

Finally,  the Honda letter contains 24 lines of job description that plainly set forth

"the beneficiary's duties to demonstrate the end-client will actually use computer

occupations for daily assignments." Exhibit D at 32-33.

"[A]n agency rule would be arbitrary and capricious if the agency . . offered an

explanation for its decision that runs counter to the evidence before the agency."

*Taylor v. USDA*, 394 U.S. App. D.C. 311, 316, 636 F.3d 608, 613 (2011), *quoting*

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463

U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983). The disregarded Honda

letter shows that the USCIS's explanation of both aspects of its decision run

directly contrary to the evidence before it and so is arbitrary and capricious.


**2. THE AGENCY'S FINDING THAT STELLAR LACKED AN
EMPLOYER-EMPLOYEE RELATIONSHIP WITH MR.
KRISHNAMURTY BECAUSE IT HAD NOT PROVEN THAT IT
ACTUALLY "SUPERVISE(S) OR OVERSEE(S) THE
BENEFICIARY'S WORK WHILE HE PERFORMS HIS DUTIES AT
THE CLIENT'S SITE" IS NOT IN ACCORDANCE WITH LAW IN
THAT ONLY THE RIGHT TO CONTROL IS REQUIRED**


The USCIS's conclusion that Stellar failed to establish that it had an

employer-employee relationship with Mr. Krishnamurthy because it had not proven

that it  "supervise(s) or oversee(s) the beneficiary's work while he performs his duties at the client's site", Exhibit E at 3, was not in accordance with law because it made actually overseeing the employee's work the test of an employer-employee relationship when in fact the Supreme Court, at least 9 courts of appeals (including the D.C. Circuit), and even a USCIS manual which is binding on all of its officers, have  expressly held that it is the right to control, not actual control itself, which is the gravamen of an employer – employee relationship, and that is the only reasonable interpretation of the regulatory requirement that to have an employer-employee relationship the employer "may", not "must", control the employee.

There are few propositions more firmly settled in the field of labor law than that the right of control, not actual control, is the gravamen of an employer-employee relationship. See, e.g.,. *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 448 (2003), *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992). The right to control the beneficiary is different from actual control. An employer may have the right to control the beneficiary's job-related duties and yet not exercise actual control over each function performed by that beneficiary. *See e.g. Dovell v. Arundel Supply Corp*., 124 U.S. App. D.C. 89, 361 F.2d 543, 545 (1966) ("The vital element which negatives such independence, in the relation between employer and employee, is the right to control the employee, not only as to the final result, but in the performance of the task itself. And, it is the right to control, not control or

supervision itself, which is most important. (Footnote omitted.)" *quoting Grace v. Magruder*, 80 U.S. App. D.C. 53, 148 F.2d 679, 681 (1945))[10]; *Avis Rent A Car Sys., Inc. v. United States*, 503 F.2d 423, 425 n.1 (2d Cir. 1974) ; *Trent v. Atl. City Elec. Co.*, 334 F.2d 847, 863 (3d Cir. 1964), *Weber v. Commissioner*, 60 F.3d 1104, 1110 (4th Cir. 1995); *Breaux & Daigle, Inc. v. United States,* 900 F.2d 49, 50 (5th Cir. 1990); *NLRB v. Cement Transp., Inc.*, 490 F.2d 1024, 1027 (6th Cir. 1974), *Sargent v. Commissioner*, 929 F.2d 1252, 1253 (8th Cir. 1991); *Chin v. United States*, 57 F.3d 722, 725 (9th Cir. 1995), *Jones v. Goodson*, 121 F.2d 176, 177 (10th Cir. 1941), USCIS Adjudicator's Field Manual (AFM) § Chapter 31.3 nt.1..[11] This is also the only reasonable interpretation of  8 CFR § 214.2(h)(4)(ii)(2) which defines a "United States employer" as one who has an employer-employee relationship with respect to employees under this part, as indicated by the fact that it **may** hire, pay, fire, supervise, or otherwise control the work of any such employee ....". (emphasis added).

