# Exhibit A

Stellar Software Network Inc. / AAO Appeal
WAC1890227492
Associated Case Number: WAC1723351576

# UNITED STATES DEPARTMENT OF HOMELAND SECURITY
# UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICE
# ADMINISTRATIVE APPEALS OFFICE

June 28, 2018

**In the Matter of:**

Stellar Software Network, Inc[1]

Petition: Form I-129
File Number: WAC1890227492
Associated Case#: WAC1723351576

**Petitioner,**

Kartik Krishnamurthy

**Beneficiary.**

_____/

## REASON FOR APPEAL

I. **THERE IS NO LOGIC TO THE DECISION'S DENIAL OF THIS PETITION BECAUSE THE PETITIONER DID NOT PROVIDE CERTAIN INFORMATION FROM THE END CLIENT IN A "STATEMENT OF WORK" WHEN THE VERY SAME INFORMATION WAS PROVIDED BY THE END-CLIENT IN A LETTER**

The decision in this matter is completely without merit and in fact nonsensical.

The first basis for denial is that the petitioner supposedly failed to establish that there was an employer employee relationship between itself and Mr. Krishnamurthy (the beneficiary). The purported reason for this conclusion was merely the fact that the petitioner did not provide a "statement of work" from Honda North America (the end client) and therefore this somehow demonstrates that it lacked an employer employee relationship with the beneficiary.:

This is nonsense. Not only did the petitioner submit a contract with the beneficiary which shows that it had the absolute right to control his work activities but this was supported by, among other things, a letter from the end client which also confirmed that the petitioner controlled the beneficiary's work activities. There is absolutely nothing, anywhere, that says that a "statement of work" (and not any other document)

---

[1] The petitioner does not have an A number or a USCIS Ellis number. Neither does the beneficiary.

Name: Dipak Thakker
Title: COO, Stellar Software Network, Inc.
Date: 06/28/2018

3018095385940   3931753 160197 31 0651570 070518 19:53 070218 I2908-21100

Stellar Software Network Inc. / AAO Appeal
WAC1890227492
Associated Case Number: WAC1723351576

is necessary to establish that a petitioner has an employer employee relationship with the beneficiary. In fact, the very document which the decision relies upon for support for the proposition that the petitioner failed to establish that it has an employer employee relationship with the beneficiary expressly identifies evidence that the petitioner has an employer employee relationship as including:

- "Copy of an employment offer letter that clearly describes the nature of the employer employee relationship and the services to be performed by the beneficiaries
- " Copies of ... letters between the petitioner and the authorized officials of the ultimate end-client companies where the work will actually be performed by the beneficiary, which provide information such as a detailed description of the duties the beneficiary will perform, the qualifications that are required to perform the job duties, salary or wages paid, hours worked, benefits, a brief description of who will supervise the beneficiary and their duties, and any other related evidence;"

Memorandum for Service Center Directors
Subject: Determining Employer-Employee Relationship for Adjudication of H-IB Petitions, Including Third-Party Site Placements at 8.

The petitioner provided both of these documents. In fact, a letter from the end client was even expressly mentioned in the RFE as evidence that the petitioner could submit to show that it had an employer employee relationship with the beneficiary. Therefore, this this aspect of the decision was simply absurd.

Equally absurd was the determination that merely because the petitioner did not provide a "statement of work" from Honda North America therefore it failed to establish that the job offered was a specialty occupation. Again, the petitioner's letter from Honda North America did demonstrate in great detail exactly what the duties of the position were. There is absolutely no basis whatsoever for the claim that the client's statement of the beneficiary's duties must be on a statement of work as opposed to in any other document.

