UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STELLAR IT SOLUTIONS, INC, *et al.*  <br><br>**Plaintiffs**  <br><br>v.  <br><br>UNITED STATES CITIZENSHIP & IMMIGRATION SERVS.  <br><br>**Defendant.** | Civil Action No. 18-2015 (RC) (ECF)  <br><br>JUDGE RUDOLPH CONTREAS |

**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

**SUMMARY OF ARGUMENT**

The government has indicated that it opposes the plaintiffs' motion to postpone the effectiveness of the denial of Stellar's nonimmigrant visa petition upon plaintiff Krishnamurthy's behalf and the corresponding denial of his application for extension of stay on four grounds: 1) that there is no reviewable final order; 2) if the decision were reviewable it is based on the record and not arbitrary and capricious; 3) the plaintiffs cannot demonstrate irreparable harm and 4) that postponement is not in the public interest. None of these objections have merit.

The USCIS's May 31, 2018 adjudication of Stellar Software Solutions, Inc. (Stellar)'s H-1B petition upon Kartik Krishnamurthy's behalf is a final decision because it automatically terminated Mr. Krishnamurthy's employment authorization under 8 C.F.R. § 214.2(h)(2)(i)(H)(2) as well as denied his application to extend his H-1B status. Stellar's appeal of the denial of its petition cannot and will not reverse the present termination of Mr. Krishnamurthy's employment authorization and there is no appeal of the denial of an application for extension of stay.

Mr. Krishnamurthy has been without employment authorization since June 1 of this year. At most a favorable decision by the Administrative Appeals Office (AAO) may grant Mr. Krishnamurthy employment authorization in the future. An AAO decision cannot restore the period of employment authorization (nor the wages) he has lost since June 1, nor those he will

continue to lose until the AAO's decision. Therefore, as to Mr. Krishnamurthy's employment authorization under § 214.2(h)(2)(i)(H) from June 1, 2018 until the date of the AAO's future decision, the decision of May 31, 2018 marks the consummation of the agency's decisionmaking process -- it is not of a merely tentative or interlocutory nature inasmuch as it cannot be reversed by any future AAO decision.

In any event an AAO appeal does not affect the finality of a decision under 5 U.S.C. § 704 because the decision is not inoperative during the appeal. What is more, denial of Mr. Krishnamurthy's application for extension of stay is non-appealable and so obviously final. However, since it is based solely upon the denial of Stellar's H-1B petition, its review necessarily entails the review of that decision as well. Accordingly, both of the USCIS's decisions of May 31, 2018 are final under 5 U.S.C. § 704 and so subject to APA review.

Further, the USCIS's decision of May 31 was arbitrary and capricious in that it was not only unsupported by an iota of evidence in the record, but also reflected a total disregard of the letter provided USCIS by Stellar's end-client, Honda North America, containing the duties which Mr. Krishnamurthy would perform at its location, duties which fully established that the job offered was that of an Computer Information Systems Manager a/k/a IT Project Manager. Since the Occupational Outlook Handbook shows that Computer Information Systems Manager a/k/a IT Project Manager is a specialty occupation (in that it normally requires a bachelor's degree in the specialized field of computer or information sciences or its equivalent) therefore the letter from Honda North America establishes that the job offered is in a specialty occupation.

Further, the government has offered no rebuttal to Mr. Krishnamurthy's claim that he will be irreparably harmed by being required to depart the U.S. no later than November 27, 2018 to avoid being rendered in inadmissible for 3 years, thereby abandoning his application for extension of H-1B status, and that he has suffered a complete loss of wages since June 1, 2018 for which he cannot be compensated even if Stellar prevails in its appeal, due to USCIS sovereign immunity.

Finally plaintiffs agree with the government that "the public interest favors applying federal law correctly." Therefore, inasmuch as the USCIS's decision plainly did not apply federal law correctly, the public interest favors the postponement of its effectiveness.

