# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

STELLAR IT SOLUTIONS, INC. and     :
KARTIK KRISHNAMURTHY,     :
    :
    Plaintiffs,     :     Civil Action No.:     18-2015 (RC)
    :
    v.     :     Re Document No.:     2
    :
UNITED STATES CITIZENSHIP AND     :
IMMIGRATION SERVICES,     :
    :
    Defendant.     :

## MEMORANDUM OPINION

### GRANTING IN PART PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

## I. INTRODUCTION

Plaintiff Kartik Krishnamurthy, a citizen of India, has lived in the United States legally since 2011 as the holder of an H-1B visa, a status granted to foreign citizens employed in "specialty occupation[s]." 8 U.S.C. § 1101(a)(15)(H)(i)(b). Last year, Mr. Krishnamurthy's employer, Plaintiff Stellar IT Solutions, Inc., submitted a petition on his behalf for an extension of his visa based on a change in his previously approved employment. After Defendant, the United States Citizenship and Immigration Services ("USCIS"), denied the petition, Stellar IT filed an appeal with USCIS's Administrative Appeals Office ("AAO"). But while he awaits a decision from the AAO, Mr. Krishnamurthy is left without lawful immigration status, and if he does not leave the country by November 27, 2018, he risks being deemed inadmissible for the next three years. Mr. Krishnamurthy and Stellar IT therefore initiated this lawsuit, asking the Court to ultimately set aside USCIS's denial of the H-1B petition as "arbitrary" and "capricious" under the Administrative Procedure Act ("APA"). 5 U.S.C. § 706(2)(A). Presently before the

Court, however, is solely their motion for a preliminary injunction that would postpone the effectiveness of USCIS's decision and allow Mr. Krishnamurthy to remain in the United States while the lawsuit is pending.

There are multiple reasons to approach this request with caution: a preliminary injunction is considered an extraordinary form of relief; judicial intervention is generally disfavored when administrative remedies have not been exhausted; and arbitrary and capricious review under the APA is highly deferential to agency decisions. Yet, for the reasons provided below, the Court concludes that it has jurisdiction to provide relief in this case and that limited judicial intervention is warranted. Plaintiffs have shown a strong likelihood of success on the merits, as USCIS's reasoning for denying the H-1B petition is squarely contradicted by the record and ignores critical evidence. Meanwhile, if the Court takes no action, Mr. Krishnamurthy is likely to suffer irreparable harm in that he will be forced to leave the country for an indefinite period of time.

Accordingly, the Court grants Plaintiffs' motion in part, and enters an order staying the effectiveness of USCIS's denial of the visa petition while Stellar IT's administrative appeal is pending. The Court's order applies retroactively to the date Mr. Krishnamurthy lost lawful immigration status, and as a result, Mr. Krishnamurthy will retain lawful H-1B status pursuant to 8 C.F.R. § 214.2(h)(2)(i)(H). It bears emphasis, however, that the relief the Court orders is narrow. The Court takes no position on the ultimate merits of the H-1B petition; it merely finds that USCIS's articulated reasoning for denying the petition likely does not comply with the APA. The ordered relief is also limited in duration. The parties are directed to file a joint status report with the Court within fifteen days of the AAO's disposition of the administrative appeal. At that juncture, the Court may reconsider whether judicial relief remains appropriate.

## II. BACKGROUND

H-1B visas are a form of legal nonimmigrant status, meaning the visa holder is in the United States temporarily for a particular purpose, like tourism or to attend school. The purpose of the H-1B program is to permit American employers to temporarily hire foreign citizens to work in "specialty occupation[s]," 8 U.S.C. § 1101(a)(15)(H)(i)(B), which the Immigration and Nationality Act ("INA") defines as those requiring "theoretical and practical application of a body of highly specialized knowledge, and . . . attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States," *id.* § 1184(h)(i)(1)(A)–(B).

After they choose to participate in the H-1B program and find a foreign worker they intend to hire, employers must complete a two-step process. First, they must submit to the Department of Labor ("DOL") a Labor Condition Application ("LCA") identifying the specialty occupation job being offered and verifying that they will comply with the requirements of the program, including paying the worker the mandated wage rate. *See* 8 U.S.C. § 1182(n)(1). Among other things, the LCA must also state the start and end dates of the foreign worker's employment, as well as the "place of employment," defined as "the worksite or physical location where the work actually [will be] performed by the H-1B . . . nonimmigrant," 20 C.F.R. § 655.715; *id.* § 655.730(c)(4)(iv)–(v).

Second, once the DOL certifies the LCA, the employer must then submit the LCA to USCIS with a Form I-129 petition requesting that the foreign worker—sometimes referred to as the petition's "beneficiary"—be classified as an H-1B nonimmigrant worker. *See* 8 C.F.R. § 214.2(h)(4). In this petition, the employer must establish that it has "an employer-employee relationship" with the beneficiary, "as indicated by the fact that [the employer] may hire, pay,

fire, supervise, or otherwise control the work of" the beneficiary. *Id.* § 214.2(h)(4)(ii). The employer also has the burden of establishing that the position offered to the beneficiary is in fact a "specialty occupation." To carry that burden, the employer must show that the position satisfies at least one of four prerequisites:

> (1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;
>
> (2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;
>
> (3) The employer normally requires a degree or its equivalent for the position; or
>
> (4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

*Id.* § 214.2(h)(4)(iii)(A).

If USCIS grants the petition, the H-1B status is generally valid for three years, but it may be extended for an additional three years, for a statutory maximum of six years. *See Save Jobs USA v. U.S. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 111 (D.D.C. 2015); 8 U.S.C. § 1184(g)(4). This default statutory maximum is subject to exceptions, however, one of which applies to foreign workers whose Form I-140 Petitions for permanent residency have been pending for more than 365 days. *See Sage IT, Inc. v. Cissna*, 314 F. Supp. 3d 203, 205 (D.D.C. 2018) (citing 21st C. Dep't of Justice Appropriations Authorizations Act ("DOJ-21"), Pub L. No. 107-273, § 11030A (2002) (codified at 8 U.S.C. § 1884 note)). Those individuals may seek recurring one-year extensions of their H-1B status until "a final decision is made" regarding their pending permanent residency petitions. *Id.* at 205–06 (quoting 8 U.S.C. § 1884 note).

