**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| STELLAR IT SOLUTIONS, INC. and | : | | |
| KARTIK KRISHNAMURTHY, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 18-2015 (RC) |
| | : | | |
| v. | : | Re Document No.: | 24 |
| | : | | |
| UNITED STATES CITIZENSHIP AND | : | | |
| IMMIGRATION SERVICES, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### DENYING MOTION TO INTERVENE

## I. INTRODUCTION

InDepth Engineering Solutions, LLC believes that the United States Citizen and Immigration Services ("USCIS") unlawfully denied its petition for an H-1B visa. But instead of bringing its own lawsuit under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, InDepth seeks to intervene in a suit that was previously filed by another company involving a different H-1B petition. As the Court will explain below, intervention under these circumstances is inappropriate because it would result in undue delay, and because the two companies' cases are factually distinct. InDepth's motion to intervene is therefore denied.

## II. FACTUAL BACKGROUND

H-1B visas are a form of legal nonimmigrant status that grant the visa holder the legal ability to remain in the United States temporarily. Under the H-1B program, American employers are permitted to temporarily hire foreign citizens to work in "specialty occupation[s]," 8 U.S.C. § 1101(a)(15)(H)(i)(B), which the Immigration and Nationality Act defines as those

requiring "theoretical and practical application of a body of highly specialized knowledge, and

. . . attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a

minimum for entry into the occupation in the United States," *id*. at § 1184(i)(1)(A)–(B).

After employers choose to participate in the H-1B program and find a foreign worker

they intend to hire, they must complete a two-step process. First, they must submit to the

Department of Labor a Labor Condition Application ("LCA") identifying the specialty

occupation job being offered and verifying that they will comply with the requirements of the

program. *See* 8 U.S.C. § 1182(n)(1). Second, once the Department of Labor certifies the LCA,

the employer must submit the application to USCIS with a Form I-129 petition requesting that

the foreign worker be classified as an H-1B nonimmigrant worker. *See* 8 C.F.R. § 214.2(h)(4).

In this petition, the employer must establish that it has "an employer-employee relationship" with

the worker, "as indicated by the fact that [the employer] may hire, pay, fire, supervise, or

otherwise control the work of" the potential H-1B recipient. *Id*. at § 214.2(h)(4)(ii). The

employer also has the burden of establishing that the position offered is in fact a "specialty

occupation." *Id*. at § 214.2(h)(1)(ii)(B)(1). To carry that burden, the employer must show that

the position satisfies at least one of four prerequisites:

> (1) A baccalaureate or higher degree or its equivalent is normally
> the minimum requirement for entry into the particular position;
>
> (2) The degree requirement is common to the industry in parallel
> positions among similar organizations or, in the alternative, an
> employer may show that its particular position is so complex or
> unique that it can be performed only by an individual with a
> degree;
>
> (3) The employer normally requires a degree or its equivalent for
> the position; or

(4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

*Id*. at § 214.2(h)(4)(iii)(A).

InDepth is a Michigan-based consulting firm seeking to utilize the H-1B program to hire a software developer named Manohar Goud Palsa. *See* Proposed Am. Compl. ("Am. Compl.") ¶¶ 6, 22, ECF No. 24-1. The company provides mechanical design and engineering solutions in a variety of industries, including automotive, alternative energy, and entertainment. *Id*. ¶ 6. InDepth wishes to hire Mr. Palsa as a "Senior Product Engineer," to work on-site at Fiat Chrysler America, a company for whom InDepth apparently provides consulting services. *Id*. ¶¶ 22, 32. According to USCIS, however, InDepth failed to establish that Mr. Palsa's position qualified as a specialty occupation. *Id*. ¶ 23. On November 2, 2018, the agency issued a decision denying InDepth's H-1B petition on the ground that the "record [did] not demonstrate the specific duties the beneficiary [would] perform under contract for [InDepth's] clients." *Id*. InDepth now argues that USCIS failed to consider a letter provided by Fiat Chrysler America that supposedly described the specific duties of Mr. Palsa's proposed position. *Id*. ¶ 32. InDepth thus claims that USCIS's decision violated the APA because it was "contradicted by the record and ignore[d] critical evidence." *Id*. ¶ 31.

