# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

STELLAR IT SOLUTIONS, INC., F/K/A
STELLAR SOFTWARE NETWORK, INC., a
Maryland corporation.

Case No.: 18-cv-2015 (RC)

KARTIK Krishnamurthy

  Plaintiffs,

PLAINTIFFS' STATEMENT OF POINTS
AND AUTHORITIES IN SUPPORT OF
THEIR MOTION FOR SUMMARY
JUDGMENT

          vs.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES,

                    Defendants.

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ................................................................2

**BRIEF STATEMENT OF THE RELEVANT FACTS** ..............................6

**ARGUMENT** ..........................................................................**15**

    *I.    THE AAO REPEATED THE CSC'S DIRECTOR'S ERROR OF FAILING TO EVEN CONSIDER STELLAR'S PRINCIPAL ARGUMENT THAT AN IT PROJECT MANAGER IS, ACCORDING TO THE OCCUPATIONAL OUTLOOK HANDBOOK, A SPECIALTY OCCUPATION*..............................................................**15**

    *II.    THE AAO ERRED AS A MATTER OF LAW BY HOLDING THAT AN PETITIONER MUST ACTUALLY CONTROL A WORKER TO BE   HIS EMPLOYER*..............................................................**19**

## TABLE OF AUTHORITIES

### *CASES*

*Clackamas Gastroenterology Assocs., P.C. v. Wells,*
    *538 U.S. 440, 448 (2003)* ...............................................9, 19

*Nationwide Mut. Ins. Co. v. Darden,*
    *503 U.S. 318, 323 (1992)* ...........................................9, 11, 19

*Avis Rent A Car Sys., Inc. v. United States,*
    *503 F.2d 423, 425 n.1 (2d Cir. 1974)* ................................9, 19

*Trent v. Atl. City Elec. Co.,*
    *334 F.2d 847, 863 (3d Cir. 1964)* .....................................9, 19

*Weber v. Commissioner,*
    *60 F.3d 1104, 1110 (4th Cir. 1995)* ........................................................ 9, 19

*Breaux & Daigle, Inc. v. United States,*
    *900 F.2d 49, 50 (5th Cir. 1990)* ............................................................ 9, 19

*NLRB v. Cement Transp., Inc.,*
    *490 F.2d 1024, 1027 (6th Cir. 1974)* ...................................................... 9, 19

*Sargent v. Commissioner,*
    *929 F.2d 1252, 1253 (8th Cir. 1991)* ......................................................9, 20

*Chin v. United States,*
    *57 F.3d 722, 725 (9th Cir. 1995)* ............................................................9, 20

*Jones v. Goodson,*
    *121 F.2d 176, 177 (10th Cir. 1941)* ........................................................ 9, 20

*Matter of Anselmo,*
    *20 I&N Dec. 25, 30-32 (BIA 1989*....................................................................10

*Peno Trucking, Inc. v. C.I.R.,*
    *296 F.App'x 449, 456 (6th Cir. 2008)* ...........................................................10

*N.L.R.B. v. Cement Transp., Inc.*
    *490 F.2d 1024, 1027 (6th Cir. 1974)* ..............................................................10

*Jammal v. Am. Family Ins. Grp.*
    *No. 1: 13 CV 437, 2017 U.S. Dist. LEXIS 120683, at \*3 (N.D. Ohio July 31, 2017)* .................10

*BNSF Ry. Co. v. Surface Transp. Bd.,*
    *741 F.3d 163, 168 (D.C. Cir. 2014)* ..............................................................16

*PSEG Energy Res. & Trade LLC v. FERC,*
    *665 F.3d 203, 208 (D.C. Cir. 2011))* ..............................................................16

*Matter of Sea, Inc.*
    *19 I. & N. Dec. 817 Matter of Caron International, Inc.19 I. & N. Dec. 791*..............16

*Matter of Michael Hertz Associates*
    *19 I. & N. Dec. 558*....................................................................................16

*Dovell v. Arundel Supply Corp.,*
    *124 U.S. App. D.C. 89, 361 F.2d 543, 545 (1966)* .......................................19

*Grace v. Magruder*
    *80 U.S. App. D.C. 53, 148 F.2d 679, 681 (1945)* ............................................................19

**STATUTES**

*5 U.S.C. § 7086*................................................................................................................21

*101(a)(15)(H)(i)(b) of the Immigration and Nationality Act (INA)* ...............................6

**REGULATIONS**

*8 C.F.R.* **214.2(h)(4)(iii)(A)(1) and (4)** ...........................................................................13

*8 CFR § 214.2(h)(4)(ii)(2)* ...............................................................................................8, 20

*8 C.F.R. § 214.2(h)(4)(iii)(A)* .........................................................................................13, 16

**OTHER REFERENCES**

*USCIS Adjudicator's Field Manual (AFM) § Chapter 31.3 nt.1*............................................9, 20

*Bureau of Labor Statistics, "Computer and Information Systems Managers," Occupational Outlook Handbook (April 13, 2018)* ...........................................................................16

*AFR 3.4.* ............................................................................................................................9, 20

*ECF No. 17 at 27.* .............................................................................................................18