---

[10] "The rule in the District of Columbia is that where a conflict of law as to a particular issue exists the law of the jurisdiction with the more substantial interest in the resolution of the issue is applied. The rule in the District of Columbia is that where a conflict of law as to a particular issue exists the law of the jurisdiction with the more substantial interest in the resolution of the issue is applied. *Dovell* , 361 F.2d at 544. Here both the other circuits which might have an interest in this issue, the 6th, where Stellar is based, and the 9th, where Mr. Krishnamurthy lives and where the services were to be performed, likewise have held that right to control, rather than actual control itself, is dispositive of an employee-employee relationship. *See infra.*

[11] "Policy material is binding on all USCIS officers and must be adhered to unless and until revised, rescinded or superseded by law, regulation or subsequent policy, either specifically or by application of more recent policy material. …Examples of policy materials are: Field and Administrative Manuals" AFR 3.4. Thus, the AFM, being an administrative manual, is a policy material binding on all USCIS officers.

The fact that an employer "may" control the work of an employee (rather than "must"[12]) demonstrates that, consistent with *Clackamas, Darden,* the decisions of at least 9 circuit courts of appeal and the USCIS's own AFM, it is only the right to control and not the actual exercise of the same which is determinative of an employer-employee relationship. Therefore, the USCIS's decision denying Stellar's petition upon Mr. Krishnamurthy's behalf for lack of an employer-employee relationship merely because Stellar had supposedly not proven that it would actually oversee Mr. Krishnamurthy's work, as opposed to merely reserving the *right* to control it, was not in accordance with law.

3. **THE DECISION WAS ALSO NOT IN ACCORDANCE WITH LAW BECAUSE THE END-CLIENT'S REQUIREMENTS ARE IRRELEVANT TO THE REGULATION UNDER WHICH STELLAR ESTABLISHED THAT THE JOB WAS A SPECIALTY OCCUPATION**

---

[12] The Oxford Online Dictionary offers several definitions of "may", only one of which is remotely applicable here: "Used to ask for or to give permission.
*'you may confirm my identity with your Case Officer, if you wish'*
*'may I ask a few questions?'*
…
- *'None of the text or images from this site may be reproduced in whole or part without written permission.'* Accordingly there is no circumstances in which the word "may" can convey the idea that an employer **must** control his employ, but rather shows that he merely has permission to do – that is that he has the right to control, whether he chooses to exercise it or not. Or perhaps to cite a more familiar example, the fact that a court "may" grant oral argument in a case certainly doesn't oblige it to do so.

The final of the four grounds for the agency's decision was its conclusion that Stellar did not show that  "your client has required that the degree must be in a specific specialty." Exhibit E at 5. However, regardless of whether this assertion is true or not, it is irrelevant. Under the authority relied upon in the decision, proving the end-client's requirements is only an element of establishingthat the job offered is a specialty occupation under 8 C.F.R. § 214.2(h)(4)(iii)(A)(3) ("The employer normally requires a degree or its equivalent for the position"). This is entirely irrelevant to the actual grounds upon which Stellar established that the job was a specialty occupation, **§** 214.2(h)(4)(iii)(A)(1) "A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;". See § 214.2(h)(4)(iii)(A) : "Standards for specialty occupation position. To qualify as a specialty occupation, the position must meet **one** of the following criteria:" (emphasis added).

The Decision's misreliance upon *Defensor v. Meissner*, 201 F. 3d 384 (5th Cir. 2000) demonstrates its error. In *Defensor* a petitioner claimed that the job offered of nurse qualified as a specialty occupation because the petitioner required a bachelor's degree in nursing for the position. *Id.*, 201 F.3d at 387. Because the petitioner in *Defensor* could not prove that the hospital to which it contracted the beneficiaries' services required a bachelor's degree in nursing "it was not an abuse of discretion to interpret the statute and regulations so as to require Vintage (the

petitioner) to adduce evidence that the entities actually employing the

nurses' services required the nurses to have degrees, which Vintage could not do."