  II.  IN ANY EVENT, THE PETITIONER IS THE EMPLOYER OF THE BENEFICIARY BECAUSE IT HAS THE RIGHT TO CONTROL THE BENEFICIARY

    A. IT IS BEYOND DISPUTE THAT THE PETITIONER HAS THE RIGHT TO CONTROL THE BENEFICIARY

The shows the petitioner has the legal right to control the beneficiary, whether it chooses (or needs) in practice to exercise it or not, in that it is provided under its agreement with the beneficiary in which he expressly agrees (on the final page) that:

> *(1) Kartik Krishnamurthy ("Employee") acknowledges that he will work under the supervision and control of Stellar Software Network, Inc. ("Employer") throughout the time employee is*

_[signature]_
Name: Dipak Thakker
Title: COO, Stellar Software Network, Inc.
Date: 06/28/2018

Stellar Software Network Inc. / AAO Appeal
WAC1890227492
Associated Case Number: WAC1723351576

> *employed by Employer regardless of the location where he physically provides services. Employee shall be appointed a supervisor which he will continue to report to throughout Employee's employment unless advised in writing to the contrary.*
> *(2) Employer will determine Employee's location and relocation assignments (i.e. where the Employee is to report to work);*
> *(3) Where Employee works at a location not controlled by Employer, Employee will telephone his supervisor no less than once a week regarding his progress on the assigned work.*
> *(4) The Employee acknowledges that although he may be called upon to assist the employees of companies other than Employer in his work, only the Employer, through the Employee's supervisor, has the right to control the work of the Employee on a day-to-day basis.*
> *(5) Employee acknowledges that only the Employer has hired, and will pay, and have the ability to fire the Employee.*

Further, this right is expressly acknowledged by the end client Honda North America, in a letter enclosed with the motion to reopen, which states that: "Only Stellar Software Network Inc. will have the legal right to control the work of Kartik Krishnamurthy as well as the right to assign Kartik Krishnamurthy to this, or any, work site location, and has the legal right to control her activities."

### B. THE PETITIONER'S LEGAL RIGHT TO CONTROL THE BENEFICIARY'S WORK ACTIVITIES IS DISPOSITIVE OF THE EXISTENCE OF AN EMPLOYER-EMPLOYEE RELATIONSHIP REGARDLESS OF WHO EXERCISE ACTUAL CONTROL

There are few propositions more firmly settled in the field of labor law than that the right of control, not actual control, is the gravamen of an employer-employee relationship. See, e.g.,. *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 448 (2003), *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992). The right to control the beneficiary is different from actual control. An employer may have the right to control the beneficiary's job-related duties and yet not exercise actual control over each function performed by that beneficiary. See e.g. . *Avis Rent A Car Sys., Inc. v. United States*, 503 F.2d 423, 425 n.1 (2d Cir. 1974) ; *Trent v. Atl. City Elec.* Co., 334 F.2d 847, 863 (3d Cir. 1964), *Weber v. Commissioner*, 60 F.3d 1104, 1110 (4th Cir. 1995); *Breaux & Daigle, Inc. v. United States*, 900 F.2d 49, 50 (5th Cir. 1990); *NLRB v. Cement Transp., Inc.*, 490 F.2d 1024, 1027 (6th Cir. 1974),*Sargent v. Commissioner*, 929 F.2d 1252, 1253 (8th Cir. 1991); *Chin v. United States*, 57 F.3d 722, 725 (9th Cir. 1995), *Jones v. Goodson*, 121 F.2d 176, 177 (10th Cir. 1941), USCIS Adjudicator's Field Manual (AFM) § Chapter 31.3 nt.1..[2] This is also the only reasonable interpretation of 8 CFR § 214.2(h)(4)(ii)(2) which defines a "United States employer" as one who has an employer-employee relationship with respect to employees under this part, as indicated by the fact that it **may** hire, pay, fire, supervise, or otherwise control the work of any such employee ....". (emphasis added).

---

[2] "Policy material is binding on all USCIS officers and must be adhered to unless and until revised, rescinded or superseded by law, regulation or subsequent policy, either specifically or by application of more recent policy material. ...Examples of policy materials are: Field and Administrative Manuals" AFR 3.4. Thus, the AFM, being an administrative manual, is a policy material binding on all USCIS officers.

_____
Name: Dipak Thakker
Title: COO, Stellar Software Network, Inc.
Date: 06/28/2018

Stellar Software Network Inc. / AAO Appeal
WAC1890227492
Associated Case Number: WAC1723351576

The fact that an employer "may" control the work of an employee (rather than "must"[3]) demonstrates that, consistent with *Clackamas, Darden,* the decisions of at least 8 circuit courts of appeal and the USCIS's own AFM, it is only the right to control and not the actual exercise of the same which is determinative of an employer-employee relationship.