2

ARGUMENT

I.     THE USCIS'S DECISIONS OF MAY 31, 2018 ARE FINAL

   A.  THE ADJUDICATION OF STELLAR'S H-1B PETITION RESULTED IN A FINAL DENIAL OF MR. KRISHNAMURTY'S EMPLOYMENT AUTHORIZATION UNDER 8 CFR 214.2(h)(i)(H)

Mr. Krishnamurthy was authorized to be employed by Stellar from the expiration of his prior H-1B status on September 13, 2017, ECF Document 1-5 at 9, until the denial of Stellar's H-1B petition upon his behalf on May 31, 2018. 8 C.F.R. § 214.2(h)(2)(i)(H)[1]. Specifically, the agency's "adjudication" of Stellar's H-1B petition caused that employment authorization to cease. § 214.2(h)(2)(i)(H)(2). Regardless of the outcome of any appeal by Stellar to the Administrative Appeals Office, the USCIS's adjudication of Stellar's petition upon Mr. Krishnamurthy's behalf is final and determines both Stellar and Mr. Krishnamurthy's rights or obligations and results in legal consequences, namely Mr. Krishnamurthy's legal unemployability until a favorable AAO decision.

To elaborate, even if Stellar prevails in its appeal, that will not change the fact that Mr. Krishnamurthy's employment authorization terminated on May 31, 2018 with the adjudication[2] of Stellar's petition upon his behalf. Therefore even a favorable decision by the Administrative Appeals Office in the future will not change the fact that Mr. Krishnamurthy was not authorized to be employed from June 1, 2018 until that decision, and that he will not be able to recoup the

---

[1] 8 C.F.R. § 214.2(i)(H) provides that:
An eligible H-1B nonimmigrant is authorized to start concurrent or new employment under section 214(n) of the Act upon the filing, in accordance with 8 CFR 103.2(a), of a nonfrivolous H-1B petition on behalf of such alien, or as of the requested start date, whichever is later.
(1) Eligible H-1B nonimmigrant. For H-1B portability purposes, an eligible H-1B nonimmigrant is defined as an alien:
(i) Who has been lawfully admitted into the United States in, or otherwise provided, H-1B nonimmigrant status;
(ii) On whose behalf a nonfrivolous H-1B petition for new employment has been filed, including a petition for new employment with the same employer, with a request to amend or extend the H-1B nonimmigrant's stay, before the H-1B nonimmigrant's period of stay authorized by the Secretary of Homeland Security expires; and
(iii) Who has not been employed without authorization in the United States from the time of last admission through the filing of the petition for new employment.

Prior to the May 31, 2018 adjudication of Stellar's petition Mr. Krishnamurthy satisfied each of these requirements in that he had been lawfully admitted to the U.S. in H-1B status, ECF Document 1-5 at 75, a petition for new employment had been filed upon his behalf with a request to extend his H-1B status, ECF Document 1-10 at 1, and he had not been employed without authorization. Accordingly, he satisfied all requirements for employment authorization under § 214.2(i)(H) until the adjudication of Stellar's petition on May 31, 2018. ECF Document 1-9.
[2] If however the USCIS asserts that the "adjudication" referred to in 8 C.F.R. § 214.2(h)(2)(i)(H)(2) is not the denial of the petition by a USCIS regional service center but rather, at least when an appeal of that decision to the AAO is filed, a decision on that appeal, then the plaintiffs will gratefully dismiss this action as moot.

income that has been lost because of the termination of his employment. Accordingly, the agency's decision of May 31, 2018, adjudicating Stellar's petition upon Mr. Krishnamurthy's behalf, is in fact a **final** decision for the purposes of 5 U.S.C. § 704.

    B.  THE MAY 31 DECISION IS FINAL DESPITE THE APPEAL BECAUSE THE APPEAL DOES NOT MAKE IT INOPERATIVE

The government's claim that the decision of May 31, 2018 is non-final because of the AAO appeal is directly contrary to the plain language of 5 U.S.C. § 704, which expressly states in relevant part that "Except as otherwise expressly required by statute, agency action otherwise final[3] is final for the purposes of this section … unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority."

Here the agency certainly has not provided that the denial of an H-1B petition is not operative when there is an appeal to a superior agency authority (here the AAO) pending, in that neither the termination of Mr. Krishnamurthy's employment authorization under § 214.2(h)(i)(H) nor the denial of his extension of stay are rendered inoperative by the appeal. Therefore, because it had the effect of irreversibly (and unappeallably) terminating Mr. Krishnamurthy's employment authorization during the time the appeal is pending, as well as denying his extension of stay (and so rendering him unlawfully present and subject to removal proceedings), the denial of this H-1B petition was final for the purpose of adjudicating Mr. Krishnamurthy's interim employment authorization and extension of stay even when the denial of the petition is nominally on appeal to the AAO.