Mr. Krishnamurthy has sought to avail himself of this exception in the H-1B petition at the center of this case. As alluded to above, before USCIS denied the present petition, Mr. Krishnamurthy held H-1B status from 2011 to 2017, hitting the six-year maximum. But the present petition indicates that Mr. Krishnamurthy filed a labor certification application to support an I-140 permanent residency petition in 2012, and that a final decision on the application remains pending. *See* Compl., Ex. A at 14, ECF No. 1-5. He and Stellar IT therefore contend that he is eligible for at least one additional year of H-1B status. USCIS does not appear to take issue with this contention, as it did not mention the statutory time cap in its decision denying the H-1B petition or in its memorandum in opposition to Plaintiffs' motion before this Court.

The present H-1B petition is more than a mere request for an extension of status, though. The petition reflects no change in Mr. Krishnamurthy's employer, but it does indicate a change in the previously approved employment, meaning he and Stellar IT wish for him to serve in a different role with the company. *Id.* at 8. Mr. Krishnamurthy's new position, the petition and supporting documents explain, would be "Senior Project Manager Information Technology," to be performed on-site at Honda North America, for whom Stellar IT would provide services as a sub-contractor.[1] *See, e.g.*, *id.* at 88, 95. The position's responsibilities would include "[e]stablish[ing] and implementing project management processes and methodologies for the IT community;" "work[ing] closely across business and IT teams to drive effective selection of delivery and solutions partners;" and "[d]riv[ing] insightful businesses and financial analytics to ensure that technology investments are aligned to key company priorities." *Id.* at 95.

---

[1] The H-1B petition indicates that Stellar IT's client is a company called Sharp Decisions, Inc., who in turn contracts with Honda North America. *See, e.g.*, Compl., Ex. A at 96–97.

Stellar IT completed the first step of the approval process for this change in employment: it obtained DOL certification of the LCA form. *See id.* at 27–29. When it submitted the Form I-129 petition to USCIS, however, the agency responded by issuing a Request for Evidence ("RFE") that asked for additional information regarding the nature of the position and Stellar IT's employer-employee relationship with Mr. Krishnamurthy—specifically its right to control him while he was on-site at Honda. Compl., Ex. B at 2–5, ECF No. 1-6. The RFE, which is dated January 23, 2018, indicated that Stellar IT had until April 17, 2018 to produce this information, *id.* at 1, but on March 20, before Stellar IT had replied to the RFE, USCIS went ahead and denied the petition outright, *see* Compl., Ex. C, ECF No. 1-7. The agency's written decision concluded that Stellar IT had not proven that an employment relationship existed and that the company had failed to show that the position constituted a specialty occupation. *Id.* at 3, 5–6.

Stellar IT then filed a motion with USCIS to reopen and reconsider the decision on April 13. *See* Compl., Ex. D, ECF No 1-8. With this motion, the company also submitted new evidence, including contractor agreements, a Q&A document completed by Stellar IT's president in response to the RFE, a Stellar IT performance review of Mr. Krishnamurthy, and a letter from Honda providing additional information about Mr. Krishnamurthy's position. *See id.*, at 27–33, 39–56, 78–80. The Q&A document stated that Stellar IT would have "the ability, as well as the legal right, to control the manner and means in which [Mr. Krishnamurthy's] work [wa]s performed," and it said that the Stellar IT president would supervise Mr. Krishnamurthy's performance by holding weekly phone calls with him. *Id.* at 28–29.

The letter from Honda confirmed that Stellar IT would be Mr. Krishnamurthy's employer and would have the legal right to control and assign his work, as well as the right to fire him if it

so chose.  *See id.* at 33.  The letter also stated that Mr. Krishnamurthy's position would be related to a project called "Interactive Network (iN) Redesign," a revamp of "a suite of portals allowing two way communication between Honda and [its] dealerships.  *Id.* at 32.  Mr. Krishnamurthy, the letter explained, would be "[t]he Senior Project Manager . . . charged with all aspects of managing this crucial initiative," a role that "resides within the Information Services Division" and

> involves understanding several parameters in the context of technology for organizational efficiency, information flows and management, project management discipline, ability to understand statistical reports, financial forecast and variance analysis, familiarity with Sarbanes Oxley for IT compliance, understanding of US Generally Accepted Accounting Principles to review software and other contractual arrangements in accordance with US GAAP to identify language that may require non-standard accounting treatment, understanding of supply chain and procurement, with all of the above in the context of large scale Information Technology Project Management.

*Id.*  The letter further noted that the position "requires a Bachelor's degree at a minimum or a Master's degree with course work in Information Technology, Accounting/Finance and Business Management."  *Id.*

Despite this new evidence, USCIS again denied Stellar IT's petition on May 31, 2018, on the same grounds provided in its March 20 decision—that an employment relationship had not been proven, and that the position had not been shown to be a specialty occupation.  Compl., Ex. E, ECF No. 1-9.  The agency reasoned that, "[w]hile evidence, such as an employment agreement and performance review form, indicate[d] that [Stellar IT] may be responsible for [Mr. Krishnamurthy's] salary and benefits, [it] did not appear to otherwise have the right or ability to assign, control, review, or supervise [his] work."  *Id.* at 3.  And "[w]ithout a statement of work detailing the project's outline description, duration, role and [Mr. Krishnamurthy's]

duties to demonstrate the end-client will actually use computer occupations for daily assignments," the agency concluded that Stellar IT "ha[d] not established that the final duties of the proffered position [we]re those of a specialty occupation." *Id.* at 5. Nor had Stellar IT proven that its "client . . . required that the degree . . . be in a specific specialty." *Id.* USCIS's decision, by its own terms, made it so Mr. Krishnamurthy was "without lawful status" and left him "present in the United States in violation of the law." Compl., Ex. F at 1.