Nearly four months after USCIS's denial of the petition, InDepth filed a motion to intervene in a case brought by Stellar IT Solutions, Inc. Stellar IT is a Maryland corporation that provides professional software services, such as custom software development, web development, and systems integration. Compl. ¶ 3, ECF No. 1. In 2018, the company applied for an H-1B visa on behalf of a software engineer named Kartik Krishnamurthy. *Id*. ¶¶ 4, 10. Stellar IT hoped to hire Mr. Krishnamurthy as a "Senior Project Manager Information

Technology," to be performed on-site at Honda North America. *See* Compl., Ex. A at 88, 95, ECF No. 1-5. The position's responsibilities included "[e]stablish[ing] and implement[ing] project management processes and methodologies for the IT community;" "work[ing] closely across business and IT teams to drive effective selection of delivery and solutions partners;" and "[d]riv[ing] insightful businesses and financial analytics to ensure that technology investments are aligned to key company priorities." *Id*. at 95.

USCIS concluded, however, that Stellar IT's H-1B petition failed to prove that an employment relationship existed or that Mr. Krishnamurthy's position constituted a specialty occupation. *See* Compl., Ex. C at 1–6, ECF No. 1-7. With respect to the employment relationship issue, the agency reasoned that the "record remain[ed] absent of evidence regarding the work at [Honda's] facility," *id*. at 3, and that Stellar IT had not proven that it would actually "control" Mr. Krishnamurthy's work while he worked at Honda, *id*. (citing 8 C.F.R. § 214.2(h)(4)(ii)). And with respect to the specialty occupation issue, USCIS said that Stellar IT had (1) failed to establish that Honda required a bachelor's degree in a specific specialty for Mr. Krishnamurthy's position, and (2) neglected to provide appropriate details explaining Mr. Krishnamurthy's daily job responsibilities and how Honda would utilize those services. *Id*. at 5.

Mr. Krishnamurthy and Stellar IT appealed USCIS's decision with the agency's Administrative Appeals Office ("AAO"). *See* Compl., Ex. D, ECF No. 1-8. But while they awaited a decision from the AAO, Mr. Krishnamurthy and Stellar IT filed suit in this Court. Shortly thereafter, they moved for a preliminary injunction that would postpone the effectiveness of USCIS's decision and allow Mr. Krishnamurthy to remain in the United States and work while the lawsuit was pending. *See* Compl. ¶ 2. On November 19, 2018, this Court granted the motion for a preliminary injunction. *Stellar IT Sols., Inc. v. U.S. Citizenship & Immigration*

*Servs.*, No. 18-2015, 2018 WL 6047413 (D.D.C. Nov. 19, 2018). The Court concluded that Stellar IT and Mr. Krishnamurthy were "likely to succeed on the merits of their [APA] claim," *id.* at *10, because they "made a strong showing that USCIS's explanation for denying the H-1B petition r[an] counter to the evidence and resultingly lack[ed] a rational connection with the record," *id.* at *6. In granting the motion, though, the Court also noted that it was appropriate to permit the AAO to rule on Stellar IT's administrative appeal "before further judicial action [took] place—both as a matter of respect for the agency's decisionmaking process, and because the AAO's decision [could] moot or otherwise alter the merits of Plaintiffs' claim under the APA." *Id.* at *12 (citation omitted). The Court thus stayed the case until the AAO's ruling was issued.

It was during that period when the case was stayed that InDepth moved to intervene, claiming that the facts of its case are "virtually identical" to those of Stellar IT. Mem. Supp. Mot. to Intervene at 5, ECF No. 24-2. USCIS disagrees and opposes the motion, arguing that "intervention will only serve to complicate this lawsuit," given the different factual bases of InDepth and Stellar IT's visa petitions. Def.'s Opp'n to Mot. to Intervene at 1, ECF No. 25. USCIS also notes that Stellar IT's appeal was recently denied by the AAO, which the agency contends leaves the two companies' cases in different stages of the review process. *See id.*; *Matter of S-S-N-, Inc.*, ID No. 3995624 (AAO Mar. 6, 2019), ECF No. 25-1.

### III. ANALYSIS

Federal Rule of Civil Procedure 24(b) governs permissive intervention and provides that the Court "may permit" a party to intervene if that party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). As its name suggests, permissive intervention is an "'inherently discretionary enterprise,' and the court