*Rev. Rul. 87-41, 1987-1 C.B. 296, 1987 WL 419174 (IRS RRU) Internal Revenue Service (I.R.S.) Revenue Ruling "EMPLOYMENT STATUS UNDER SECTION 530(D) OF THE REVENUE ACT OF 1978" Published: 1987*...........................................................................11

**[PAGE INTENTIONALLY LEFT BLANK]**

## BRIEF STATEMENT OF THE RELEVANT FACTS

Karthik Krishnamurthy is a native and citizen of India who was lawfully employed in the United States by Stellar Software Network, Inc. (Stellar), an Ohio-based software consulting company, as a computer professional with authorization from the United States Citizenship and Immigration Services (USCIS) from June 14, 2011 to May 31, 2018. CAR 269-274. He was offered $108,000 per year in base salary in the instant petition. CAR 225. His education and experience have been evaluated by a professor with the authority to issue college credit for work experience in the computer field as the equivalent of a Bachelor's degree in Management Information Systems from an accredited institution of higher education in the United States. CAR 240-241. On August 29, 2017, Stellar filed a Petition for a Nonimmigrant Worker (Form I-129) with USCIS seeking to continue to  classify Mr. Krishnamurthy as a temporary worker in a specialty occupation (H-1B) under section 101(a)(15)(H)(i)(b) of the Immigration and Nationality Act (INA)  with a concurrent request for extension of stay so it could continue to employ him in this status. CAR 220 et seq.

According to the terms of that petition, Stellar sought Mr. Krishnamurthy's services as a Senior Project Manager so as to be able to provide them for a temporary period to Sharp Decisions' project at Honda North America, where he would perform the following duties:

• Establishes and implements project management processes and methodologies for the **IT** community to ensure projects are delivered on time, within budget, adhere to high standards, and meet customer expectations.
• Responsible for assembling project plans and teamwork assignments, directing and monitoring work efforts daily, identifying resource needs, performing quality reviews:  and escalating functional, quality, timeline issues appropriately
• Responsible for tracking key project milestones and adjusting project plans and/or resources
• Coordinates communication with all areas of the enterprise that impacts the scope, budget, risk and resources of the work effort being managed
• Manages one or more cross-functional medium to large-sized projects of high complexity

• Assist in the request for information (RFI), vendor request for proposal (RFP) processes  as directed, and work closely across business and IT teams to drive effective selection of delivery and solutions partners
• Lead the business analysis team and process modeling effort and the writing and presentation of requirements documentation to all stakeholders
• Manage sprint planning as required, maintain sprint velocity reports, conduct scrum calls and lead criteria definitions in user story sizing and acceptance
• Create models for project financial analysis and report and present progress to senior management, provide build vs buy recommendations, assist management in cost allocation decisions and manage the preparation of budgets and variance reports related to the business analysis of financial information technology projects and programs
• Drive insightful business and financial analytics to ensure that technology investments are aligned to key company priorities and recommend opportunities for growth

CAR 298-299.

On January 23, 2018 the USCIS issued a Request for Evidence pertaining to said petition. CAR 321 et. Seq.

Although said Request indicated that Stellar had until April 17, 2018 to file a response to this Request, nevertheless on March 20, 2018 USCIS issued a decision denying the petition prior to Stellar having filed an answer to its request. CAR 192-196.

The stated bases for this Decision were:

a) Stellar had "not established that you will be a 'United States employer' having an 'employer-employee relationship' with the beneficiary as an H-1B temporary "employee." CAR 194
b) "The record, as presently constituted, is insufficient to establish that the position offered to the
beneficiary qualifies as a specialty occupation and that the beneficiary will perform services in a specialty occupation for the requested period of intended employment." CAR 197.

On approximately April 17, 2018 Stellar filed a timely motion to reconsider and reopen with USCIS pertaining to this matter. CAR 103-113.

The motion contained substantial new evidence pertaining to the petition including:

• Petitioner's Q & A Regarding Employer-Employee Relationship (explaining how Stellar's relationship with Mr. Krishnamurthy satisfies 9 of the 11 criteria set forth in the USCIS's Policy Memorandum (issued by Associate Director Donald Neufeld) re: Determining Employer-Employee Relationship for Adjudication ofH-1B Petitions,

Including Third-Party Site Placements, HQ 70/6.2.8, dated January 8, 2010, as incorporated into the USCIS's Adjudicator's Field Manual.

- Letter dated March 16, 2018 from end client, Honda North America, confirming the work to be performed by Kartik Krishnamurthy. The letter also confirms that "Stellar Software Network, Inc. is the employer of Kartik Krishnamurthy. Only Stellar Software Network, Inc. will have the legal right to control the work of Kartik Krishnamurthy as well as the right to assign Kartik Krishnamurthy to this, or any work site location, and has the legal right to control his activities"
- Letter dated April 9, 2018 from Sharp Decisions, Inc. the vendor. The letter states that "Neither, Sharp Decisions nor Honda North America has any employment relationship with Kartik Krishnamurthy
- Copy of North America Master Temporary Services Agreement Order entered into between Sharp Decisions Inc. (The Vendor) and Honda North America Inc. (The end-client) - As stated in the order, the termination date of the order is March 31, 2021
- Copy of Contractor Agreement between Sharp Decisions Inc. (the vendor and Stellar's client) and Stellar Software Network Inc. – Exhibit D at 47-52
- Copy of Purchase Order between Sharp Decision Inc. and Stellar Software Network Inc.
- Latest Performance review of the Beneficiary –
- Copy of Internal Revenue Service (I.R.S.) Revenue Ruling "EMPLOYMENT STATUS UNDER SECTION 530(D) OF THE REVENUE ACT OF 1978" –