*Id*. at 388.[13]

Here however Stellar satisfies the requirement of establishing that the job is a

specialty occupation as set forth in § 214.2(h)(4)(iii)(A)(1)   inasmuch as the

Occupational Outlook Handbook provides that for an Intellectual Technology

Manager such as Mr. Krishnamurthy "Typically, a bachelor's degree in computer

or information science, plus related work experience, is required",

https://www.bls.gov/ooh/management/computer-and-information-systems-

managers.htm#tab-4, and so "A baccalaureate or higher degree or its equivalent is

normally the minimum requirement for entry into the particular position". §

214.2(h)(4)(iii)(A)(1) . This assertion, explained in detail in Exhibit D at 16-17,

was never disputed by USCIS. Since the  job offered needed to  qualify under only

one subclause of 214.2(h)(4)(iii)(A)   to be considered a specialty occupation, the

job's alleged failure to qualify under subclause (3) was irrelevant, and the

petition's denial on the basis of the same was not in accordance with law.

Accordingly, the USCIS's decision denying Stellar's Petition for Nonimmigrant

Worker was both arbitrary and capricious and not in accordance with law.

---

[13] Of course, as discussed above, unlike in *Defensor*, the record here demonstrates that Stellar had the right to control Mr. Krishnamurthy's work activities. *Defensor* is therefore distinguishable in any event.

**4. THE UNLAWFULNESS OF THE DENIAL OF STELLAR'S PETITION RENDERS THE DENIAL OF MR. KRISHNAMURTHY'S APPLICATION FOR EXTENSION OF STAY UNLAWFUL**

The sole reason cited for the denial of Mr. Krishnamurthy's application for extension of stay was that Stellar's petition upon his behalf had been denied. Exhibit F at 1. When this Court holds unlawful and sets aside this denial it will eliminate any legal basis for the denial of Mr. Krishnamurthy's application as so render it unlawful as well so that it too should be set aside.

Therefore, inasmuch as the decisions denying Stellar's petition and Mr. Krishnamurthy's application for extension of stay were arbitrary and capricious and not in accordance with law, the plaintiffs are substantially likely to prevail on the merits of their complaint.

**II.   PLAINTIFFS WILL SUFFER IRREPARABLE HARM IF THE EFFECTIVENESS OF THE DECISION DENYING STELLAR'S PETITION AND MR. KRISHNAMURTH'S APPLICATION FOR EXTENSION OF STAY IS NOT POSTPONED**

**A. STELLAR WILL SUFFER IRREPARABLE HARM DUE TO ITS UNCOMPENSABLE LOST OF PROFITS**

Under Stellar's agreement with Sharp Decisions, Stellar profits from its sale of Mr. Krishnamurthy's services.  Inasmuch as it has no one to replace him, Stellar is suffering a loss of proftis for every week it cannot employ Mr. Krishnamurthy. This is profit that Stellar can never get back again because of USCIS's sovereign immunity. A failure to postpone the effectiveness of these denials will mean that

Stellar will lose profits every week.  These financial losses are in themselves

irreparable harms in that the USCIS's sovereign immunity prevents Stellar from

seeking reimbursement of these losses when it prevails in this litigation. *See*

*Dominguez v. Schwarzenegger*, 596 F.3d 1087, 1097-98 (9th Cir. 2010), affirming

a grant of a preliminary injunction by a district court where "the district court

concluded that IHSS providers would also suffer immediate and irreparable harm,

due to the fact that a reduction in providers' wages and benefits would result in

financial injury that providers would be unable to recover due to the State's

Amendment immunity.". *See also Odebrecht Const., Inc. v. Secretary, Florida*

*Dept. of Trans*p., 715 F.3d 1268, 1289 (11th Cir. 2013), *Chamber of Commerce v.*

*Edmondson, 594 F.3d 742, 770–71* (10th Cir.2010);  *Iowa  Utils. Bd. v. FCC*, 109

F.3d 418, 426 (8th Cir.1996) ("The threat of unrecoverable economic loss ...

qualifies as irreparable harm.").