What is more, this is also the law of the Sixth Circuit, which is controlling here, inasmuch as the petitioner is located within its jurisdiction.[4]

> Sixth Circuit law is clear and consistent in holding that employee status is determined based on the Company's retention of a right to control the manner and means of the worker's service. This right does not need to be exercised, it matters only if the Company retains the right to do so. *See, Peno Trucking, Inc. v. C.I.R.*, 296 F.App'x 449, 456 (6th Cir. 2008); *N.L.R.B. v. Cement Transp., Inc.*, 490 F.2d 1024, 1027 (6th Cir. 1974)("It is the right to control, not its exercise, that determines an employee relationship.")". *Jammal v. Am. Family Ins. Grp.*, No. 1: 13 CV 437, 2017 U.S. Dist. LEXIS 120683, at *3 (N.D. Ohio July 31, 2017).

### III. IN ANY EVENT THE PETITIONER IS IN FACT EXERCISING SUPERVISORY CONTROL OVER THE BENEFICIARY.

As the petitioner states in Answer #1 and #2 of its "Q&A":

---

[3] The Oxford Online Dictionary offers several definitions of "may", only one of which is remotely applicable here:

"Used to ask for or to give permission.
*'you may confirm my identity with your Case Officer, if you wish'*
*'may I ask a few questions?'*
…
- *'None of the text or images from this site may be reproduced in whole or part without written permission.'*
Accordingly there is no circumstances in which the word "may" can convey the idea that an employer **must** control his employ, but rather shows that he merely has permission to do – that is that he has the right to control, whether he chooses to exercise it or not. Or perhaps to cite a more familiar example, the fact that a court "may" grant oral argument in a case certainly doesn't oblige it to do so.

[4] *See Matter of Anselmo*, 20 I&N Dec. 25, 30-32 (BIA 1989), *Matter of X*, online at
https://www.uscis.gov/sites/default/files/err/B6%20-%20Skilled%20Workers,%20Professionals,%20and%20Other%20Workers/Decisions_Issued_in_2013/AUG092013_01B6203.pdf ("Counsel's reliance on Construction and Design is misplaced. The petitioner's business is not located in the same jurisdiction as the cited case. Although the AAO may consider the reasoning of the decision, the AAO is not bound to follow the published decision of a U.S. circuit court case outside of that circuit. *See Matter of Anselmo*, 20 I&N Dec. 25, 30-32 (BIA 1989).").

*[signature]*
Name: Dipak Thakker
Title: COO, Stellar Software Network, Inc.
Date: 06/28/2018

Stellar Software Network Inc. / AAO Appeal
WAC1890227492
Associated Case Number: WAC1723351576

    1.    Does the petitioner supervise the beneficiary (off-site or on-site?)?

*Ans: Yes, the petitioner will supervise the beneficiary offsite*

    2.    If the supervision is off-site, how does the petitioner maintain such supervision, i.e. weekly calls, reporting back to main office routinely, or site visits by the petitioner?

*Ans: Kartik Krishnamurthy will have weekly calls with Srinivas Kethireddy to monitor his progress and training and will be subject to a performance review by Stellar Software Network based upon his work product; continued employment is dependent upon the review. Enclosed is performance evaluation of Kartik Krishnamurthy for the year 2017.*

Furthermore, the fact that the petitioner retains the right to ultimate control of the beneficiary's activities (see paragraphs 1-5 of the Addendum to the petitioner's contract with the beneficiary) explains why the Internal Revenue Service has concluded, based upon common law principles, that companies such as Stellar which provide software consultants to provide services directly to their clients are their employers in fact. See Rev. Rul. 87-41, 1987-1 C.B. 296, 1987 WL 419174 (IRS RRU) Internal Revenue Service (I.R.S.) Revenue Ruling "EMPLOYMENT STATUS UNDER SECTION 530(D) OF THE REVENUE ACT OF 1978" Published: 1987, a copy of which is enclosed. This was the **very same** revenue ruling referred to by the Supreme Court in *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 324 (1992) as an example of the proper application of common-law principles to determine whether an employer-employee relationship existed, thus demonstrating conclusively that the Supreme Court itself consider such a relationship to exist in the instant situation.[5]