The language of 5 U.S.C. § 704 is unequivocal and Congress's purpose in adopting it is plain. Congress wished affected parties to have the right to judicial review of any agency decision unless all adverse effects of that decision were stayed during administrative review. An appeal to the AAO doesn't satisfy that test, and so the appealed decision is nevertheless final for purposes of APA review.

    C.  THE DENIAL OF MR. KRISHANMURTHY'S EXTENSION OF STAY IS FINAL IN THAT IT CANNOT BE APPEALED

---

[3] The government concedes that "if plaintiffs had filed this action instead of filing a direct appeal with the AAO, the current USCIS decision would also be the final one, …" ECF Document 11 at 7.

Finally, the government completely disregards the fact that in this appeal Mr. Krishnamurthy also seeks review of the denial of his application for extension of stay. ECF Document 1 at 10. There is no administrative appeal of this decision. 8 C.F.R. § 214.1(c)(5). Therefore this decision is final as well. Further, since the decision was based solely on the denial of Stellar's H-1B petition upon Mr. Krishnamurthy's behalf, ECF Document 1-10 at 1, review of this decision necessarily entails review of the denial of Stellar's petition as well.

Therefore the denial of Stellar's H-1B petition upon Mr. Krishnamurthy's behalf and the denial of his application for extension of H-1B status are both final for the purposes of 5 U.S.C. § 704.

II. THE DECISION IS ARBITRARY AND CAPRICIOUS BECAUSE IT IS NEITHER SUPPORTED BY SUBSTANTIAL EVIDENCE NOR CONSIDERS ALL PERTINENT EVIDENCE IN THE RECORD

The agency provided two reasons for denying this petition: (a) Stellar had "not established that you will be a 'United States employer' having an 'employer-employee relationship' with Mr. Krishnamurthy as an H-1B temporary 'employee'" ECF Document 1-9 at 3; and (b) Stellar had "not demonstrated that the proffered position is a specialty occupation." ECF Document 1-9 at 6. The plaintiff's motion demonstrated that ground (a) was contrary to law inasmuch as it was inconsistent with two Supreme Court decisions, the decisions of nine circuit courts of appeal, and even the agencies own binding policy memo. ECF Document 2-1 at 24 – 26. The USCIS did not address these arguments and therefore the Court may treat them as conceded. *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) (Walton, J.) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (citations omitted)), aff'd, 98 F. App'x 8 (D.C. Cir. 2004).

The Decision offered two reasons in support of ground (b): 1) Stellar supposedly failed to provide "a statement of work detailing the project's outline description, duration, role and the beneficiary's duties to demonstrate the end-client will actually use computer occupations for daily

5

assignments" and 2) your client has required that the degree "in a specific specialty." ECF Document 1-9 at 5. However, the plaintiffs demonstrated in their opening memorandum in support of this motion that the second point was not in accordance with law because the end-client's requirements were not relevant to the regulation under which Stellar established that the job was a specialty occupation. ECF Document 2-1 at 26-28. Again, the government's opposition did not address this issue, and so it is conceded.

This leaves only one argument in the decision supporting the conclusion that Stellar did not demonstrate that the proffered position is a specialty occupation or in fact supporting the decision at all that has not already been conceded. That one ground is that Stellar supposedly failed to provide "a statement of work detailing the projects outlined description, duration, role and the beneficiaries duties to demonstrate the end client will actually use computer occupations for daily assignments". ECF Document 1-9 at 5. However, as the plaintiffs showed in elaborate detail in their opening memorandum, this assertion is flatly contradicted by the record. ECF Document 2-1 at 20-23. In fact, the record shows that Stellar did submit a letter from its and client, Honda North America (the Honda letter) in which Honda did extensively detail the project's outline, description and duration:

> The project name is **'Interactive Network (iN) Redesign'** with an end date of **03/31/2021.** The Interactive Network (iN) is a suite of portals allowing two way communication between Honda and our dealerships. This project is an initiative for Honda to create a new portal that will transform the dealer relationship towards one that embraces Honda's core values. This redesign effort is a significant undertaking in terms of investment, risk, change, and stakeholder impact as it impacts all transaction systems within Honda's main business units of Auto, Motorcycle, Marine and Power Equipment."
>
> ECF Document 1-8 at 32.