One month later, on June 28, Stellar IT filed an administrative appeal with USCIS's AAO. *See* Def.'s Opp'n to Pl.'s Mot. for Prelim. Inj. ("Def.'s Opp'n"), Ex. A, ECF No. 11-1. But with the AAO's decision still pending in late August, Stellar IT and Mr. Krishnamurthy together filed their complaint in this case, asking this Court to set aside USCIS's denial of the H-1B petition. The same day, they filed their Motion for Preliminary Injunction, requesting that the Court stay the effectiveness of the agency's action so that Mr. Krishnamurthy may remain in the United States lawfully while this lawsuit is ongoing.[2]

## III. JURISDICTION AND LEGAL STANDARD

Before reaching the merits of Plaintiffs' motion, it is worth briefly addressing the Court's jurisdiction. Because Stellar IT's administrative appeal remains pending, the company did not exhaust its administrative remedies prior to filing suit. But exhaustion has implications for

---

[2] In their motion, Plaintiffs also seek relief under 5 U.S.C. § 705, which states that, "[o]n such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court . . . may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." But as Plaintiffs acknowledge, "[i]t is not clear what the appropriate legal standard is for granting" relief under § 705. Pl.'s Mem. in Support of Mot. for Prelim. Inj. ("Mem. in Support") at 2, ECF No. 2-1. The Court need not decide the issue here, and for purposes of this motion, the Court assumes it is the same standard as that used for preliminary injunctions. Other courts appear to have taken a similar approach. *See, e.g.*, *Bill Barrett Corp. v. U.S. Dep't of Interior*, 601 F. Supp. 2d 331, 332 & n.1 (D.D.C. 2009).

federal court jurisdiction only "when Congress requires resort to the administrative process as a predicate to judicial review." *Avocados Plus, Inc. v. Veneman*, 370 F.3d 1243, 1247 (D.C. Cir. 2004). And whether Congress has so acted is "purely a question of statutory interpretation." *Id.* For an exhaustion requirement to be jurisdictional, the statute at issue must "must contain '[s]weeping and direct . . . language indicating that there is no federal jurisdiction prior to exhaustion, or [that] the exhaustion requirement is treated as an element of the underlying claim.'" *Id.* at 1248 (first alteration in original) (internal quotation marks omitted) (quoting *Weinberger v. Salfi*, 422 U.S. 749, 757 (1975)). Here, as USCIS concedes, the INA contains no such language with respect to agency decisions denying H-1B petitions. *See* Def.'s Opp'n at 7. Thus, that Stellar IT's administrative appeal is unresolved does not deprive the Court of jurisdiction; jurisdiction is proper under 28 U.S.C. § 1331.

The Court's jurisdiction is not limited to only claims brought by Stellar IT either. Though Mr. Krishnamurthy was merely the beneficiary of the H-1B petition that Stellar IT filed on his behalf, he has standing to bring a judicial challenge to USCIS's denial of the petition. He has suffered an injury-in-fact—the loss of his legal nonimmigrant status—that is traceable to USCIS's denial of the petition and redressable by a favorable ruling in this Court. *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (general standing requirements); *Mantena v. Johnson*, 809 F.3d 721, 731 (2d Cir. 2015) (holding that foreign citizen had standing to challenge revocation of I-140 petition that her employer filed on her behalf).

None of this is to say, however, that the ongoing administrative appeal is irrelevant to the proceedings in this Court. Courts in this circuit recognize a concept known as "non-jurisdictional exhaustion," a judicially-created doctrine under which parties are generally required to exhaust administrative remedies before initiating a case in court. *Avocados Plus*, 370

F.3d at 1247. However, unlike its jurisdictional counterpart, non-jurisdictional exhaustion may be excused "if 'the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further." *Id.* (quoting *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992)). And one "commonly recognized" category of cases where litigants' interests generally outweigh the interests of exhaustion is those "where irreparable injury would result unless immediate judicial review is permitted." *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 107 (D.C. Cir. 1986); *see also, e.g.*, *Lucas v. District of Columbia*, 133 F. Supp. 3d 176, 184 (D.D.C. 2015). Of course, as the Court is about to explain, irreparable injury is also an essential component of the preliminary injunction standard, so, here, the Court need not perform a separate inquiry as to whether Plaintiffs' failure to exhaust should be excused. If Plaintiffs make the requisite showing of irreparable harm for purposes of injunctive relief, they will have necessarily made the requisite showing for purposes of exhaustion as well.

"A party seeking a preliminary injunction must make a 'clear showing that four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and accord with the public interest.'" *League of Women Voters of the United States v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016) (quoting *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 505 (D.C. Cir. 2016)). Traditionally, courts in this circuit have applied a "sliding scale" approach to weighing these four factors, under which "a strong showing on one factor [can] make up for a weaker showing on another." *Id.* at 7 (quoting *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011)). But this approach has been recently called into question, at least to a degree. *See, e.g.*, *Sherley*, 644 F.3d at 392–93 (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20–24 (2008)). With the validity of the

sliding scale approach somewhat in doubt, likelihood of success on the merits and likelihood of irreparable harm are both particularly important. *See Ramirez v. U.S. Immigration and Customs Enforcement*, 310 F. Supp. 3d 7, 17 (D.D.C. 2018). It is clear that, in order to prevail, the moving party must, at a minimum, make *some* showing as to each of those two factors. *See, e.g.*, *Sherley*, 644 F.3d at 393.