enjoys considerable latitude under Rule 24(b)." *Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5, 10 (D.D.C. 2007) (quoting *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046–48 (D.C. Cir. 1998)). In exercising that discretion, courts weigh three factors set out by Rule 24(b): (1) whether the motion to intervene is timely; (2) whether the applicant's claim shares a question of law or fact in common with the main action; and (3) whether intervention will unduly delay or prejudice adjudication of the original parties' rights. *See* Fed. R. Civ. P. 24(b); *Sierra Club v. McCarthy*, 308 F.R.D. 9, 12 (D.D.C. 2015); *In re Vitamins Antitrust Litig.*, No. Misc. 99-197, 2001 WL 34088808, at *2 (D.D.C. Mar. 19, 2001). Based on these three factors, a court can deny a motion for permissive intervention— even if there is a common question of law of fact— if intervention would cause undue delay, complexity, or confusion in a case. *See* Fed. R. Civ. P. 24(b)(3); *see also Securities & Exch. Comm'n v. Everest Mgmt. Corp.*, 475 F.2d 1236, 1240 (2d Cir. 1972) ("[T]he complicating effect of the additional issues and the additional parties outweighs any advantage of a single disposition of the common issues."); *Love v. Vilsack*, 304 F.R.D. 85, 89 (D.D.C. 2014) (holding organization's thirteen-year delay in moving to intervene to seek injunctive relief precluded permissive intervention).

Such is the case here. Even assuming InDepth's motion is timely, intervention is not appropriate because the other two factors weigh heavily against intervention. *See* Fed. R. Civ. P. 24(b). To the extent that InDepth's and Stellar IT's petitions implicate any common questions, their differences still predominate. And those differences mean that intervention would unnecessarily complicate, confuse, and delay this case. The Court therefore denies InDepth's motion.

## A. Common Questions of Law or Fact

First, InDepth's motion to intervene does not raise common questions of law or fact that merit joint consideration with Stellar IT's case. USCIS's review of H-1B visa petitions, as a general matter, is a fact-intensive enterprise, and courts' review of the agency's determinations is based only on the evidence that was presented to the agency. 5 U.S.C. §§ 702, 706; *Sage IT, Inc. v. Cissna*, 314 F. Supp. 3d 203, 207 (D.D.C. 2018) ("When reviewing an agency decision under the APA, a court is limited to the administrative record and must determine whether the record supports the agency's decision." (citation omitted)). Here, it does not appear that InDepth's and Stellar IT's petitions share a single piece of evidence in common. And as far as the Court can tell, the two job positions at issue in each of the petitions are different.

Stellar IT wants to change Mr. Krishnamurthy's position to "Senior Project Manager Information Technology," a position apparently akin to a "Computer and Information Systems Manager." *See* Compl., Ex. A at 88; Bureau of Labor Statistics, *Computer and Information Systems Managers*, Occupational Outlook Handbook (Apr. 13, 2018), https://www.bls.gov/ooh/management/computer-and-information-systems-managers.htm. Mr. Palsa's proposed title, meanwhile, is "Sr. Product Engineering," comparable to the duties of a software engineer or developer. Am. Compl. ¶ 22; Mem. Supp. Mot. to Intervene at 3; Bureau of Labor Statistics, *Software Developers*, Occupational Outlook Handbook (Apr. 12, 2018), https://www.bls.gov/ooh/computer-and-information-technology/software-developers.htm. Although both positions involve work with computer technology in a broad sense, the specific functional job responsibilities would seem to vary significantly. Mr. Krishnamurthy's proposed work would involve coordinating and managing a redesign of "a suite of portals" that allow for "two way communication between Honda and [its] dealerships." *Stellar IT Sols.*, 2018 WL

6047413, at *4 (quoting Compl., Ex. D at 32). By contrast, Mr. Palsa would not direct or coordinate the implementation of IT projects; he would be the "creative mind" behind bringing those projects to life. Bureau of Labor Statistics, *Software Developers*; *see also* Am. Compl. ¶ 22. In light of these differences, the two companies' claims are, as a factual matter, distinct.

Furthermore, Stellar IT's case involves an additional legal question that is not at issue in InDepth's case—one that could prove dispositive. As noted above, USCIS denied Stellar IT's petition for two independent reasons: (1) the company had not proven that an employment relationship existed, and (2) the company had not shown that Mr. Krishnamurthy's new position constituted a specialty occupation. *See* Compl., Ex. C at 3, 5–6. The AAO then affirmed on both of these grounds in its subsequent written decision. *See Matter of S-S-N-, Inc.*, ID No. 3995624 (AAO Mar. 6, 2019). Thus, in order to prevail on their APA claim, Stellar IT and Mr. Krishnamurthy have to show that both grounds were erroneous. *See Fogo De Chao (Holdings) v. U.S. Dep't of Homeland Sec.*, 769 F.3d 1127, 1149 (D.C. Cir. 2014) ("Where . . . an agency has set out multiple independent grounds for a decision, 'we will affirm the agency so long as any one of the grounds is valid.'" (quoting *BDPCS, Inc. v. FCC*, 351 F.3d 1177, 1183 (D.C. Cir. 2003))).