**CAR 116-177**

The motion further explained how new evidence submitted with the motion, together with the evidence already contained in the record, overcame both bases for denial (quoted language all in italics):

> *This evidence submitted herewith and already in the record shows the petitioner has the legal right to control the beneficiary, whether it chooses (or needs) in practice to exercise it or not, in that it is provided under its agreement with the beneficiary in which he expressly agrees (on the final page) that:*
>
> *(1) **Kartik Krishnamurthy** ("Employee") acknowledges that he will work under the supervision and control of **Stellar Software Network, Inc.** ("Employer") throughout the time employee is employed by Employer regardless of the location where he physically provides services. Employee shall be appointed a supervisor which he will continue to report to throughout Employee's employment unless advised in writing to the contrary.*
> *(2) Employer will determine Employee's location and relocation assignments (i.e. where the Employee is to report to work);*
> *(3) Where Employee works at a location not controlled by Employer, Employee will telephone his supervisor no less than once a week regarding his progress on the assigned work.*

8

*(4) The Employee acknowledges that although he may be called upon to assist the employees of companies other than Employer in his work, only the Employer, through the Employee's supervisor, has the right to control the work of the Employee on a day-to-day basis.*

*(5) Employee acknowledges that only the Employer has hired, and will pay, and have the ability to fire the Employee.*

*Further, this right is expressly acknowledged by the end client Honda North America, enclosed herewith, which states that: "Only Stellar Software Network Inc. will have the legal right to control the work of Kartik Krishnamurthy as well as the right to assign Kartik Krishnamurthy to this, or any, work site location, and has the legal right to control her activities."*

1. *The petitioner's legal right to control the beneficiary's work activities is dispositive of the existence of an employer-employee relationship regardless of who exercise actual control*

*There are few propositions more firmly settled in the field of labor law than that the right of control, not actual control, is the gravamen of an employer-employee relationship. See, e.g.,. Clackamas Gastroenterology Assocs., P.C. v. Wells, 538 U.S. 440, 448 (2003), Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323 (1992). The right to control the beneficiary is different from actual control. An employer may have the right to control the beneficiary's job-related duties and yet not exercise actual control over each function performed by that beneficiary. See e.g. . Avis Rent A Car Sys., Inc. v. United States, 503 F.2d 423, 425 n.1 (2d Cir. 1974) ; Trent v. Atl. City Elec. Co., 334 F.2d 847, 863 (3d Cir. 1964), Weber v. Commissioner, 60 F.3d 1104, 1110 (4th Cir. 1995); Breaux & Daigle, Inc. v. United States, 900 F.2d 49, 50 (5th Cir. 1990);  NLRB v. Cement Transp., Inc., 490 F.2d 1024, 1027 (6th Cir. 1974),Sargent v. Commissioner, 929 F.2d 1252, 1253 (8th Cir. 1991); Chin v. United States, 57 F.3d 722, 725 (9th Cir. 1995), Jones v. Goodson, 121 F.2d 176, 177 (10th Cir. 1941), USCIS Adjudicator's Field Manual (AFM) § Chapter 31.3 nt.1.[1] This is also the only reasonable interpretation of  8 CFR § 214.2(h)(4)(ii)(2) which defines a "United States employer" as one who has an employer-employee relationship with respect to employees under this part, as indicated by the fact that it **may** hire, pay, fire, supervise, or otherwise control the work of any such employee ....". (emphasis added).*

*The fact that an employer "may" control the work of an employee (rather than "must"[2])*

---

[1] *"Policy material is binding on all USCIS officers and must be adhered to unless and until revised, rescinded or superseded by law, regulation or subsequent policy, either specifically or by application of more recent policy material. ...Examples of policy materials are: Field and Administrative Manuals" AFR 3.4. Thus, the AFM, being an administrative manual, is a policy material binding on all USCIS officers.*

[2] *The Oxford Online Dictionary offers several definitions of "may", only one of which is remotely applicable here: "Used to ask for or to give permission.*
*'you may confirm my identity with your Case Officer, if you wish'*
*'may I ask a few questions?'*
*...*
*Note continued on the foot of the following page.*

*demonstrates that, consistent with Clackamas, Darden, the decisions of at least 8 circuit courts of appeal and the USCIS's own AFM, it is only the right to control and not the actual exercise of the same which is determinative of an employer-employee relationship.*

*What is more, this is also the law of the Sixth Circuit, which is controlling here, inasmuch as the petitioner is located within its jurisdiction.[3]*

*Sixth Circuit law is clear and consistent in holding that employee status is determined based on the Company's retention of a right to control the manner and means of the worker's service. This right does not need to be exercised, it matters only if the Company retains the right to do so. See, Peno Trucking, Inc. v. C.I.R., 296 F.App'x 449, 456 (6th Cir. 2008); N.L.R.B. v. Cement Transp., Inc., 490 F.2d 1024, 1027 (6th Cir. 1974)("It is the right to control, not its exercise, that determines an employee relationship.")". Jammal v. Am. Family Ins. Grp., No. 1: 13 CV 437, 2017 U.S. Dist. LEXIS 120683, at \*3 (N.D. Ohio July 31, 2017).*