B. MR. KRISHNAMURTHY WILL SUFFER IRREPARABLE HARM BY
BEING FORCED TO ABANDON HIS APPLICATION FOR EXTENSION
OF STAY

Mr. Krishnamurthy will also suffer irreparable harm if the effectiveness of the

USCIS's decisions is not postponed because that decision denying his application

for extension of stay rendered him "unlawfully present" in the United States.

Adjudicator's Field Manual § 40.9.2(b)(2)(G).  A person who is unlawfully present

in the U.S. for over 180 days, then departs, will be inadmissible for three (3) years.

8 USC § 1182(a)(9)(B)(i)(I). If he is unlawfully present for a year or more, then

departs, he will be inadmissible for ten (10) years. § 1182(a)(9)(B)(i)(II).

Therefore, to avoid these bars, Mr. Krishnamurthy will be required to depart the

United States no later than November 27, 2018, long before this action is likely to be

decided in the normal course of events, and not allowing for further delays if this

matter is remanded to USCIS for additional action as is often the case. Inasmuch as

one cannot extend one's stay in the U.S. if one is not here, this departure would moot

this lawsuit, depriving Mr. Krishnamurthy of his right to seek an extension of

nonimmigrant status under 8 USC § 1184(a)(1) and 8 CFR § 214.1, and so cause

him irreparable harm. *See Vargas v. Meese*, 682 F. Supp. 591, 595 (D.D.C. 1987)

("The Court holds that plaintiffs have shown that without an injunction, they will

be irreparably harmed. Under the SAW program, according to the plain language

of the statute, applicants may file for a change of status in the United States. That

statutory right to file will be mooted if their applications are not accepted in this

country."), *United States SEC v. Daspin*, 557 Fed. Appx. 46,49 (2d. Cir. 2014) ("A

stay may be used to preserve a possibly meritorious appeal. *See In re Agent Orange

Product Liability Litig.*, 804 F.2d 19, 20 (2d Cir.1986)").

## C. MR. KRISHNAMURTHY WILL SUFFER IRREPARABLE HARM BY BEING DEPRIVED OF A LAWFUL STATUS IF POSTPONEMENT ISN'T GRANTED

Ever since his period of authorized stay expired on the day of the denial, Mr. Krishnamurthy has been subject to arrest, prolonged detention and removal from the United States. 8 U.S.C. § 1237(a)(1)(B). This in itself constitutes irreparable harm as a district court recently explained in deciding to grant religious workers suing for the right to file applications for adjustment of status concurrent with their employers' petitions upon their behalf, the right to remain lawfully in the U.S. while their suit was pending:

> Being out of status for even one day has adverse implications for class members and their families. The most direct and potentially irremediable effects are the reduction in the grace period Congress provided for this class of alien and the increased possibility of detention or deportation for being out of status. If defendants delay the adjudication of employer petitions for immigration visas long enough, class members will have to depart from the United States before they can even file an application for adjustment of status. Defendants state, without any explanation, that being forced to depart from the United States is not an injury. Opposition at 7. The Court is hard-pressed to imagine a more traumatic and irreparable harm than being uprooted from your job, home, and community for an undetermined length of time. By maintaining the status of each class member as it currently exists, the Court will have the opportunity to determine whether defendant's policy against concurrent filings is lawful without risking irreparable (and potentially unjustified) harm to the class members.

*Ruiz-Diaz v. United States*, No. C07-1881RSL, 2008 U.S. Dist. LEXIS 79217, at *7-8 (W.D. Wash. Aug. 21, 2008)

Accordingly, merely losing his legal status (and the consequences that go therewith, including potentially being subject to removal proceedings) in itself constitutes irreparable harm to Mr. Krishnamurthy.

## D. MR. KRISHNAMURTHY'S UNCOMPENSABLE LOSS OF WAGES IS IRREPARABLE AND EXTRAORDINARY HARM

Finally, a failure to postpone the effectiveness of these denials will mean that Mr. Krishnamurthy will lose over $2,000 in wages per week.[14] These financial losses are in themselves irreparable harms in that just as in the case of Stellar the USCIS's sovereign immunity prevents him from seeking reimbursement of these losses when he prevails in this litigation. *See supra.*

The holding in *Sampson v. Murray*, 415 U.S. 61 (1974), often relied upon for the proposition that lost salary does not represent irreparable harm, was premised upon the assumption that there is a remedy at law for lost wages:

> The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm. *Id.* at 90.