    IV.    **APPLICATION OF THE NEUFELD MEMO DEMONSTRATES THAT THE RECORD ESTABLISHES AN EMPLOYER-EMPLOYEE RELATIONSHIP BETWEEN THE PETITIONER AND THE BENEFICIARY**

A more detailed review of the standards established by the Neufeld memo[6] and their application to the instant situation leads inexorably to the conclusion that the petitioner is the employer of the beneficiary.

---

[5] *Darden* favorably noted that the IRS set forth 20 factors as guides in determining whether an individual qualifies as a common-law "employee" in various tax law contexts. *Id.* Virtually all of those factors also point to the instant beneficiary as being an employee of the petitioner. See EXHIBIT 15 to the Motion to Reopen. Accordingly, nothing could be clearer then that the *Darden* court would've found an employer-employee relationship in this situation.

[6] "Memorandum for Service Center Directors
Subject: Determining Employer-Employee Relationship for Adjudication of H-IB Petitions, Including Third-Party Site Placements"

Name: Dipak Thakker
Title: COO, Stellar Software Network, Inc.
Date: 06/28/2018

Stellar Software Network Inc. / AAO Appeal
WAC1890227492
Associated Case Number: WAC1723351576

### A. ALMOST ALL OF THE INDICIA OF AN EMPLOYER-EMPLOYEE RELATIONSHIP APPLIES TO THE INSTANT POSITION

In determining the existence of an employer-employee relationship the USCIS looks for guidance to the aforementioned memorandum of Associate Director Donald Neufeld in which he stated that "In considering whether or not there is a valid 'employer-employee relationship' for purposes of H-1B petition adjudication, USCIS must determine if the employer has a sufficient level of control over the employee. The petitioner must be able to establish that it has the right to control over when, where, and how the beneficiary performs the job and USCIS will consider 11 factors to make such a determination (with no one factor being decisive)." The enclosed "Petitioner's Q & A Regarding Employer-Employee Relationship" addresses each of these issues, and demonstrates that all but factor 9 indicate that an employer-employee relationship exists. Nothing in Mr. Neufeld's memo indicates that all of the relevant factors must be satisfied to establish a bona fide employer-employee relationship between the parties. Here the fact 10 of the 11 relevant factors are satisfied is highly compelling evidence of the existence of an employer-employee relationship.

Further, an additional 3 factors recently mentioned by the Service as indicia of an employee-employee relationship, also exist here. See "Petitioner's Q & A Regarding Employer-Employee Relationship" items 12-14.

### B. THE END-CLIENT CONFIRMS THE TERMS OF THE BENEFICIARY'S EMPLOYMENT.

Beneficiary is performing services for the end-client client Honda North America. Petitioner hereby submits a letter dated March 16, 2019, from the end client, (**EXHIBIT 3**[7]), confirming the work to be performed by Kartik Krishnamurthy. The letter also confirms that Stellar Software Network is the employer for Kartik Krishnamurthy and that only Stellar will have the legal right to control the work of Kartik Krishnamurthy.

This plus the petitioner's satisfaction of 9 of the 11 factors mentioned by the Neufeld memorandum demonstrates that there is a valid employer-employee relationship between the petitioner and the beneficiary.

### V. THE JOB OFFERED IS IN A SPECIALTY OCCUPATION

#### A. THE JOB OFFERED QUALIFIES AS A SPECIALTY OCCUPATION BECAUSE THE OOH PROVIDES THAT INFORMATION TECHNOLOGY PROJECT MANAGERS NORMALLY MUST HAVE A BACHELOR'S DEGREE IN A COMPUTER- OR INFORMATION SCIENCE–RELATED FIELD

---

[7] All references to Exhibits in this matter refer to the exhibits to the petitioner's motion to reopen filed previously herein.