It also describes Mr. Krishnamurthy's role as follows:

> Kartik Krishnamurthy is The Senior Project Manager and so charged with all aspects of managing this crucial initiative from Technology Project Management, Data Analysis, Proces Reengineering, Financial Modeling, Business Planning/Budgeting and Compliance as well asproviding direction to the project team consisting of Business Analysts, Technical Architects and Developers. This role resides within the Information Services Division - Dealer Applications at Honda North America, Inc. The position involves understanding several parameters in thcontext of technology for organizational efficiency, information flows and management, projectmanagement discipline, ability to understand statistical reports, financial forecast and variance analysis, familiarity with Sarbanes Oxley for IT compliance, understanding of US Generally Accepted Accounting Principles to review software and other contractual arrangements in accordance with US GAAP to

identify language requirements and a greater understanding of supply chain and procurement, with all of the above in the context of large scale Information Technology Project Management.

*Id.*

Finally, the Honda letter contains an additional 24 lines of job description that plainly set forth "the beneficiary's duties to demonstrate the end-client will actually use computer occupations for daily assignments." ECF Document 1-8 at 32-33.

The government addresses this argument as follows:

> Specifically, because the beneficiary of the petition was going to be working off-site for one of Stellar's clients, USCIS requested documents such as contracts, statements of work, work orders, service agreements, and/or letters from the client company describing the job duties and qualifications. After reviewing the evidence submitted in response to the RFE, USCIS concluded that there was insufficient information to determine the actual job duties to be performed under the Stellar's contract with its client and whether such duties required a bachelor's degree in a specific specialty. Accordingly, USCIS concluded that Stellar had failed to demonstrate that the position being offered was as a specialty occupation.

ECF Document 11 at 8.

However, the government, like the agency itself, fails to even acknowledge the fact that Stellar did file a letter from its end-client which actually did provide much more than sufficient information to determine what the actual job duties were, nor does the government, again like the agency, offer any explanation whatsoever as to why Honda's description of Mr. Krishnamurthy's actual job duties was "insufficient".

In fact, the job description provided by Honda demonstrates that the duties of the position were consistent with that of a Computer Information Systems Manager, a/k/a IT project manager[4], as set forth in the Occupational Outlook Handbook (OOH) which the "USCIS recognizes as an authoritative source on the duties and educational requirements of the wide variety of occupations that it addresses." ECF Document 1-6 at 2.

The OOH indicates that a Computer Information Systems Manager, a/k/a IT project manager, performs the following duties which are also performed by Mr. Krishnamurthy:[5]

OOH: "Plan and direct the installation and maintenance of computer hardware and software".

---

[4] IT Project Manager is listed in the OOH as an alternative title for Computer Information Systems Managers. "Summary" at https://www.bls.gov/ooh/management/computer-and-information-systems-managers.htm.
[5] This and all following quotes from the OOH come from "What Computer and Information Service Managers Do" at https://www.bls.gov/ooh/management/computer-and-information-systems-managers.htm#tab-2

7

Inasmuch as Honda states that "The Senior Project Manager is charged with all aspects of its 'Interactive Network (iN) Redesign' and that The Interactive Network (iN) is a suite of portals allowing two way communication between Honda and our dealerships", ECF Document 1-8 at 32, it shows that Mr. Krishnamurthy's job involves overseeing the installation of the computer hardware and software necessary for this crucial Interactive Network Redesign initiative.

OOH: "Assess the costs and benefits of new projects and justify funding on projects to top executives" …Mr. Krishnamurthy's duties pertaining to the iN Redesign Initiative includes "Financial Modeling, Business Planning/Budgeting" *Id*., and "Create models for project financial analysis and report and present progress to senior management, provide build vs. buy recommendations, assist management in cost allocation decisions and manage the preparation of budgets and variance reports related to the business analysis of financial information technology projects and programs" Id. at 32-33. This too is consistent with the OOH description of the duties of a Computer Information Systems Manager (a/k/a IT Project Manager)

OOH: Plan and direct the work of other IT professionals, including computer systems analysts, software developers, information security analysts, and computer support specialists". Mr. Krishnamurthy's duties as described by Honda include supervising other IT professionals such as "Business Analysts, Technical Architects and Developers." *Id*. at 32.