## IV. ANALYSIS

Plaintiffs' request for a preliminary injunction here is based on their claim that USCIS's denial of the H-1B petition violated the APA. They contend that, if the Court does not intervene to stay the effectiveness of the agency's decision while this lawsuit is ongoing, they will both suffer irreparable injuries: for Mr. Krishnamurthy, the forced, indefinite departure from the United States, and for Stellar IT, unrecoverable lost profits resulting from its inability to charge clients for Mr. Krishnamurthy's services. For the reasons provided below, the Court finds many of Plaintiffs' arguments persuasive. The Court concludes that Plaintiffs are likely to succeed on their claim that USCIS violated the APA in denying the H-1B application, that Mr. Krishnamurthy would likely suffer significant irreparable harm if the Court did not intervene, and that the public interest cuts in favor of providing limited judicial relief. The Court thus grants Plaintiffs' motion in part, and stays the effectiveness of USCIS's decision, at least until the AAO has resolved Stellar IT's pending administrative appeal. Once a decision is made on that appeal, the Court may reconsider whether injunctive relief remains appropriate.

### A. Likelihood of Success on the Merits

Examination of Plaintiffs' claim on the merits begins with the text of 5 U.S.C. § 706(2)(A), the provision of the APA that authorizes courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law." "As a general matter, . . . review under [this] standard is deferential," *Recording Indus. Ass'n of Am., Inc. v. Librarian of Congress*, 608 F.3d 861, 865 (D.C. Cir. 2010), and the Court does not substitute its judgment for that of the agency, *Animal Legal Defense Fund, Inc. v. Perdue*, 872 F.3d 602, 611 (D.C. Cir. 2017). That said, the agency's decision still must be "reasonable and reasonably explained." *ANR Storage Co. v. FERC*, 904 F.3d 1020, 1024 (D.C. Cir. 2018). The agency "at least 'must examine' the relevant factors . . . and articulate a 'rational connection' between the record and [its] decision." *AT&T, Inc. v. FCC*, 886 F.3d 1236, 1246 (D.C. Cir. 2018) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). "[I]f the agency has . . . entirely failed to consider an important aspect of the problem, [or] offered an explanation for its decision that run counter to the evidence," its action is generally deemed arbitrary and capricious. *Animal Legal Defense Fund*, 872 F.3d at 611 (quoting *State Farm*, 463 U.S. at 43).

Here, Plaintiffs have made a strong showing that USCIS's explanation for denying the H-1B petition runs counter to the evidence and resultingly lacks a rational connection with the record. The agency based its denial on two independent grounds, but neither is immune from this problem. Indeed, both of the grounds on which USCIS rested its decision are based on reasoning that is squarely contradicted by the evidence.

### 1. Employment Relationship

The first basis for the denial of the petition was that Stellar IT had failed to establish an employer-employee relationship with Mr. Krishnamurthy, as indicated by the ability to "hire pay, fire, supervise, or otherwise *control*" him. Compl., Ex. E at 2 (quoting 8 C.F.R. § 214.2(H)(4)(ii)(2)). According to USCIS, Stellar IT did "not appear to . . . have the right to

assign, control, review, or supervise [Mr. Krishnamurthy's] work," and its role appeared limited to "the functions of a payroll administrator." *Id.* at 3.

In reaching that conclusion, however, USCIS overlooked critical evidence submitted by Stellar IT. Multiple pieces of evidence indicated that the company would in fact have the "legal right . . . to control the manner and means in which [Mr. Krishnamurthy's] work [was] performed," Compl., Ex. D at 29 (Q&A document), that the company would "have the right to assign additional duties" to him, *id.* at 60 (position description document), and that the company's president would supervise and review his work product through status emails and weekly phone calls, *id.* at 28 (Q&A document). The letter submitted by the end-client, Honda North America, confirmed these facts as well; that letter stated, among other things, that "[o]nly [Stellar IT] [would] have the legal right to control the work of Kartik Krishnamurthy as well as the right to assign Kartik Krishnamurthy to this, or any work site location, and . . . the legal right to control his activities." *Id.* at 33. USCIS failed to even acknowledge any of this evidence in its written decision.

The agency did briefly acknowledge that Stellar IT had submitted its employment agreement with Mr. Krishnamurthy and two past performance review forms, but it reasoned that this evidence solely "indicate[d] that Stellar IT may be responsible for [Mr. Krishnamurthy's] salary and benefits" and that there was no "evidence that [Stellar IT] would evaluate the end-product of [Mr. Krishnamurthy's] work." Compl., Ex. E at 3. These assertions simply are not accurate. The employment agreement confirmed, among other things, that Stellar IT would have the legal right to fire Mr. Krishnamurthy. Compl., Ex. D at 68, 71. And the agreement stated that, "although [Mr. Krishnamurthy] could be called upon to assist the employees of companies other than [Stellar IT], only [Stellar IT], through [Mr. Krishnamurthy's] supervisor, [would have]

the right to control [his] work . . . on a day-to-day basis." *Id.* at 71.  Meanwhile, though relatively brief, the performance review forms, indicated that Stellar IT's supervision in the past had been based on "feedback" regarding "technical aspects" of Mr. Krishnamurthy's work, as well as his "management" skills.  *Id.* at 79.  One of the forms also discussed how "[p]roject work [was] being delivered in scope, ahead of schedule, and within a plan under budget."  *Id.*  Thus, both the employment agreement and performance review form went beyond "salary and benefits."  Rather, they together evidenced how Stellar IT could "hire, pay, fire, supervise, and control" Mr. Krishnamurthy, which the agency had recognized (correctly) were the indicia of an employment relationship.  *See* 8 C.F.R. § 214.2(h)(4)(ii)(2) (defining, for purposes of the H-1B program, "United States employer" as one who "may hire, pay, fire, supervise, or otherwise control the work" of its employees).