InDepth's petition seems to involve only one of those two issues, though: USCIS apparently denied InDepth's H-1B petition because the company failed altogether to provide a description of Mr. Palsa's job duties that demonstrated that his position constituted a specialty occupation. *See* Am. Compl. ¶ 23. Thus, although InDepth claims the agency's reasoning underlying these two APA claims is "virtually identical," Mem. Supp. Mot. to Intervene at 5, the Court disagrees. *Cf. Aziz v. Trump*, 231 F. Supp. 3d 23, 29 (E.D. Va. 2017) (allowing intervention where the "only obvious factual distinction" between parties was not essential to the

determination of the case). Given the distinct factual and legal nature of Stellar IT's and InDepth's claims, and the fact that each of the decisions at issue are based on entirely distinct administrative records, the Court concludes intervention would not "significantly contribute to . . . the just and equitable adjudication of the legal question[s] presented." *Sierra Club*, 308 F.R.D. at 12 (quoting *Ctr. for Biological Diversity v. EPA*, 274 F.R.D. 305, 313 (D.D.C. 2011)).

### B. Undue Delay or Prejudice

In addition to the problems posed by a lack of common issues of fact, permissive intervention for InDepth would also unduly prejudice the adjudication of Stellar IT's claim. Given the factual differences in the case that the Court just mentioned, reviewing the separate agency decisions and records would likely inject unnecessary complexity into this case, leading to delay. And "any delay in adjudicating the rights of the parties is undue if there is no good reason for it." *NYC C.L.A.S.H., Inc. v. Carson*, No. CV 18-1711, 2019 WL 2357534, at *4 (D.D.C. June 4, 2019). Indeed, when no practical purpose is served by intervention, "permissive intervention is inappropriate" because it would in no way "further resolution of the case." *Voltage Pictures, LLC v. Vazquez*, 277 F.R.D. 28, 33 (D.D.C. 2011).

InDepth nonetheless argues that intervention would actually "sav[e] the Court . . . the needless expense of litigating an additional lawsuit on the exact same issues, possibly with inconsistent results." Mem. Supp. Mot. to Intervene at 5. But in making this assertion, InDepth does not engage with the factual differences that the Court has already identified, and the company fails to identify any case law that supports intervention in circumstances like these. In fact, the three cases that InDepth does cite are easily distinguishable from this case. For example, *Massachusetts v. Microsoft Corp.*, 373 F.3d 1199, 1235–36 (D.C. Cir. 2004), involved not only "identical" legal questions, but also putative intervenors who "had already participated

extensively in the proceedings before the district court by submitting public comments in response" to the issue at hand. Likewise, in *TPI Corp. v. Merchant Mart of South Carolina, Inc.*, 61 F.R.D. 684, 689–90 (D.S.C. 1974), the putative intervenors' "claims and the main action arose out of the same transaction," and the facts were so closely intertwined that the court found the intervenors' involvement in the main case inevitable. *See id.* at 689 ("[T[he claims of petitioner-intervenors will, of necessity, find their way into the present controversy."). And finally, *EEOC v. National Children's Center*, 146 F.3d 1042, 1047 (D.C. Cir. 1998), involved a "third party seek[ing] to intervene for the limited purpose of obtaining access to documents protected by a confidentiality order." Here, of course, InDepth asks far more of this Court—to adjudicate an additional, factually distinct claim on the merits requiring it to review an additional, separate administrative record. The Court is unable to see how that would save the Court time.

To be sure, intervention might make things easier for Stellar IT and InDepth's attorney—as InDepth's motion argues. *See* Mem. Supp. Mot. to Intervene at 5–6. But counsel's desire to coordinate a litigation strategy does not constitute a practical purpose that justifies intervention. Indeed, this jurisdiction's Local Rules are designed to prevent such forum selection. Local Civil Rule 40.3(a) states that "[e]xcept as otherwise provided . . . cases shall be assigned to judges of this Court selected at random." The primary exception to that default rule applies to "related cases," but given the absence of factual commonalities here, that exception appears inapplicable. *See* D.D.C. Civ. R. 40.5(a)(3) ("Civil . . . cases are deemed related when the earliest is still pending on the merits . . . and they (i) relate to common property, or (ii) involve common issues of fact, or (iii) grow out of the same event or transaction, or (iv) involve the validity or infringement of the same patent.").

InDepth must therefore subject itself to the random assignment process. In light of the differences in the claims at issue, the Court is unable to discern any practical benefit that would result from intervention. Instead, as the Court has already said, it would lead only to complexity and delay. Intervention is thus unwarranted.

### IV. CONCLUSION

For the foregoing reasons, InDepth's motion to intervene is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: July 30, 2019                                    RUDOLPH CONTRERAS
                                                         United States District Judge