2.  *In any event the petitioner is in fact exercising supervisory control over the beneficiary.*

*As the petitioner states in Answer #1 and #2 of its "Q&A":*

**1.  Does the petitioner supervise the beneficiary (off-site or on-site)?**

*Ans: Yes, the petitioner will supervise the beneficiary offsite*

**2.  If the supervision is off-site, how does the petitioner maintain such supervision, i.e. weekly calls, reporting back to main office routinely, or site visits by the petitioner?**

*Ans: Kartik Krishnamurthy will have weekly calls with Srinivas Kethireddy to monitor his progress and training and will be subject to a performance review by Stellar Software Network based upon his work product; continued employment is dependent upon the review. Enclosed is performance evaluation of Kartik Krishnamurthy for the year 2017.*

---

*'None of the text or images from this site may be reproduced in whole or part without written permission.' Accordingly there is no circumstances in which the word "may" can convey the idea that an employer **must** control his employ, but rather shows that he merely has permission to do – that is that he has the right to control, whether he chooses to exercise it or not. Or perhaps to cite a more familiar example, the fact that a court "may" grant oral argument in a case certainly doesn't oblige it to do so.*

---

[3] *See Matter of Anselmo, 20 I&N Dec. 25, 30-32 (BIA 1989), Matter of X, online at* https://www.uscis.gov/sites/default/files/err/B6%20-%20Skilled%20Workers,%20Professionals,%20and%20Other%20Workers/Decisions_Issued_in_2013/AUG092013_01B6203.pdf *("Counsel's reliance on Construction and Design is misplaced. The petitioner's business is not located in the same jurisdiction as the cited case. Although the AAO may consider the reasoning of the decision, the AAO is not bound to follow the published decision of a U.S. circuit court case outside of that circuit. See Matter of Anselmo, 20 I&N Dec. 25, 30-32 (BIA 1989).").*

*Note continued on the foot of the following page.*

*Furthermore, the fact that the petitioner retains the right to ultimate control of the beneficiary's activities (see paragraphs 1-5 of the Addendum to the petitioner's contract with the beneficiary) explains why the Internal Revenue Service has concluded, based upon common law principles, that companies such as Stellar which provide software consultants to provide services directly to their clients are their employers in fact. See Rev. Rul. 87-41, 1987-1 C.B. 296, 1987 WL 419174 (IRS RRU) Internal Revenue Service (I.R.S.) Revenue Ruling "EMPLOYMENT STATUS UNDER SECTION 530(D) OF THE REVENUE ACT OF 1978" Published: 1987, a copy of which is enclosed. This was the **very same** revenue ruling referred to by the Supreme Court in Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 324 (1992) as an example of the proper application of common-law principles to determine whether an employer-employee relationship existed, thus demonstrating conclusively that the Supreme Court itself consider such a relationship to exist in the instant situation.[4]*

*A more detailed review of the standards established by the Neufeld memo and their application to the instant situation leads inexorably to the conclusion that the petitioner is the employer of the beneficiary.*

## B.  ALMOST ALL OF THE INDICIA OF AN EMPLOYER-EMPLOYEE RELATIONSHIP APPLIES TO THE INSTANT POSITION

*In determining the existence of an employer-employee relationship  the USCIS looks for guidance to the aforementioned memorandum of Associate Director Donald Neufeld in which he stated that "In considering whether or not there is a valid 'employer-employee relationship' for purposes of H-1B petition adjudication, USCIS must determine if the employer has a sufficient level of control over the employee. The petitioner must be able to establish that it has the right to control over when, where, and how the beneficiary performs the job and USCIS will consider 11 factors to make such a determination (with no one factor being decisive)." The enclosed "Petitioner's Q & A Regarding Employer-Employee Relationship" addresses each of these issues, and demonstrates that all but factor 9 indicate that an employer-employee relationship exists. Nothing in Mr. Neufeld's memo indicates that all of the relevant factors must be satisfied to establish a bona fide employer-employee relationship between the parties. Here the fact 10 of the 11 relevant factors are satisfied is highly compelling evidence of the existence of an employer-employee relationship.*

*Further, an additional 3 factors recently mentioned by the Service as indicia of an employee-employee relationship, also exist here.  See "Petitioner's Q & A Regarding Employer-Employee Relationship" items 12-14.*

---

[4] *Darden* favorably noted that the IRS set forth 20 factors as guides in determining whether an individual qualifies as a common-law "employee" in various tax law  contexts. *Id.* Virtually all of those factors also point to the instant beneficiary as being an employee of the petitioner. See attached **EXHIBIT 15**. Accordingly, nothing could be clearer then that the *Darden* court would've found an employer-employee relationship in this situation.