Here there is no such possibility of compensation. Further, the harm to Mr. Krishnamurthy is extraordinary in that it deprives him of all means of supporting

---

[14] Based upon the offered salary of $108,000 per year. Exhibit A at 11.

himself, since he is legally prohibited from performing any work in the U.S. to support himself and his family.[15]

### III.   DEFENDANT WILL SUFFER NO HARM FROM THE GRANT OF POSTPONEMENT

Further, the balance of equities tip strongly in the plaintiffs' favor in that although they will suffer irreparable harm if the effectiveness of the denials is not postponed, if there is any harm to the defendant at all, it is minimal. *See Ortega-Peraza v. Ilchert*, No. C-92-4972 MHP, 1993 U.S. Dist. LEXIS 2195, at *15 (N.D. Cal. Feb. 26, 1993) ("On the other hand, the burden on the defendants that would result from prohibiting their withholding of employment authorization from Ortega-Peraza is minimal."). Here postponing the effectiveness of the denial of Mr. Krishnamurthy's application for extension of stay does not even put the defendant to the minimal burden that would have been imposed upon it by requiring it to grant employment authorization to Mr. Ortega-Peraza. In fact the

---

[15] One district court recently found a possible loss of wages to be irreparable harm to low wage workers even where the ability to obtain compensation in the future existed because "because of the economic position of the average worker . . . it is essential to the public welfare that he receive his pay when it is due." *Carrillo v. Schneider Logistics, Inc*., 823 F. Supp. 2d 1040, 1045 (C.D. Cal. 2011). Even though Mr. Krishamurthy is not a low-wage worker, his economic position is similar to such a worker in that without postponement of this decision he will be unable to work anywhere at all, and therefore be unable to earn even the meager amounts necessary to survival.

proposed postponement literally requires the defendant to do nothing, and so imposes no harm upon it whatsoever.


## IV.   THE PUBLIC INTEREST FAVORS POSTPONEMENT

Finally, the public interest favors a postponement of the effectiveness of the denial of the decisions as there is a public interest in just judgments. *Arizona v. Washington*, 434 U.S. 497, 510 (1978). Since a failure to postpone the effectiveness of these decisions is likely to cause Mr. Krishnamurthy to leave the country before the case is completed, either to avoid the unlawful presence bar, avoid arrest and prolonged detention, or simply to avoid starvation, thereby mooting this lawsuit before the defendant's unjust judgment in this matter is replaced with a just one, accordingly the grant of a postponement is in the public interest.


## CONCLUSION

This Court should postpone the effectiveness of the denial of Stellar's petition for nonimmigrant worker and Mr. Krishnamurthy's application for extension of stay pending a decision in this action. The Court's order should also indicate that the postponement is effective the date of the denials so that Mr.

Krishnamurthy will not suffer any accrued unlawful presence as a result of these

baseless denials.

Respectfully Submitted this 28 day of  August, 2018

/s/ *Michael E. Piston*

Michael E. Piston
Attorney for the Plaintiff
225
Broadway,
Suite 307
New York, NY, 10007
Ph: 646-845-9895
Fax: 206-770-6350
Email: michaelpiston4@gmail.com

CERTIFICATE OF SERVICE

I certify that the foregoing with served upon the defendant in this action by

certified mail at the following addresses:

United States Citizenship and Immigration Services
c/o Civil Process Clerk
United States Attorney's Office
 555 4th St NW, Washington, DC 20530

United States Citizenship and Immigration Services
c/o  Attorney General
US Department of Justice
950 Pennsylvania Avenue NW
Washington DC 20530

United States Citizenship and Immigration Services
20 Massachusetts Ave NW

Washington DC 20529

*s/ Michael E. Piston*
Michael E. Piston (MI 002)
Attorney for the Plaintiffs
225 Broadway Suite 307
New York, NY 10007
646-845-9895

Dated: August28 , 2018