Name: Dipak Thakker
Title: COO, Stellar Software Network, Inc.
Date: 06/28/2018

Stellar Software Network Inc. / AAO Appeal
WAC1890227492
Associated Case Number: WAC1723351576

The USCIS asserted in the RFE filed in this matter that:

> USCIS recognizes the Occupational Outlook Handbook ("OOH"), a publication of the U.S. Department of Labor (DOL), as an authoritative source on the duties and educational requirements of the wide variety of occupations that it addresses. You provided a certified Labor Condition Application (LCA) from the DOL that the proffered position is a **Computer Occupations - All Other position.** The OOH does not contain descriptions for this occupation. You did not provide other evidence to show that a bachelor's degree or higher or its equivalent in a specific specialty is normally required for entry into the position.

However, the OOH does provide that the job of IT project managers "normally must have a bachelor's degree in a computer- or information science–related field".
https://www.bls.gov/ooh/management/computer-and-information-systems-managers.htm#tab-4 [8]

The petitioner, in choosing the occupational code of 15-1199 on the ETA 9035 actually was referring to the fact that the job was that of an Information Technology Project Manager (S.O.C. 15-1199.09). However, the ETA 9035 which the petitioner must complete online does not permit the entry of decimals after the six-digit S.O.C. number. So, 15-1199 was the closest approximation of the actual occupational code the form would permit.

> B. INASMUCH AS THE JOB OF AN *INFORMATION TECHNOLOGY PROJECT MANAGERS* NORMALLY REQUIRES A SPECIALIZED DEGREE IT IS IMMATERIAL WHETHER THE PROFFERED POSITION IS MORE COMPLEX OR UNIQUE THAN THAT OF OTHERS WORKING IN THE SAME OCCUPATION.

**Further RFE states that:**

> *The record indicates that you certified to DOL that you were seeking to fill an entry level position, one that has "only a basic understanding of the occupation...performs routine tasks that require limited, if any, exercise of judgment" and pay the person the prevailing wage for an entry level employee. Thus, the LCA does not show that the proffered position is more complex or unique that only an individual with a bachelor's degree or higher in a specific specialty in normally required for entry into the position.*

---

[8] What the OOH exactly says is "Computer and information systems managers normally must have a bachelor's degree in a computer- or information science–related field. " However, the OOH elsewhere provides that "Computer and information systems managers (are) often called information technology (IT) managers or IT project managers..." https://www.bls.gov/ooh/management/computer-and-information-systems-managers.htm#tab-1. Therefore it is appropriate to read the word "IT project managers" for that of "Computer and information systems managers" in the text above. Nor is it inappropriate for the petitioner to use the educational requirements for Computer and information systems manager in the OOH without classifying the job under S.O.C. 11-3021.00 - Computer and Information Systems Managers on the LCA. Unlike the OOH, none of the alternative job titles for S.O.C. 11-3021.00 include "information technology project manager". Therefore S.O.C. 15-1199.09 is the only S.O.C. that directly matches the job offered.

_____
Name: Dipak Thakker
Title: COO, Stellar Software Network, Inc.
Date: 06/28/2018

3018095385940  2931753 160197 31 0651570 070518 19:53 070218 12908-21100

Stellar Software Network Inc. / AAO Appeal
WAC1890227492
Associated Case Number: WAC1723351576

The petitioner respectfully reminds the agency that it did not submit the LCA with a "Wage Level I" designation. Instead it submitted the certified LCA, which designated the **Wage Level IV**

Accordingly, the proffered position is not entry level. The issue is, in any event, immaterial in that the petitioner does not rely upon a claim that the proffered position is any more complex or unique than that of any other IT project manager. Rather, the position qualifies as a specialty occupation because a bachelor's degree in a computer- or information science–related field is the normal requirements for the occupation. 8 C.F.R. § 214.2(h)(4)(iii)(A)(1).   § 214.2(h)(4)(iii)(A)(1).

### C. THE FACT THAT ONE MAY QUALIFY FOR THIS JOB ON THE BASIS OF A DEGREE IN ONE OF TWO MAJORS "OR A RELATED FIELD" IS BY NO MEANS A BASIS FOR DETERMINING THAT IT DOESN'T QUALIFY AS A SPECIALTY OCCUPATION.