Accordingly, the job duties provided by Honda show that Mr. Krishnamurthy performed at least 3 of the 8 major duties associated with Computer Information Systems Managers (a/k/a IT Project Managers) as set forth in the OOH.[6] The OOH provides that "Computer and information systems managers normally must have a bachelor's degree in a computer- or information science–related field." The USCIS's decision does not dispute that this means that a Computer and Information Systems Manager, a/k/a IT Project Manager, is a specialty occupation because "A baccalaureate or higher degree or its equivalent (in a specialized field) is normally the minimum requirement for entry into the particular position;" 8 C.F.R. § 214.2(h)(4)(iii)(A)(1), nor that Mr. Krishnamurthy has the equivalent of a Bachelor's degree majoring in Management Information

---

[6] Granted these are not all of the job duties associated with Computer Information Systems Managers (a/k/a IT Project Managers) but as the OOH observes "Few managers carry out all of these duties. ".

Systems, ECF Document 1-5 at 50-51, not that Management Information Systems is a computer- or information science–related field. Therefore the Honda letter was quite sufficient to show that the job offered constituted a specialty occupation. Not only did neither the decision, nor the Government's opposition, offer any reason for concluding that the Honda letter did not establish that the job offered required a specialized degree, but neither even acknowledges its existence and the decision states bluntly "The record remains absent of evidence regarding the work at the end-client's facility". ECF Document 1-9 at 3.

The fact that the decision claims that the record contains no evidence regarding the work at the end-client's facility even though the Honda letter contains 38 lines describing that work demonstrates that the USCIS simply did not consider the Honda letter in its decision.

"The task of the reviewing court under this (arbitrary and capricious) standard is to determine whether the agency has considered the pertinent evidence, examined the relevant factors, and articulated a satisfactory explanation for its action including whether there is a 'rational connection between the facts found and the choice made.'" *J. Andrew Lange, Inc. v. FAA*, 208 F.3d 389, 391 (2d Cir. 2000) *citing Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168, 9 L. Ed. 2d 207, 83 S. Ct. 239 (1962) (parenthetical material added for clarity).

Here the record demonstrates that the USCIS simply did not consider the Honda letter, and so failed to articulate a satisfactory answer for why the job duties described in that letter did not establish that the job was a specialty occupation and provided no rational connection between the facts found and the choices made. Further, the decision is unsupported by substantial evidence – in fact the government's opposition was unable to identify any evidence in the record supporting it whatsoever, making it arbitrary and capricious. *Assn of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 745 F.2d 677, 683-84 (D.C. Cir. 1984)) (Scalia, J.). Accordingly, it is very likely that the plaintiffs will prevail in establishing that the agency decision finding that the plaintiffs did not establish that the job was a specialty occupation was arbitrary and capricious and/or an abuse of discretion. Since the government made no attempt to even defend the other grounds for denial, it is overwhelmingly likely that the decision will be found unlawful and set aside under 5 U.S.C. § 706.

III. **MR. KRISHNAMURTHY WILL SUFFER IRREPARABLE HARM IF THE EFFECTIVENESS OF THE ADJUDICATION OF STELLAR'S H-1B PETITION AND THE DENIAL OF HIS EXTENSION OF H-1B STATUS IS NOT POSTPONED.**

As plaintiffs previously pointed out, the denial of Mr. Krishnamurthy's application for extension of stay rendered him unlawfully present effective June 1, 2018, and he will be required to depart the United States no later than November 27, 2018, to avoid the three-year inadmissibility period provided by 8 U.S.C. § 1182(a)(9)(B)(i)(I) for those who depart the U.S. after having been unlawfully present for over 180 days. Such a departure would moot his application for extension of stay which in itself is irreparable harm. *See Vargas v. Meese*, 682 F. Supp. 591, 595 (D.D.C. 1987) ("The Court holds that plaintiffs have shown that without an injunction, they will be irreparably harmed. Under the SAW program, according to the plain language of the statute, applicants may file for a change of status in the United States. That statutory right to file will be mooted if their applications are not accepted in this country."). He is also subject to being arrested and placed in removal proceedings, the increased risk of which is also irreparable harm. *Ruiz-Diaz v. United States*, No. C07-1881RSL, 2008 U.S. Dist. LEXIS 79217, at *7-8 (W.D. Wash. Aug. 21, 2008).