Finally, in addition to its reasoning based on supervision and control, USCIS provided one other rationale for why an employment relationship had not been proven: it said that "[t]here was no indication that" Mr. Krishnamurthy would be "required to use [Stellar IT's] proprietary tool or software to perform his duties."  Compl., Ex. E at 3.  This may be true—the record suggests that the software Mr. Krishnamurthy would assist in programming and designing was to be Honda's property.  *See* Compl., Ex. D at 32.  But USCIS did not say why this fact mattered, when, as the agency put it, the "touchstone" of the inquiry was control.  Compl., Ex. E at 2.  And in addition to the above-referenced evidence describing Stellar IT's right to control Mr. Krishnamurthy, the company also submitted evidence stating it would provide him "with all instrumentalities and tools required for [his] position, including a computer, if not already available at the work site."  Compl., Ex. D at 28.  In light of all the evidence Stellar IT submitted,

14

USCIS needed to explain why it was dispositive that Mr. Krishnamurthy would be developing software for Stellar IT's client rather than Stellar IT itself.

Also, earlier in its written decision, USCIS had said that Stellar IT appeared to be an "IT consulting" company that did not "produce any software products of [its] own, but rather contract[ed] with numerous outside companies in order to supply these companies with employees to fulfill specific staffing needs or complete service contracts." Compl., Ex. E at 2. Thus, taken to its logical conclusion, the agency's emphasis on proprietary tools would mean that Stellar IT and similar consulting firms that do not develop their own products could never serve as employers under the H-1B program. Unsurprisingly, USCIS never said that it was going that far, though. And if its intent was to go that far, the agency should have said so explicitly instead of basing its decision on the supposed insufficiency of the evidence. *Cf. ANR Storage*, 904 F.3d at 1024 (To survive arbitrary and capricious review, an agency must "justify the disparate treatment of regulated parties that seem similarly situated, and its reasoning cannot be internally inconsistent." (citations omitted)).

All told, then, in light of the record that Stellar IT ultimately assembled, Plaintiffs are likely to succeed in showing that it was not reasonable for USCIS to conclude that Stellar IT had "not provided sufficient documentary evidence to demonstrate how [it] [would] supervise or oversee" Mr. Krishnamurthy's "work while he performe[d] his duties at the client's site." Compl., Ex. E at 3. USCIS was free to take issue with the substance, credibility, or weight of the evidence submitted and explain why it took such issue, but the agency was not permitted to pretend the evidence did not exist. *See, e.g.*, *Granite Parts Co. v. EPA*, 890 F.3d 304, 312 (D.C. Cir. 2018) ("[A]n agency cannot ignore evidence contradicting its position." (quoting *Butte Cty. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010)). Because USCIS overlooked significant parts of

the record, Plaintiffs are likely to succeed on their claim that the agency acted arbitrarily and capriciously in determining that no employment relationship existed.

## 2. Specialty Occupation

USCIS fares no better when it comes to its second basis for denying the H-1B petition: Stellar IT's purported failure to show that Mr. Krishnamurthy would be employed in a "specialty occupation" eligible for H-1B status. As noted earlier, the INA defines "specialty occupation" as one requiring "theoretical and practical application of a body of highly specialized knowledge, and . . . attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States," 8 U.S.C. § 1184(h)(i)(1)(A)–(B). And, as also noted earlier, regulations further provide that,

> [t]o qualify as a specialty occupation, the position must meet one of the following criteria:
>
> (1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;
>
> (2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;
>
> (3) The employer normally requires a degree or its equivalent for the position; or
>
> (4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

8 C.F.R. § 214.2(h)(4)(iii)(A). Of course, these regulations must be read in the context of the statutory definition, so USCIS "consistently interprets the term 'degree'" in the regulations "to mean not just any bachelor's or higher degree, but one in a specific specialty that is directly related to the proffered position." Compl., Ex. E at 4.

Here, USCIS appears to have given two reasons for its determination that Mr. Krishnamurthy's position did not meet the legal definition of a specialty occupation. First, it said that, "[w]ithout a statement of work detailing the project's outline description, duration, role and [Mr. Krishnamurthy's] duties to demonstrate the end-client will actually use computer occupations for daily assignments, [Stellar IT] ha[d] not established that the final duties of the proffered position [we]re those of a specialty occupation." Compl., Ex. E at 5. Second, the agency said that Stellar IT had not shown that its "client ha[d] required that the degree . . . be in a specific specialty." *Id.* Just as it did with the employment relationship issue, however, USCIS overlooked critical evidence in reaching both of these conclusions.

Beginning with the first conclusion, USCIS made much of the fact that there was no "statement of work detailing the project's outline description, duration, role and [Mr. Krishnamurthy's] duties." *Id.* But while there may not have been a formal, contractual statement of work document, there was evidence in the record that provided the information USCIS claimed was lacking. With its original H-1B petition, before USCIS issued the RFE, Stellar IT included its employment agreement with Mr. Krishnamurthy and multiple other documents, which repeatedly provided a ten-bullet-point list of what his "Functions and Duties" would be. Compl., Ex. A at 88–89 (employment agreement), *see also, e.g.*, *id.* at 95 (position itinerary); *id.* at 96–97 (letter from Sharp Decisions, Inc., Stellar IT's direct client). Some of these listed responsibilities are admittedly phrased in general terms, but others are rather precise and appear to require at least some specialized knowledge regarding information technology— like the duties to "[e]stablish[] and implement[] project management processes and methodologies for the IT community to ensure projects are delivered on time, within budget, adhere to high standards, and meet customer expectations," and to "[d]rive insightful business

and financial analytics to ensure that technology investments are aligned to key company priorities and recommend opportunities for growth." *Id.*

Then, in response to the RFE, Stellar IT submitted a letter from Honda North America that provided additional information. It included a description of the Honda project involved, "Interactive Network (iN) Redesign," which is a remodeling of "a suite of portals allowing two way communication between Honda and [its] dealerships." Compl., Ex. D at 32. The letter provided the project's duration: from the present to March 31, 2021. *See id.* And the letter explained Mr. Krishnamurthy's role as "Senior Project Manager . . . charged with all aspects of managing this crucial initiative." *Id.* The letter explained that the position would "reside[] within the Information Services Division" and

> involve[] understanding several parameters in the context of technology for organizational efficiency, information flows and management, project management discipline, ability to understand statistical reports, financial forecast and variance analysis, familiarity with Sarbanes Oxley for IT compliance, understanding of US Generally Accepted Accounting Principles to review software and other contractual arrangements in accordance with US GAAP to identify language that may require non-standard accounting treatment, understanding of supply chain and procurement, with all of the above in the context of large scale Information Technology Project Management.