## C. THE END-CLIENT CONFIRMS THE TERMS OF THE BENEFICIARY'S EMPLOYMENT.

Beneficiary is performing services for the end-client client Honda North America. Petitioner hereby submits a letter dated March 16, 2019, from the end client, (**EXHIBIT 3**), confirming the work to be performed by Kartik Krishnamurthy.  The letter also confirms that Stellar Software Network is the employer for Kartik Krishnamurthy and that only Stellar will have the legal right to control the work of Kartik Krishnamurthy.

This plus the petitioner's satisfaction of 9 of the 11 factors mentioned by the Neufeld memorandum demonstrates that there is a valid employer-employee relationship between the petitioner and the beneficiary.

### SERVICES IN A SPECIALTY OCCUPATION

### A. THE JOB OFFERED QUALIFIES AS A SPECIALTY OCCUPATION BECAUSE THE OOH PROVIDES THAT INFORMATION TECHNOLOGY PROJECT MANAGERS NORMALLY MUST HAVE A BACHELOR'S DEGREE IN A COMPUTER- OR INFORMATION SCIENCE–RELATED FIELD

The RFE asserts that:

USCIS recognizes the Occupational Outlook Handbook ("OOH"), a publication of the U.S. Department of Labor (DOL), as an authoritative source on the duties and educational requirements of the wide variety of occupations that it addresses. You provided a certified Labor Condition Application (LCA) from the DOL that the proffered position is a **Computer Occupations - All Other position.** The OOH does not contain descriptions for this occupation. You did not provide other evidence to show that a bachelor's degree or higher or its equivalent in a specific specialty is normally required for entry into the position.

However, the OOH does provide that the job of IT project managers "normally must have a bachelor's degree in a computer- or information science–related field". https://www.bls.gov/ooh/management/computer-and-information-systems-managers.htm#tab-4[5]

---

[5] What the OOH exactly says is "Computer and information systems managers normally must have a bachelor's degree in a computer- or information science–related field. " However, the OOH elsewhere provides that "Computer and information systems managers (are) often called information technology (IT) managers or IT project managers…" https://www.bls.gov/ooh/management/computer-and-information-systems-managers.htm#tab-1. Therefore it is appropriate to read the word "IT project managers" for that of "Computer and information systems managers" in the text above. Nor is it inappropriate for the petitioner to use the educational requirements for Computer and information systems manager in the OOH without classifying the job under S.O.C. 11-3021.00 - Computer and Information Systems Managers on the LCA.

Note continued on the foot of the following page.

*The petitioner, in choosing the occupational code of 15-1199 on the ETA 9035 actually was referring to the fact that the job was that of an Information Technology Project Manager (S.O.C. 15-1199.09). However, the ETA 9035 which the petitioner must complete online does not permit the entry of decimals after the six-digit S.O.C. number. So, 15-1199 was the closest approximation of the actual occupational code the form would permit.*

*B. INASMUCH AS THE JOB OF AN <u>INFORMATION TECHNOLOGY PROJECT MANAGERS</u> NORMALLY REQUIRES A SPECIALIZED DEGREE IT IS IMMATERIAL WHETHER THE PROFFERED POSITION IS MORE COMPLEX OR UNIQUE THAN THAT OF OTHERS WORKING IN THE SAME OCCUPATION. Further RFE states that:*

*The record indicates that you certified to DOL that you were seeking to fill an entry level position, one that has "only a basic understanding of the occupation…performs routine tasks that require limited, if any, exercise of judgment" and pay the person the prevailing wage for an entry level employee. Thus, the LCA does not show that the proffered position is more complex or unique that only an individual with a bachelor's degree or higher in a specific specialty in normally required for entry into the position.*

*The petitioner respectfully reminds the director that it did not submit the LCA with a "Wage Level I" designation. Instead it submitted the certified LCA, which designated the **Wage Level IV***

*Accordingly, the proffered position is not entry level. The issue is, in any event, immaterial in that the petitioner does not rely upon a claim that the proffered position is any more complex or unique than that of any other IT project manager. Rather, the position qualifies*

---

*Unlike the OOH, none of the alternative job titles for S.O.C. 11-3021.00 include "information technology project manager". Therefore S.O.C. 15-1199.09 is the only S.O.C. that directly matches the job offered.*

*…*

**THE END-CLIENT CONFIRMS IT'S BACHELOR'S DEGREE REQUIREMENT TO PERFORM BENEFICIARY'S PROPOSED DUTIES**

*Enclosed is the letter from the end-client, Honda North America **…** confirming that the Beneficiary will be working as a Senior Project Manager Information Technology and that the **end date of the project is 03/31/2021**. It also confirms that "The knowledge required in this position requires a Bachelor's degree at a minimum or a Master's degree with course work in Information Technology, Accounting / Finance and Business Management. Kartik Krishnamurthy has a Master's degree in Business Administration from Northeastern University in Boston, Massachusetts, graduate coursework in Information Technology from the State University of New York in Buffalo, New York, the Project Management Professional certification from the Project Management Institute in Newton Square, Pennsylvania and undergraduate Commerce degree from University of Mumbai."*

*Accordingly, the job qualifies as a specialty occupation under both 8 C.F.R.*
***214.2(h)(4)(iii)(A)(1) and 4,** and the beneficiary qualifies to perform it.*

*as a specialty occupation because a bachelor's degree in a computer- or information science–related field is the normal requirements for the occupation. 8 C.F.R. §* **214.2(h)(4)(iii)(A)(1)**. *§ **214.2(h)(4)(iii)(A)(1)**.*

CAR 102-107.