The Administrative Appeals Office has stated in numerous unpublished decisions, that "USCIS regularly approves H-1B petitions for qualified aliens who are to be employed as engineers, computer scientists, certified public accountants, college professors, and other such occupations." E.g. (Identifying Information Redacted By Agency) 2012 WL 4713226 (AAO February 08, 2012).

However, the Occupational Outlook Handbook provides that "Most accountant and auditor positions require at least a bachelor's degree in accounting or a related field." (emphasis added).

The OOH also states that "Most computer and information research scientists need a Ph.D. in computer science or a related subject, such as computer engineering." (emphasis added). Ergo, it follows that the fact that one may qualify for a job based upon a narrow range of disciplines by no means disqualifies the job offered from being a specialty occupation.

Further, at least two published decisions of the Immigration and Naturalization Service have held that occupations which required at least a bachelor's degree in a certain subject or a related field qualify as a member of the professions. *Matter of Doultsinos*, 12 I & N Dec. (DD 1967), *Matter of Rabbani*, 12 I & N Dec. 15 (DD 1966).

These decisions are binding upon on all Service employees in the administration of the Immigration and Nationality Act. 8 C.F.R. § 103.3(c).

"The clearest common denominator for professional standing is at least a baccalaureate degree awarded for academic study in a specific discipline or narrow range of disciplines. This requirement is explained in numerous Immigration and Naturalization Service precedent decisions dating back to 1966. E.g., *Matter of Portugues Do Atlantico Information Bureau, Inc.*, Interim Decision 2982 (Comm.1984); *Matter of Ahmed*, 12 I & N Dec. 498 (R.C.1967); *Matter of Palanky*, 12 I & N Dec. 66 (R.C.1966); *Matter of Shin*, 11 I & N Dec. 686 (D.D.1966)." *Matter of Caron International, Inc.*, 19 I. & N. Dec. 791, 793 (AAO 1988).

The term "specialty occupation" in the Immigration and Nationality Act "is nothing more than a carry-

Name: Dipak Thakker
Title: COO, Stellar Software Network, Inc.
Date: 06/28/2018

Stellar Software Network Inc. / AAO Appeal
WAC1890227492
Associated Case Number: WAC1723351576

over" from the pre-1990 Act term, "member of the professions", Memorandum of Jacquelyn Bednarz, August 26, 1993, reprinted in 70 No. 41 Interpreter Releases 1411.[9] See also (Identifying Information Redacted By Agency), 2012 WL 4713221 nt4 (AAO, February 7, 2012) and at least 9 other AAO decisions, all citing *Matter of Michael Hertz Assocs.*, 19 I&N Dec. 558, 560 (Comm. 1988) for the proposition that the required of bachelor's degree in business administration is too generalized to establish that the position qualifies as a specialty occupation, even though Hertz actually held that a business administration degree requirement was too generalized to qualify an occupation as a *profession*.

The requirement that the degree must be in a specific academic major or have a specific title has been explicitly rejected by at least one United States District Court and affirmed by none. The California Service Center denied an H-1B petition for a Market Research Analyst, finding that the OOH "...does not indicate that the degrees held by such workers must be in a specific specialty that is directly related to market research...." *In Re: Residential Finance Corporation*, WAC 11 215 55179 (CSC, Nov. 11, 2011).

In reversing the CSC and directing approval of the petition, the court said this:

> Defendant argues that Plaintiff is attempting to read out of the statutory and regulation requirements the "specific specialty" component. But Defendant's approach is too narrow. ...Defendant's implicit premise that the title of a field of study controls ignores the realities of the statutory language involved and the obvious intent behind them. The knowledge and not the title of the degree is what is important. Diplomas rarely come bearing occupation-specific majors. What is required is an occupation that requires highly specialized knowledge and a prospective employee who has attained the credentialing indicating possession of that knowledge. *See Tapis Int'l v. I.N.S.*, 94 F. Supp. 2d 172, 175-76 (D. Mass. 2000) (rejecting agency interpretation because it would preclude any position from satisfying the "specialty occupation" requirements where a specific degree is not available in that field).