Not only doesn't the government address these important points, but it actually suggests that Mr. Krishnamurthy avoid unlawful presence by departing the United States. However, if Mr. Krishnamurthy departs the United States he will no longer be able to pursue his application for extension of stay and that in itself is irreparable harm per this Court in *Vargas*. Further, the government cites no authority for its blithe claim that "the reality is that aliens whose employment petitions have been denied and subsequently appealed are unlikely to be placed in removal proceedings while that appeal is pending". ECF Document 11 at 10. This rosy view of the restraint of the Immigration and Customs Enforcement agency clashes harshly with widespread media reports of ever increasing "crackdowns" by ICE. *E.g.* "Funding The Immigration Crackdown At An 'Unsustainable Rate'" https://www.npr.org/2018/09/26/651524569/funding-the-immigration-crackdown-at-an-unsustainable-rate.

Furthermore, the government has not addressed, and therefore concedes, the fact that Mr. Krishnamurthy has been deprived of all income as a result of this decision and, although "the

temporary loss of recoverable income does not usually constitute abl e injury" ECF Document 11 at 9[7], the fact is that as explained in the plaintiff's initial memorandum, Mr. Krishnamurthy cannot recover any income lost as a result of the termination of his employment authorization due to the USCIS's decision because of the agency's sovereign immunity. ECF Document 2-1 at 37. Therefore he has already suffer a permanent loss of unrecoverable income, and will continue to suffer more permanently unrecoverable income if the decision is not reversed, or at least its effectiveness postponed. Unrecoverable loss of income constitutes irreparable harm. *See Dominguez v. Schwarzenegger*, 596 F.3d 1087, 1097-98 (9th Cir. 2010), affirming a grant of a preliminary injunction by a district court where "the district court concluded that IHSS providers would also suffer immediate and irreparable harm, due to the fact that a reduction in providers' wages and benefits would result in financial injury that providers would be unable to recover due to the State's Amendment immunity.". *See also Odebrecht Const., Inc. v. Secretary, Florida Dept. of Transp.*, 715 F.3d 1268, 1289 (11th Cir. 2013), *Chamber of Commerce v. Edmondson*, 594 F.3d 742, 770–71 (10th Cir.2010); *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 426 (8th Cir.1996) ("The threat of unrecoverable economic loss ... qualifies as irreparable harm.").

IV. THE PUBLIC INTEREST FAVORS THE POSTPONEMENT OF THE EFFECTIVENESS OF THIS INCORRECT DECISION

Finally, the plaintiffs whole heartedly agree that "the public interest favors applying federal law correctly". ECF Document 11 at 14. As explained above, the USCIS's decision did not apply federal law correctly. As the government largely doesn't bother to dispute, the decision was in fact arbitrary, capricious, an abuse of discretion and/or not in accordance with law and so contrary to 5 USC § 706. Therefore the public interest favors the postponement of the effectiveness of this very incorrectly decided decision until it can be reversed.

CONCLUSION

The Court should postpone the effectiveness of the agency's decisions of May 31, 2018 in this matter until this action is decided.

Respectfully Submitted this 29th day of October , 2018.

---

[7] The government offers no evidence in support of its speculation that Mr. Krishnamurthy might be able to find employment outside the United States.

/s/ *Michael E. Piston*
Michael E. Piston (MI 002)
Attorney for the Plaintiffs
225 Broadway, Suite 307
New York, NY, 10007
Ph: 646-845-9895
Fax: 206-770-6350
Email: michaelpiston4@gmail.com

## CERTIFICATE OF SERVICE

I certify that I caused a copy of the Plaintiffs' Reply to Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction to be served upon Plaintiffs' counsel via ECF.


/s/ *Michael E. Piston*
Michael E. Piston (MI 002)
Attorney for the Plaintiffs