*Id.*

In its written decision, USCIS never acknowledged any of this information. The agency stated only that "[t]he present record does not demonstrate the specific duties the beneficiary would perform under contract for [Stellar IT's] clients," and that the record did not show that Mr. Krishnamurthy would "actually use computer occupations for daily assignments." Compl., Ex. E at 5. Reasonable minds could debate whether the record provided Mr. Krishnamurthy's *specific*, day-to-day responsibilities—to the extent his position would even have typical day-to-day

duties—but the record certainly gave USCIS information worthy of discussion and consideration. The agency acted, however, as if it was completely in the dark regarding Mr. Krishnamurthy's position. The agency also neglected to explain why "daily use of computer occupations" was a prerequisite to acceptance into the H-1B program. And it failed to acknowledge the information in the record that suggested Mr. Krishnamurthy would in fact regularly engage with computers—such as his duty to "review software" for compliance with Generally Accepted Accounting Principles, the need for him to be "familiar[]" with the Sarbanes-Oxley Act's requirements for IT controls, and the fact that his position would operate "in the context of large scale Information Technology Project Management." Compl., Ex. D at 32. If USCIS concluded that this evidence was insufficient to demonstrate the need for the application of "highly specialized" IT knowledge, it needed to explain why.

To be sure, the Court is not saying that the record clearly establishes the existence of a specialty occupation here. In terms of job duties, the record indicates that the proffered position would involve an overlap of the management/business sphere—which may not be a "highly specialized" area—and the information technology sphere—which one would think could be a "highly specialized" area. Thus, in the Court's view, the question of whether Mr. Krishnamurthy's duties would constitute those of a specialty occupation should largely come down to whether the IT-related aspects of the position were sufficiently prevalent to require "theoretical and practical application" of "highly specialized knowledge." 8 U.S.C. § 1184(h)(i)(1)(A). The problem with USCIS's decision is that it does not appear to have engaged with this question at all. Instead, the agency essentially stated that there was no evidence concerning the position. But, as the Court said above with respect to the employment relationship issue, the agency cannot base its decision on a supposed lack of evidence when

evidence was not actually lacking. To do so is to act arbitrarily and capriciously. *See Granite Parts*, 890 F.3d at 312 ("[A]n agency cannot ignore evidence contradicting its position." (quoting *Butte Cty*, 613 F.3d at 194)).

USCIS committed similar errors in reaching its second conclusion—that Stellar IT had failed to prove that Honda required the position-holder to possess "a bachelor's or higher degree in [a] specific specialty."[3] 8 U.S.C. § 1184(h)(i)(1)(B). Indeed, on this issue too, the agency overlooked Honda's letter, which provided the company's view of the education necessary for the position. If the letter does not show that the degree requirement was met, it at least comes close: it stated that "[t]he knowledge required in this position requires a Bachelor's degree at a minimum or a Master's degree with course work in Information Technology, Accounting/Finance and Business Management." Compl., Ex. D at 32. There is admittedly ambiguity regarding what the phrase "with course work in" means, particularly in the context of Master's degrees, which generally involve the study of one subject. A degree in business management may also not constitute "a specific specialty." But, again, USCIS never acknowledged this piece of evidence; its entire discussion of the subject is one sentence: "Nor have you established that your client has required that the degree must be in a specific specialty." Compl., Ex. E at 5. With the above evidence in the record, that one sentence does not constitute a "reasonable justification" of the agency's decision. *ANR Storage*, 904 F.3d at 1024.

---

[3] USCIS said that Stellar IT had not established that its "client" "required that the degree . . . be in a specific specialty." Compl., Ex. E at 5. As noted above, Stellar IT's client was, as a formal matter, Sharp Decisions, Inc., who in turn contracted with Honda North America. *See supra* note 1. The Court assumes that USCIS was referencing Honda when it referred to Stellar IT's "client," though, because the agency emphasized elsewhere in its written decision that H-1B petitioners must "produce evidence that the proffered position qualifies as specialty occupation on the basis of the requirements imposed by the entities using the beneficiary's services." Compl., Ex. E at 6.

More importantly, though, Stellar IT did not even need to show that Honda required a degree in a specific specialty in order to meet its burden on this issue. It was permitted to instead show that the "degree requirement [wa]s common to the industry in parallel positions among similar organizations." 8 C.F.R. § 214.2(h)(4)(iii)(A). This in fact was Stellar IT's primary argument following the issuance of the RFE. *See* Compl., Ex. D at 16–19. In support of the argument, Stellar IT cited the DOL's *Occupational Outlook Handbook* ("OOH"), which, in the RFE, USCIS described as "an authoritative source on the duties and educational requirements of the wide variety of occupations that it addresses." Compl., Ex. B at 2, ECF No. 1-6. According to Stellar IT, Mr. Krishnamurthy's duties would be akin to those of an "IT project manager," which the OOH says typically requires "a bachelor's degree in computer or information science and related work experience." Bureau of Labor Statistics, "Computer and Information Systems Managers," *Occupational Outlook Handbook* (April 13, 2018), https://www.bls.gov/ooh/management/computer-and-information-systems-managers.htm.