On May 31, 2018 the USCIS reopened its decision of April 17, 2018 denying this petition, but nevertheless, following that reopening, denied it again. CAR 64-89.

 The stated bases for this subsequent Decision were much as in the prior decision:

(a) Stellar had "not established that you will be a 'United States employer' having an 'employer-employee relationship' with Mr. Krishnamuthy as an H-1 B temporary 'employee.'";  CAR 69.

(b) Stellar had "not demonstrated that the proffered position is a specialty occupation." CAR 72.

The Decision offered two reasons for its conclusion that Stellar had failed to establish that it was a U.S. Employer: 1) "The record remains absent of evidence regarding the work at the end-client's facility" and 2) Stellar had not proven that it actually "supervise(s) or oversee(s) the beneficiary's work while he performs his duties at the client's site.". CAR 69.

The Decision also offered two reasons  for its conclusion that Stellar had failed to establish that the job offered Mr. Krishnamurthy was not in a specialty occupation: 1) Stellar supposedly failed to provide "a statement of work detailing the project's outline description, duration, role and the beneficiary's duties to demonstrate the end-client will actually use computer occupations for daily assignments" and 2) "your client has required that the degree must be in a specific specialty." CAR 71.

Because two of these assertions were flatly contradicted by the record, and a third by the law, while the other was irrelevant, Stellar filed an appeal of this decision to the USCIS's Administrative Appeals Office (AAO). In that appeal it emphasized again that according to the

Occupational Outlook Handbook the job offered, IT Project Manager, was within the Computer and Information Systems Manager specialty occupation. CAR 58-59.

Because a portion of that decision was final for administrative review purposes, and plaintiffs would suffer irreparable harm if the effectiveness of this decision was not postponed while this appeal was pending, they also brought this action, ECF Doc. No. 1, and moved the Court to postpone the effectiveness of the decision (and/or for a preliminary injunction) while the action was pending. ECF Doc. No. 2.

On November 19, 2018 this Court issued a preliminary injunction staying the effectiveness of the USCIS's decision. ECF Doc. No. 17. Subsequently, Stellar withdrew its appeal, but CSC Director responded by certifying her decision to the AAO. On March 6, 2019 the AAO issued a decision denying Stellar's petition. CAR 1-17. The AAO's decision not only failed to address Stellar's argument that the job was a specialty occupation by according to the OOH, but the words "Occupational Outlook Handbook" even did not appear in its decision.

This motion ensued.

**ARGUMENT**

I.    THE AAO REPEATED THE CSC'S DIRECTOR'S ERROR OF FAILING TO EVEN CONSIDER STELLAR'S PRINCIPAL ARGUMENT THAT AN IT PROJECT MANAGER IS, ACCORDING TO THE OCCUPATIONAL OUTLOOK HANDBOOK, A SPECIALTY OCCUPATION

It was said of the Bourbons that they learnt nothing and forgot nothing.[6] Much the same could be said of the USCIS, at least in this case, even when it has as sagacious a teacher as this Honorable Court.

---

[6] "The Bourbon Mentality", Huffington Post, https://www.huffingtonpost.co.uk/lindsey-german/the-bourbon-
*Note continued on the foot of the following page.*

In its decision granting a preliminary injunction in this case, this Court opined as follows:

> More importantly, though, Stellar IT did not even need to show that Honda required a degree in a specific specialty in order to meet its burden on this issue.  It was permitted to instead show that the "degree requirement [wa]s common to the industry in parallel positions among similar organizations." 8 C.F.R. § 214.2(h)(4)(iii)(A).  This in fact was Stellar IT's primary argument following the issuance of the RFE.  See Compl., Ex. D at 16–19.  In support of the argument, Stellar IT cited the DOL's Occupational Outlook Handbook ("OOH"), which, in the RFE, USCIS described as "an authoritative source on the duties and educational requirements of the wide variety of occupations that it addresses."  Compl., Ex. B at 2, ECF No. 1-6.  According to Stellar IT, Mr. Krishnamurthy's duties would be akin to those of an "IT project manager," which the OOH says typically requires "a bachelor's degree in computer or information science and related work experience."  Bureau of Labor Statistics, "Computer and Information Systems Managers," Occupational Outlook Handbook (April 13, 2018), https://www.bls.gov/ooh/management/computer-and-information-systems-managers.htm.  Although this argument was directly responsive to the RFE, USCIS never addressed it in its second and final written decision denying the H-1B petition.  The agency did not once mention the OOH, much less endeavor to compare, even briefly, Mr. Krishnamurthy's job responsibilities to those of a generic "IT project manager."  And it is not the Court's responsibility to make that comparison now.  At this juncture, what matters is that USCIS completely ignored Stellar IT's primary argument, as "an agency's 'failure to respond meaningfully' to objections raised by a party renders its decision arbitrary and capricious."  BNSF Ry. Co. v. Surface Transp. Bd., 741 F.3d 163, 168 (D.C. Cir. 2014) (quoting PSEG Energy Res. & Trade LLC v. FERC, 665 F.3d 203, 208 (D.C. Cir. 2011)).