*Residential Finance Corporation v. U.S.C.I.S*, Case No. 2:12-cv-00008 (U.S.D.C., S.D. Ohio, Mar. 12, 2012), Slip. Op. 18-19.

Therefore the "body of highly specialized knowledge" which must be applied theoretically and practically in the performance of the duties of the occupation must by necessity be directly related to the duties of the occupation, that is, "the specific specialty." The source of that knowledge, however, may originate in different fields or disciplines, or a combination of fields or disciplines, including those in a "related field". Whatever the field named in the degree, the inquiry must go to the substance of the knowledge learned, the attainment of which is usually memorialized by the conferral of a degree.

### D. THE BENEFICIARY QUALIFIES AS AN *INFORMATION TECHNOLOGY PROJECT MANAGER* BECAUSE HE HAS THE EQUIVALENT OF A DEGREE IN INFORMATION SYSTEMS

---

[9] EXHIBIT 16

Name: Dipak Thakker
Title: COO, Stellar Software Network, Inc.
Date: 06/28/2018

Stellar Software Network Inc. / AAO Appeal
WAC1890227492
Associated Case Number: WAC1723351576

In the instant petition, Petitioner had submitted an evaluation of the beneficiary's academic and work experience issued by a professor with the authority to issue college credit for work experience at a university which has a policy of so issuing, indicating that the beneficiary's education experience, taken as a whole, is the equivalent of a bachelor's degree in Management Information Systems. That Information Systems is an information science-related field is illustrated by the following article: Ellis, D., Allen, D. and Wilson, T. 1999. Information Science and Information Systems: Conjunct Subjects Disjunct Disciplines. JASIS 50(12):1095–1107 (see also:

https://web.archive.org/web/20120425073115/http://www.caisacsi.ca/proceedings/2000/monarch_2000.pdf)

In that article the authors conclude that "the subject matters of the two fields can be combined in a discipline will be shown by a similar analysis of a third field, medical informatics, a new discipline in it its own right and a seeming subject matter hybrid of information science and information systems." Id.

### E. THE END-CLIENT CONFIRMS ITS BACHELOR'S DEGREE REQUIREMENT TO PERFORM BENEFICIARY'S PROPOSED DUTIES

As mentioned, the record contains a letter from the end-client, Honda North America [EXHIBIT 3] confirming that the Beneficiary will be working as a Senior Project Manager Information Technology and that the **end date of the project is 03/31/2021**. It also confirms that "The knowledge required in this position requires a Bachelor's degree at a minimum or a Master's degree with course work in Information Technology, Accounting / Finance and Business Management. Kartik Krishnamurthy has a Master's degree in Business Administration from Northeastern University in Boston, Massachusetts, graduate coursework in Information Technology from the State University of New York in Buffalo, New York, the Project Management Professional certification from the Project Management Institute in Newton Square, Pennsylvania and undergraduate Commerce degree from University of Mumbai."

Accordingly, the job qualifies as a specialty occupation under both 8 C.F.R. **214.2(h)(4)(iii)(A)(1) and (4)**, and the beneficiary qualifies to perform it regardless of what interpretation the USCIS might assign to its reference to the OES in its labor condition application.

### CONCLUSION

In visa petition proceedings, it is the petitioner's burden to establish eligibility for the immigration benefit sought. Section 291 of the Act, 8 U.S.C. § 1361; *Matter of Otiende*, 26 I&N Dec. 127, 128 (BIA 2013).

Name: **Dipak Thakker**
Title: **COO, Stellar Software Network, Inc.**
Date: 06/28/2018

Stellar Software Network Inc. / AAO Appeal
WAC1890227492
Associated Case Number: WAC1723351576

Inasmuch as the petitioner has certainly met this burden, the prior decision should be vacated and the petition approved.

Respectfully Submitted

*[signature]*

Michael E. Piston
Attorney for the Petitioner

*[signature]*

Name: Dipak Thakker
Title: COO, Stellar Software Network, Inc.
Date: 06/28/2018