Although this argument was directly responsive to the RFE, USCIS never addressed it in its second and final written decision denying the H-1B petition. The agency did not once mention the OOH, much less endeavor to compare, even briefly, Mr. Krishnamurthy's job responsibilities to those of a generic "IT project manager." And it is not the Court's responsibility to make that comparison now. At this juncture, what matters is that USCIS completely ignored Stellar IT's primary argument, as "an agency's 'failure to respond meaningfully' to objections raised by a party renders its decision arbitrary and capricious." *BNSF Ry. Co. v. Surface Transp. Bd.*, 741 F.3d 163, 168 (D.C. Cir. 2014) (quoting *PSEG Energy Res. & Trade LLC v. FERC*, 665 F.3d 203, 208 (D.C. Cir. 2011)).

In sum, as USCIS's decision is currently articulated, both of its stated reasons for concluding that Mr. Krishnamurthy's proffered position did not constitute a "specialty occupation" are likely invalid under the APA. Indeed, after reviewing the entirety of USCIS's decision denying the H-1B petition, the Court has observed a recurring theme: the agency repeatedly ignored critical evidence and arguments raised by Stellar IT. As a result, a "'rational connection' between the record and the agency's decision" appears to be lacking. *AT&T*, 886 F.3d at 1245 (quoting *State Farm*, 463 U.S. at 43). Plaintiffs are therefore likely to succeed on the merits of their claim that USCIS's action was arbitrary and capricious under the APA.[4]

## B. Likelihood of Irreparable Harm

Having demonstrated a likelihood of success on the merits, Plaintiffs must next show that they are likely to suffer "irreparable harm in the absence of preliminary relief." *League of Women Voters*, 838 F.3d at 6 (quoting *Pursuing Am.'s Greatness*, 831 F.3d at 505). In their attempt to make such a showing, Plaintiffs essentially point to three kinds of injuries they would purportedly suffer without judicial intervention. They contend (1) that Stellar IT would lose unrecoverable profits as result of its inability to charge clients for Mr. Krishnamurthy's services; (2) that Mr. Krishnamurthy would be forced to leave the country indefinitely due to his loss of

---

[4] USCIS contends that Plaintiffs are unlikely to succeed on the merits because the fact that Stellar IT's administrative appeal is pending leaves the Court with no "final agency action" for the Court to review. *See* Mem. in Opp'n at 6; 5 U.S.C. § 704 (providing that "final agency action for which there is no other adequate remedy in a court are subject to judicial review"). However, "[a] party generally need not administratively appeal an action for it to be considered 'final' under the APA." *Am. Ass'n of Cosmetology Schs. v. Devos*, 258 F. Supp. 3d 50, 65 (D.D.C. 2017). "This is because, unlike with the doctrine of exhaustion, 'the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury.'" *Id.* (quoting *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 193 (1985)). Here, USCIS's position has inflicted such an injury, as the agency's decision, by its own terms, renders Mr. Krishnamurthy "without lawful immigration status." Compl., Ex. F at 1, ECF No. 1-10. That is more than sufficient for purposes of finality.

lawful immigration status; and (3) that Mr. Krishnamurthy would lose unrecoverable wages due to his inability to work. *See* Pl.'s Mem. in Support of Mot. for Prelim. Inj. ("Mem. in Support") at 29–34, ECF No. 2-1. All of these injuries, Plaintiffs correctly observe, would be prevented by an order staying the effectiveness of USCIS's order denying the H-1B petition, because, pursuant to 8 C.F.R. § 214.2(h)(2)(i)(H), aliens previously approved for H-1B status are "authorized to start . . . new employment" if a "nonfrivolous" petition to extend that H-1B status based on the new employment has been filed on behalf of the alien and remains pending. In other words, because an order postponing effectiveness of USCIS's order would revert the H-1B petition to a pending status, Mr. Krishnamurthy would, by regulation, retain H-1B status, and Stellar IT would be permitted to employ him.

"[T]he concept of irreparable harm does not readily lend itself to definition." *Ramirez*, 310 F. Supp. 3d at 31 (quoting *Judicial Watch, Inc. v. Dep't of Homeland Sec.*, 514 F. Supp. 2d 7, 10 (D.D.C. 2007)). "Nonetheless, the D.C. Circuit has laid out 'several well known and indisputable principles'" that guide courts' analyses. *Id.* (quoting *Wis. Gas. Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). "First, the injury must be both certain and great." *Wis. Gas. Co.*, 758 F.2d at 674. Second, that injury must be "so 'imminen[t] that there is clear and present need for equitable relief to prevent irreparable harm.'" *League of Women Voters*, 838 F.3d at 8 (alteration in original) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)); *see also Ramirez*, 310 F. Supp. 3d at 31. "And, finally, the injury must be 'beyond remediation.'" *Ramirez*, 310 F. Supp. 3d at 31 (quoting *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297).

Here, the Court finds that Mr. Krishnamurthy will suffer injuries that satisfy these standards. As a result of USCIS's decision to deny the H-1B petition, he is without lawful

immigration status. By the express terms of the agency's decision, he is "now present in the United States in violation of the law." Compl., Ex. F at 1. And under the INA, if he remains unlawfully present for more than 180 days, he will be deemed inadmissible for the next three years. 8 U.S.C. § 1182(a)(9)(B)(i)(I). To prevent that bar from taking effect, Mr. Krishnamurthy must leave the country by November 27, 2018.

This state of affairs leaves Mr. Krishnamurthy suffering harm that is "certain and great," as he is without legal status at this moment and could, by law, be placed in removal proceedings at any time. Further harm is also "imminent;" if Mr. Krishnamurthy does not voluntarily leave the country by November 27, he will suffer significant long-lasting legal consequences. Mr. Krishnamurthy has lived in the United States for the past seven years; if he is forced to leave, he will be "uprooted from [his] job, home, and community for an undetermined length of time." *Ruiz-Diaz v. United States*, No. C07-1881RSL, 2008 WL 3928016, at *2 (W.D. Wash. Aug. 21, 2008) (holding that "halting the accrual of unlawful presence time and/or unauthorized employment for . . . class members" would "prevent irreparable harm to class members and their families"). This is time Mr. Krishnamurthy would never get back, and a disruption to his life that could never be remedied, even if he were ultimately permitted to return to the United States after prevailing in this case. The harm is thus "beyond remediation."