ECF Doc. No. 17 at 27

Remarkably, the AAO, despite this sterling clear guidance, repeats the very same error in its decision. Just as like the director, although Stellar's argument was directly responsive to the director's denial,  and loudly emphasized in its appeal,  CAR 58-59, the AAO never addressed it in its decision. Like the director, the AAO did not once  mention the OOH, much less endeavor to compare, even briefly, Mr. Krishnamurthy's job responsibilities to those of a generic "IT project manager." This  despite the additional fact that there have been numerous precedent

mentality_b_931092.html?guccounter=1&guce_referrer=aHR0cHM6Ly93d3cuZ29vZ2xlLmN vbS88&guce_referrer_sig=AQAAADHNk7bVya4QApfue3VTxOzmcH3ah82GUBgWhjtpUoye UbFQ3rk5Zv4zTAgevxTQel- kmNDvficE_SpMH6BBTXaWgu95F9HQiEWwMnFahTAD9_kLxK_T5UMNJd3XaeDBOed 8_mOa7f4-Twd9v_ofDArGREp-9AwnOg4ohCLu6_4e

16

decisions by the BIA, the AAO or the legacy INS relying upon the OOH as a definitive source of evidence as to what education requirements are required for a position, *See, e.g., Matter of Sea, Inc.* 19 I. & N. Dec. 817 *Matter of Caron International, Inc.* 19 I. & N. Dec. 791, and *Matter of Michael Hertz Associates* 19 I. & N. Dec. 558, and that there are no less than 1400 unpublished AAO cases so stating, the phrase "Occupational Outlook Handbook" does not appear in the agency's decision. In fact, even the California Service Center director (the director) stated in her request for evidence  that "USCIS recognizes the Occupational Outlook Handbook ("OOH"), a publication of the U.S. Department of Labor (DOL), as an authoritative source on the duties and educational requirements of the wide variety of occupations  that it addresses." CAR 425. But it was not important enough for the AAO to consider, even when Stellar emphasized in its appeal, and, more importantly, the Court in its opinion.

However, in AAO's defense, it is really not surprising that it so thoroughly ignored the OOH in its decision, because if did,  that tribunal would have no choice but to conclude that job was in fact a specialty occupation. The AAO never disputes that the job offered the beneficiary is an IT project manager, nor could it reasonably do so. At least 80% of the time the beneficiary's time is spent performing job duties are unambiguously those of IT project management, including:

> Establishes and implements project management processes and methodologies for the IT community to ensure projects are delivered on time, within budget, adhere to high standards, and meet customer expectations. (10%)
> • Responsible for assembling project plans and teamwork assignments, directing and monitoring work efforts daily, identifying resource needs, performing quality reviews: and  escalating functional, quality, timeline issues appropriately. (10%)
> • Responsible for tracking key project milestones and adjusting project plans and/or resources. ( I 0%)
> • Coordinates communication with all areas of the enterprise that impacts the scope, budget, risk and resources of the work effort being managed. ( 10%)

• Manages one or more cross -functional medium to large sized projects of high complexity. (10%)
• Assist in the request for information (RFI), vendor request for proposal (RFP) processes as directed, and work closely across business and IT Teams to drive effective selection of delivery and solutions partners. (10%)
• Lead the business analysis team and process modeling effort and the writing and presentation of requirements documentation to all stakeholders. ( 10%)
• Manage sprint planning as required, maintain sprint velocity reports, conduct scrum calls and lead criteria definitions in user story sizing and acceptance. (10%)

CAR 148

Nor did the AAO  dispute, or, again, even acknowledge, Stellar's argument that because the job was that of an IT Project Manager, the Occupational Outlook Handbook shows that it requires a specialized degree. Specifically, Stellar explained to the director that  "Computer and information systems managers normally must have a bachelor's degree in a computer- or information science–related field. " However, the OOH elsewhere provides that "Computer and information systems managers (are) often called information technology (IT) managers or IT project managers…" https://www.bls.gov/ooh/management/computer-and-information-systems-managers.htm#tab-1. Therefore it is appropriate to read the word "IT project managers" for that of "Computer and information systems managers" in the text above, therefore arriving at the conclusion that the job of IT project managers "normally must have a bachelor's degree in a computer- or information science–related field". CAR 106-107.

The AAO has no answer for this argument because it never even considered it. In light of the Court's strong emphasis on the importance of this issue, it is difficult to know what the AAO was thinking. Perhaps, as is so often the case  when otherwise highly intelligent people  make remarkably obvious oversights, it was thinking of nothing at all.

Inasmuch as   the AAO completely ignored Stellar IT's primary argument,  "an agency's 'failure to respond  meaningfully' to objections raised by a party renders its decision arbitrary and capricious."  ECF No. 17 at 27.