USCIS attempts to downplay these injuries by saying that "the reality is that aliens whose employment petitions have been denied and subsequently appealed are unlikely to be placed in removal proceedings while that appeal is pending." Mem. in Opp'n to Pls.' Mot. for Prelim. Inj. ("Mem. in Opp'n") at 10, ECF No. 11. But this statement is unsupported and speculative. The statement is not even an empty promise—it is no promise at all. The Court imagines it provides Mr. Krishnamurthy little solace. USCIS also argues that Mr. Krishnamurthy "always has the

option of departing and seeking readmission as a nonimmigrant at a U.S. consulate abroad." Mem. in Opp'n at 10. This contention is speculative too, though, and it does nothing to prevent Mr. Krishnamurthy's forced, indefinite departure from the country.

Thus, the Court concludes that at least one of the three categories of injuries claimed by Plaintiffs constitutes irreparable harm warranting preliminary relief. Having made that determination, the Court need not, and does not, address the other two kinds of claimed injuries—Stellar IT's alleged lost profits and Mr. Krishnamurthy's lost income. Stellar IT and Mr. Krishnamurthy seek identical relief, and each independently have standing here. The Court therefore does not need to find that Stellar IT is itself suffering irreparable injuries in order to issue the requested injunction. Mr. Krishnamurthy's injuries are sufficient.

### C. Balancing the Equities and the Public Interest

Generally, Plaintiffs would need to make two additional showings in order to establish that a preliminary injunction is appropriate. The first would be a "balance of the equities in [their] favor," *League of Women Voters*, 838 F.3d at 6, meaning a showing that an injunction would "not substantially injure other interested parties," *id.* at 12 (quoting *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297). The second would be a showing that an injunction "accord[s] with the public interest." *Id.* at 6 (quoting *Pursuing Am.'s Greatness*, 831 F.3d at 505). These two considerations merge into one, however, when the government is the non-moving party. *See Ramirez*, 310 F. Supp. 3d at 32 (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). The only remaining question here, then, is whether any significant "public consequences" would result from the issuance of an injunction. *Id.* at 32 (quoting *Winter*, 555 U.S. at 24).

Plaintiffs contend that no such consequences would result because an order staying the effectiveness of USCIS's decision would "literally require[] the [agency] to do nothing." Mem. in Support at 35. In response, USCIS argues that "the public interest favors applying federal [immigration] law[s] correctly," Mem. in Opp'n at 11 (quoting *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1997 (9th Cir. 2011)), and disfavors judicial "micro-managing [of] a governmental entity's vested control over a statutory program," *id.* According to the agency, "Plaintiffs' requested relief in this case would require [it] to take affirmative action that is contrary to governing law and the agency's congressionally-mandated authority." *Id.*

The Court finds that Plaintiffs have the better of these arguments. As an initial matter, immigration laws are not the only congressional mandates at play. The public interest favors compliance with the APA too. *Cf. Ramirez*, 310 F. Supp. 3d at 33 ("The public interest surely does not cut in favor of permitting an agency to fail to comply with a statutory mandate.") (citing *Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977)). And though the Court is reluctant to take any action that could be seen as judicial micro-managing of an agency's responsibilities, it also agrees with Plaintiffs that the issuance of an injunction here would not require USCIS to take any affirmative action. Because 8 C.F.R. § 214.2(h)(2)(i)(H) permits Mr. Krishnamurthy to retain lawful status and begin new employment while the petition to extend his H-1B status is pending, the agency does not need to do anything to provide Plaintiffs the relief they seek. Once the Court orders that the effectiveness of the agency's decision is stayed, the regulation does the rest of the work.

Finally, it bears emphasis that the Court has done nothing to interfere with USCIS's "broad discretion to regulate the employment of H-1B temporary workers," Mem. in Opp'n at 11, as the Court has taken no position on whether Plaintiffs' H-1B petition should ultimately be

granted. Rather, the Court has merely concluded that USCIS's explanation for denying the petition likely does not comply with the APA. If the Plaintiffs ultimately prevail on their claim, the Court is likely to remand to the agency for reconsideration of the petition. The Court is also mindful that Stellar IT's administrative appeal remains unresolved. The AAO should be permitted to rule on that appeal before further judicial action takes place—both as a matter of respect for the agency's decisionmaking process, *see Avocados Plus*, 370 F.3d at 1247, and because the AAO's decision might moot or otherwise alter the merits of Plaintiffs' claim under the APA. Thus, at this time, the Court stays the effectiveness of USCIS's decision only until thirty days after the AAO has disposed of the administrative appeal. The Court's order is retroactive to May 31, 2018, the date of USCIS's final decision, so for legal purposes, Mr. Krishnamurthy was never without lawful immigration status, and the 180-day clock for 8 U.S.C. § 1182(a)(9)(B)(i)(I) never began to run. Pursuant to 8 C.F.R. § 214.2(h)(2)(i)(H), he retains H-1B status as long as the Court's order remains in effect. Once the AAO has issued a decision, the parties are directed to file a joint status report with the Court within fifteen days, in which they will state their respective positions regarding how this lawsuit should proceed.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Preliminary Injunction is **GRANTED IN PART**. The effectiveness of USCIS's decision denying Stellar IT's H-1B petition is stayed until thirty days after the AAO has decided Stellar IT's administrative appeal. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: November 19, 2018                                       RUDOLPH CONTRERAS
                                                               United States District Judge