II.     THE AAO ERRED AS A MATTER OF LAW BY HOLDING THAT AN
        PETITIONER MUST ACTUALLY CONTROL A WORKER TO BE HIS
        EMPLOYER

The AAO finding that Stellar failed to establish an employer-employee relationship with the beneficiary is easier still to dismiss. The basis for the conclusion  that Stellar had supposedly failed to "sufficiently corroborated who has or will have actual control over the Beneficiary's work or duties," CAR 12, was not in accordance with law inasmuch as  under two decisions of the U.S. Supreme Court, the decisions of 9 Circuit Courts of Appeal (including the D.C. Circuit) and the USCIS's own binding Adjudicator's Field Manual, only the right to control is required to establish an

There are few propositions more firmly settled in the field of labor law than that the right of control, not actual control, is the gravamen of an employer-employee relationship. See, e.g.,. *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 448 (2003), *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992). The right to control the beneficiary is different from actual control. An employer may have the right to control the beneficiary's job-related duties and yet not exercise actual control over each function performed by that beneficiary. *See e.g. Dovell v. Arundel Supply Corp.*, 124 U.S. App. D.C. 89, 361 F.2d 543, 545 (1966) ("The vital element which negatives such independence, in the relation between employer and employee, is the right to control the employee, not only as to the final result, but in the performance of the task itself. And, it is the right to control, not control or supervision itself, which is most important. (Footnote

omitted.)" *quoting Grace v. Magruder*, 80 U.S. App. D.C. 53, 148 F.2d 679, 681 (1945))[7]; *Avis Rent A Car Sys., Inc. v. United States*, 503 F.2d 423, 425 n.1 (2d Cir. 1974) ; *Trent v. Atl. City Elec*. Co., 334 F.2d 847, 863 (3d Cir. 1964), *Weber v. Commissioner*, 60 F.3d 1104, 1110 (4th Cir. 1995); *Breaux & Daigle, Inc. v. United States,* 900 F.2d 49, 50 (5th Cir. 1990);  *NLRB v. Cement Transp., Inc.*, 490 F.2d 1024, 1027 (6th Cir. 1974), *Sargent v. Commissioner*, 929 F.2d 1252, 1253 (8th Cir. 1991); *Chin v. United States*, 57 F.3d 722, 725 (9th Cir. 1995), *Jones v. Goodson*, 121 F.2d 176, 177 (10th Cir. 1941), USCIS Adjudicator's Field Manual (AFM) § Chapter 31.3 nt.1..[8] This is also the only reasonable interpretation of  8 CFR § 214.2(h)(4)(ii)(2) which defines a "United States employer" as one who has an employer-employee relationship with respect to employees under this part, as indicated by the fact that it **may** hire, pay, fire, supervise, or otherwise control the work of any such employee ....". (emphasis added).  Further, inasmuch as it is the interpretation of the agency, as set forth in the AFM, it is also binding upon this Court, provided it is reasonable, as it surely is. *Auer v. Robbins*, 519 U.S. 452, 462 (1997).

---

[7] "The rule in the District of Columbia is that where a conflict of law as to a particular issue exists the law of the jurisdiction with the more substantial interest in the resolution of the issue is applied. The rule in the District of Columbia is that where a conflict of law as to a particular issue exists the law of the jurisdiction with the more substantial interest in the resolution of the issue is applied. *Dovell* , 361 F.2d at 544. Here both the other circuits which might have an interest in this issue, the 6th, where Stellar is based, and the 9th, where Mr. Krishnamurthy lives and where the services were to be performed, likewise have held that right to control, rather than actual control itself, is dispositive of an employee-employee relationship. *See infra*.

[8] "Policy material is binding on all USCIS officers and must be adhered to unless and until revised, rescinded or superseded by law, regulation or subsequent policy, either specifically or by application of more recent policy material. …Examples of policy materials are: Field and Administrative Manuals" AFR 3.4. Thus, the AFM, being an administrative manual, is a policy material binding on all USCIS officers. One presumes that the Director of the Administrative Appeals Office is a USCIS officer, and so bound by it.
*Note continued on the foot of the following page.*

The fact that an employer "may" control the work of an employee (rather than "must"[9]) demonstrates that, consistent with *Clackamas, Darden,* the decisions of at least 9 circuit courts of appeal and the USCIS's own AFM, it is only the right to control and not the actual exercise of the same which is determinative of an employer-employee relationship.   Therefore, the AAO's decision denying Stellar's petition for lack of an employer-employee relationship merely because Stellar had supposedly not proven that it would actually control Mr. Krishnamurthy's work, as opposed to merely reserving the *right* to control it, was not in accordance with law.

Inasmuch as the AAO's decision was arbitrary and capricious and not in accordance with law this Court should exercise its authority under 5 U.S.C. § 706 to hold it unlawful and set it aside.

Respectfully Submitted this 19th day of September, 2019

s/ *Michael E. Piston*
Michael E. Piston
Attorney for the Plaintiffs
225 Broadway Suite 307
New York, NY 10007
646-845-9895
Michaelpiston4@gmail.com

---

[9] The Oxford Online Dictionary offers several definitions of "may", only one of which is remotely applicable here: "Used to ask for or to give permission.
*'you may confirm my identity with your Case Officer, if you wish'*
*'may I ask a few questions?'*
…
*'None of the text or images from this site may be reproduced in whole or part without written permission.'* Accordingly there is no circumstances in which the word "may" can convey the idea that an employer **must** control his employ, but rather shows that he merely has permission to do – that is that he has the right to control, whether he chooses to exercise it or not. Or perhaps to cite a more familiar example, the fact that a court "may" grant oral argument in a case certainly doesn't oblige it to do so.