**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| STELLAR IT SOLUTIONS, INC. and | : | |
| KARTIK KRISHNAMURTHY, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No.:     18-2015 (RC) |
| | : | |
| v. | : | Re Document Nos.:   32, 35 |
| | : | |
| UNITED STATES CITIZENSHIP AND | : | |
| IMMIGRATION SERVICES, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS**

**MOTION FOR SUMMARY JUDGMENT**

**I.  INTRODUCTION**

This case concerns Plaintiff Kartik Krishnamurthy, a citizen of India who has lived in the

United States since 2011 with an H-1B visa, and Plaintiff Stellar IT Solutions, Inc. ("Stellar IT"),

Mr. Krishnamurthy's employer, and their attempts to extend his visa.  H-1B visas allow foreign

citizens to work for employers in the United States in "specialty occupation[s]."  8 U.S.C. §

1101(a)(15)(H)(i)(b).  Stellar IT employed Mr. Krishnamurthy in a previously approved role for

six years and petitioned for a one-year extension of his H-1B status based on a change in his role

at Stellar IT and his pending application for permanent residency.  Defendant, the United States

Citizenship and Immigration Services ("USCIS"), denied the petition.  While Plaintiffs

administratively appealed that decision, this Court granted a motion for preliminary injunction to

stay the effectiveness of the denial, allowing Mr. Krishnamurthy to retain lawful status.  *See*

*Stellar IT Sols., Inc. v. U.S. Citizenship and Immigration Servs.*, No. 18-cv-2015, 2018 WL

6047413, at \*13 (D.D.C. Nov. 19, 2018).  The USCIS Administrative Appeals Office ("AAO")

affirmed the denial in June 2019 and, in their motions for summary judgment, the parties have

fully briefed Plaintiffs' challenge to the agency action under the Administrative Procedure Act

("APA"), 5 U.S.C. § 706(2)(A).  Based on the Court's review of the briefing and the

administrative record, and for the reasons set forth below, the Court grants Plaintiffs' motion for

summary judgment, denies Defendant's cross motion for summary judgment, and remands the

case to the agency for further consideration.

## II.  BACKGROUND

### A.  Legal Framework

H-1B visas are nonimmigrant visas that allow for American employers to temporarily

hire foreign citizens to work in "specialty occupation[s]."  8 U.S.C. § 1101(a)(15)(H)(i)(b).  An

employer seeking to hire a foreign citizen through this program must interact with two federal

agencies: the Department of Labor ("DOL") and USCIS.  First, the employer must submit a

Labor Condition Application ("LCA") with DOL that identifies the specialty occupation being

offered and verifies compliance with other requirements of the program.  *See id.* § 1182(n)(1).

Then, once DOL certifies the LCA, the employer submits the LCA to USCIS alongside a Form I-

129 petition requesting that the foreign worker—referred to as the petition's "beneficiary"—be

classified as an H-1B nonimmigrant worker.  *See* 8 C.F.R. § 214.2(h)(4).  The petition must

establish both that the position being offered is in fact a "specialty occupation," *id.* §

214.2(h)(4)(iii)(A), and that the employer has "an employer-employee relationship" with the

beneficiary, *id.* § 214.2(h)(4)(ii).[1]

---

[1] If approved, H-1B visas are typically valid for three years but may be extended an additional three years to the statutory maximum of six years.  8 U.S.C. § 1184(g)(4).  Employers may seek one-year extensions beyond the statutory cap when the foreign citizen has applied for

The Immigration and Nationality Act ("INA") defines "specialty occupation[s]" as those requiring "theoretical and practical application of a body of highly specialized knowledge, and . . . [the] attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States."  8 U.S.C. § 1184(i)(1)(A)–(B). Regulations provide that an employer can show a position is a "specialty occupation" by satisfying at least one of four prerequisites:

> (1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;
> (2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;
> (3) The employer normally requires a degree or its equivalent for the position; or
> (4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

8 C.F.R. § 214.2(h)(4)(iii)(A).

The INA only allows employers to apply for H-1B visas, *see* 8 U.S.C. § 1101(a)(15)(H)(i)(b), and regulations confirm an employer, by definition, must have an employer-employee relationship with the prospective employee, *see* 8 C.F.R. § 214.2(h)(4)(ii). Pursuant to those regulations, an employer is "a person, firm, corporation, contractor, or other association, or organization in the United States which . . . [h]as an employer-employee relationship with respect to employees under this part, as indicated by the fact that it may hire, pay, fire, supervise, or otherwise control the work of any such employee." *Id.*

Recently, a court in this District considered thirty-three consolidated cases related to denials of H-1B visa petitions from employers in the IT industry.  *Itserve All., Inc. v. Cissna*, No.

---

permanent residency and at least 365 days have elapsed without a final decision.  8 C.F.R. § 214.2(h)(13)(iii)(D).

18-cv-2350, 2020 WL 1150186, at *1 (D.D.C. Mar. 10, 2020).  Of particular relevance here,

Judge Collyer analyzed USCIS's policies, as outlined in policy memoranda from 2010 and 2018,

relating to the "specialty occupation" requirement and the "employer-employee relationship"

requirement in H-1B visa petitions.  *Id.* at *15–19.  Judge Collyer found that USCIS's current

treatment of both requirements violated the APA.  *Id.* at *2.

 With respect to the "specialty occupation" requirement, Judge Collyer found that

USCIS's requirement that employers provide proof of non-speculative work assignments for the

duration of the visa period was not supported by statute or regulation and was arbitrary and

capricious.  *Id.* at *2; *see also id.* at *18 (noting that USCIS has recently "denied H-1B visa

petitions . . . because the petition did not include evidence of non-speculative work assignments

for the entire duration of the visa.").  The court explained that nothing in the statute "requires

specific and non-speculative qualifying day-to-day assignments for the entire time requested in

the petition."  *Id.* at *19.  Neither could the four prerequisites outlined in 8 C.F.R. §

214.2(h)(4)(iii)(A) be read to require detailed proof of planned day-to-day activities.  *Id.*

("Criteria one, two, and three address various ways a baccalaureate or other degree may suffice

[to establish a specialty occupation].  The fourth criterion does not erase the prior three; to the

contrary, it offers an alternative . . . .").  This Court has since found, following *Itserve*, that a

"searching inquiry into the specific services that [a beneficiary] would perform" is not

"necessary or consistent with the broader statutory and regulatory framework."  *Thatikonda v.*

*U.S. Citizen and, Immigration Servs.*, No. 19-cv-685, 2020 WL 2126716, at *4 (D.D.C. May 5,

2020).

 Regarding the "employer-employee relationship" requirement, Judge Collyer ruled that

USCIS acted contrary to regulation by requiring employers to show indicia of control over the

employee beyond the ability to hire, pay, or fire the employee. *Itserve*, 2020 WL 1150186, at

*16–17.  The court found that, based on the regulatory language noted above,

> an employer-employee relationship is evidenced by some aspect of "control" which
> may be shown in various ways, be it the ability to hire, to pay, to fire, to supervise,
> or to control in another fashion.  The use of "or" distinctly informs regulated
> employers that a single listed factor can establish the requisite "control" to
> demonstrate an employer-employee relationship.  This formulation makes evident
> that there are multiple ways to demonstrate employer control, that is, by hiring or
> paying or firing or supervising or "otherwise" showing control.

*Id.* at *17.  The court stated that USCIS "may not read any single criterion in 214.2(h)(4)(ii) as

mandatory to demonstrate an employer-employee relationship but must consider each sufficient

to establish the relationship . . . ." *Id.*

## B.  Procedural History

Stellar IT submitted a Form I-129 petition to extend Mr. Krishnamurthy's H-1B visa in

August 2017.  A.R. 220–319.[2]  The petition explained that Mr. Krishnamurthy would be working

as a "Senior Project Manager Information Technology" providing information technology

services on-site at Honda North America ("Honda").  A.R. 310.  Stellar IT provided these

services as a sub-contractor through its client, a company called Sharp Decisions, Inc. ("Sharp

Decisions").  A.R. 310.  Stellar IT and Sharp Decisions both submitted letters explaining the

duties of Mr. Krishnamurthy's role; some of those responsibilities would include implementing

"project management processes and methodologies for the IT community," working "closely

across business and IT teams to drive effective selection of delivery and solutions partners," and

"ensur[ing] that technology investments are aligned to key company priorities."  A.R. 306–07.

Stellar IT stated that the position "requires a minimum of a bachelor's degree in a field directly

---

[2] "A.R." refers to the certified administrative record filed in this case.  *See* Certified
Administrative Record, ECF No. 43.  The corresponding page numbers refer to the stamped
Bates numbers.

related to the specialty or its equivalent in education or work experience," A.R. 307, and Sharp

Decisions affirmed that the job required a level of proficiency consistent with "at least a

Bachelor's Degree in Information Technology, Business management, or a closely related field,"

A.R. 311.  Both letters also confirmed that only Stellar IT would be responsible for paying,

hiring, firing, and supervising Mr. Krishnamurthy.  A.R. 308, 311.[3]

 In response to the petition, USCIS issued a Request for Evidence ("RFE") seeking

additional information.  USCIS wanted more evidence about how the position qualifies as a

specialty occupation and more evidence showing that Stellar IT would have sufficient control

over Mr. Krishnamurthy to establish a valid employer-employee relationship.  A.R. 425–27.  The

RFE states that "USCIS recognizes the Occupational Outlook Handbook ("OOH"), a publication

of the U.S. Department of Labor (DOL), as an authoritative source on the duties and educational

requirements of a wide variety of occupations that it addresses."  A.R. 425.  The RFE also

provides examples of what other types of evidence can show that a position is a specialty

occupation.  A.R. 426.  The RFE states that Stellar IT should "demonstrate an employer-

employee relationship with the beneficiary through the right to control the manner and means by

which the product or services are accomplished for the duration of the requested H-1B validity

period."  A.R. 428.  USCIS gave Stellar IT until April 17, 2018 to submit additional evidence.

A.R. 424.

 But on March 20, 2018, USCIS issued a decision denying Stellar IT's petition.  A.R. 192.

USCIS found that the petition failed to establish "that the final duties of the proffered position

---

[3] Stellar IT also submitted the required LCA, letters of support attesting to Mr. Krishnamurthy's credentials, academic records, professional certifications, evidence of Mr. Krishnamurthy's pending application for permanent residency, and the employment agreement between Stellar IT and Mr. Krishnamurthy. *See* A.R. 235–319.

are those of a specialty occupation" and that Stellar IT did not show that it "has required that the degree must be in a *specific specialty*." A.R. 205 (emphasis in original). The decision also states that the petition failed "to establish whether [Stellar IT] ha[s] the right to control the beneficiary's employment at the third-party end client" and therefore did not prove a valid employer-employee relationship. A.R. 203.

On April 12, 2018, Stellar IT submitted additional evidence and a motion to reconsider and reopen. A.R. 100. Among the new evidence was a letter from Honda providing more detail about the project Mr. Krishnamurthy would manage; he would be overseeing the redesign of "a suite of portals allowing two way communication between Honda and [its] dealerships." A.R. 121. Additionally, Stellar IT explained in its submission that the proffered position is akin to an Information Technology Project Manager, which, according to the OOH, normally requires a bachelor's degree in computer or information science. A.R. 106–07. With respect to the employer-employee relationship, Honda's letter and other new documents reiterated that only Stellar IT had the legal right to pay, hire, fire, and supervise Mr. Krishnamurthy. *See* A.R. 122, 117–19. Despite the new evidence, for the same reasons given in the March 20, 2018 decision, USCIS again denied the petition on May 31, 2018. A.R. 82–87. Stellar IT filed an appeal with the AAO.

While awaiting the resolution of the administrative appeal, Plaintiffs filed suit in this Court and sought a preliminary injunction to stay the effectiveness of USCIS's denial. *See* Compl., ECF No. 1; Mot. Prelim. Inj., ECF No. 2. The Court granted in part Plaintiffs' motion and stayed the effectiveness of USCIS's denial. *Stellar IT*, 2018 WL 6047413, at *13. The Court found that Plaintiffs were likely to succeed on the merits because "the agency repeatedly ignored critical evidence and arguments raised by Stellar IT." *Id.* at *10. For example, although

Stellar IT explained that the position would be akin to an IT project manager as described in the

OOH, "[t]he agency did not once mention the OOH, much less endeavor to compare, even

briefly, Mr. Krishnamurthy's job responsibilities to those of a generic 'IT project manager.'" *Id.*

Furthermore, the Court explained that the agency failed to acknowledge the evidence showing

that Stellar IT had the legal right to control Mr. Krishnamurthy. *Id.* at *6–7.

On March 6, 2019, the AAO issued a decision again denying Stellar IT's petition. A.R.

1–17. First, the agency found that Stellar IT had "not sufficiently established the substantive

nature of the work the Beneficiary would perform during the intended period of employment,

which precludes the determination of whether the proffered position qualifies as a specialty

occupation." A.R. 5–6. According to the AAO, the record did not contain "sufficient evidence

of the full contractual terms between the Petitioner, the vendor, and the end-client." A.R. 6. The

agency singled out an agreement between Sharp Decisions and Honda referenced by the petition

but not produced, calling it an "essential contractual document" that would explain who actually

controlled Mr. Krishnamurthy's work. A.R. 6. The AAO stated that "despite the additional

statements from the end-client, the lack of documentation regarding the [project], and the

Beneficiary's specific role in the project, precludes a determination that the work to be

performed qualifies as a specialty occupation." A.R. 8.

Second, the AAO found Stellar IT failed to establish the minimum degree requirements

for the position because the evidence submitted was inconsistent. A.R. 9–10. The AAO stated

that Stellar IT failed to identify the precise specialty required for the job and that "the

requirement of a bachelor's degree, without further specification of the degree field, does not

establish the position as a specialty occupation." A.R. 9 (citing *Matter of Michael Hertz*, 19 I&N

Dec. 558, 560 (Comm'r 1988)). Finding that the degree requirements stated in the record were

too broad, the AAO held that the "proffered position conflicts with the statutory definition of specialty occupation, which requires a bachelor's degree in '*the* specific specialty.'"  A.R. 10 (quoting 8 U.S.C. § 1184(i)(1)) (emphasis added).  The AAO's decision does not mention the OOH or Stellar IT's argument that the job is similar to an IT project manager as described by DOL.

Finally, the AAO determined that the petition did not contain sufficient evidence of Stellar IT's control over Mr. Krishnamurthy and therefore failed to establish the required employer-employee relationship.  A.R. 12.  Again noting the absence of the agreement between Sharp Decisions and Honda, the AAO stated that "the record does not establish the terms, conditions, and scope of the intended work at the end-client location.  Instead, the record contains inconsistent and incomplete information about the nature of Petitioner's claimed supervision and control of the Beneficiary's work."  A.R. 17.  The agency determined that Stellar IT "has not sufficiently corroborated who has or will have actual control over the Beneficiary's work or duties, or the condition and scope of the Beneficiary's services."  A.R. 12.

Plaintiffs and USCIS have both filed motions for summary judgment.  *See* Pls.' Mot. Summ. J. ("Pls.' Mot."), ECF No. 32; Pls.' Statement P & A Supp. Mot. Summ. J. ("Pls.' Statement"), ECF No 32-1; Def.'s Cross Mot. Summ. J., ECF No. 35; Def.'s Mem. Supp. Cross Mot. Summ. J. ("Def.'s Mem."), ECF No. 35-1.

## III.  LEGAL STANDARD

Generally, summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  However, in cases involving review of agency action under the APA the normal summary judgment standard does not apply.  *See Sargawala v. Cissna*, 387 F.

Supp. 3d 56, 63 (D.D.C. 2019) (citing *Ctr. For Food Safety v. Salazar*, 898 F. Supp. 2d 130, 138 (D.D.C. 2012)).  "Instead of reviewing the record for disputed facts that would preclude summary judgment, the function of the district court is a more limited one: 'to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'"  *Ardmore Consulting Grp., Inc. v. Contreras-Sweet*, 118 F. Supp. 3d 388, 393 (D.D.C. 2015) (quoting *Kaiser Found. Hosps. v. Sebelius*, 828 F. Supp. 2d 193, 198 (D.D.C. 2011)).  In performing this "narrow" review, the court "is not to substitute its judgment for that of the agency."  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Under the APA, agency action can be set aside if a plaintiff can show that it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Agency action is arbitrary and capricious if the agency "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Agape Church, Inc. v. FCC*, 738 F.3d 397, 410 (D.C. Cir. 2013) (quoting *State Farm*, 463 U.S. at 43).  While review under this standard is deferential, *Recording Indus. Ass'n of Am., Inc. v. Librarian of Congress*, 608 F.3d 861, 865 (D.C. Cir. 2010), the agency "at least 'must examine' the relevant factors . . . and articulate a 'rational connection' between the record and [its] decision."  *AT&T, Inc. v. FCC*, 886 F.3d 1236, 1245 (D.C. Cir. 2018) (quoting *State Farm*, 463 U.S. at 43).

## IV.  ANALYSIS

The AAO affirmed the denial of Stellar IT's petition for three reasons: (1) Stellar IT did not sufficiently establish the substantive nature of the work, (2) Stellar IT failed to demonstrate the minimum educational requirements for the position, and (3) Stellar IT failed to demonstrate the requisite control over Mr. Krishnamurthy to establish an employer-employee relationship. Reasons (1) and (2) both relate to whether the proffered position qualifies as a "specialty occupation" under 8 U.S.C. § 1184(h)(i)(1) and 8 C.F.R. § 214.2(h)(4)(iii)(A), so the Court considers these reasons together.

### A.  Specialty Occupation

The AAO found that because Stellar IT did not sufficiently establish the substantive nature of the work, the agency was precluded from determining that the proffered position qualifies as a specialty occupation. A.R. 5–6. Throughout the decision, the AAO criticized the provided job descriptions as "vague overviews." A.R. 6. The agency noted the failure to fully describe the services Mr. Krishnamurthy would provide to Honda North America, *id.*, and stated that the submitted evidence provided "little to no insight on what [Mr. Krishnamurthy] will actually do as a senior project manager . . . ." A.R. 8. Ultimately, the AAO found that "the ambiguities and lack of adequate documentation in the record raise unanswered questions regarding the substantive nature of the proffered position and . . . precludes a conclusion that the proffered position satisfies any criterion at 8 C.F.R. § 214.2(h)(4)(iii)(A), because the substantive nature of the work determines" whether the criterion can be met. A.R. 8–9.

The AAO also found that Stellar IT failed to "provide consistent evidence regarding the minimum job requirements for the proffered position." A.R. 9. The decision lays out the various statements regarding the educational requirements for the proffered position in a table:

| Document | Requirements |
|---|---|
| Petitioner's letter dated August 25, 2017 | Minimum of a bachelor's degree in a field directly related to the specialty or its equivalent in education or work experience. |
| Vendor letters dated August 21, 2017, and April 9, 2018 | At least a Bachelor's Degree in Information Technology, Business Management, or a closely related field. |
| End-client letter dated March 16, 2018 | Bachelor's degree at a minimum or a Master's degree with course work in Information Technology, Accounting/Finance and Business Management. |
| Petitioner's letter dated April 11, 2018 | Minimum of a bachelor's degree in a field with coursework in information technology, accounting/finance and business management. |

A.R. 5.  The AAO noted that these "inconsistencies in the minimum requirements have not been resolved."  A.R. 9.  Emphasizing again the failure to demonstrate Mr. Krishnamurthy's specific duties, the AAO stated "absent evidence of a direct relationship between the claimed degrees required and the duties and responsibilities of the position, we do not find that the proffered position requires anything more than a general bachelor's degree."  A.R. 10.

In its cross motion for summary judgment, USCIS maintains that the agency appropriately and reasonably determined that Stellar IT failed to show the proffered position qualifies as a specialty occupation.  USCIS argues that the lack of evidence regarding specific duties "render[ed] the entire petition too speculative," Def.'s Mem. at 18, and that Plaintiffs "completely ignore[] how petitioners have the burden to demonstrate non-speculative employment with clear evidence," *id.* at 19.  USCIS also argues that the agency reasonably determined Stellar IT failed to show the minimum degree requirements for the position based on the "significant discrepancies regarding what 'specific specialty' degree is a prerequisite for the

12

position of 'Senior Project Manager.'" *Id.* at 20.  In their opening brief, Plaintiffs largely side-step these issues, stating that the AAO failed consider their argument that the proffered position is akin to an IT project manager as described in DOL's OOH.  Pls.' Statement at 16.  In their Reply, Plaintiffs argue that the submitted evidence sufficiently shows that the proffered position's duties were consistent with those of an IT project manager.  Pls.' Reply at 22, ECF No. 37.[4]

The reasoning and holding in *Itserve*, with which this Court agrees, and the agency's failure to consider Stellar IT's argument regarding the OOH necessitate remand to the agency.  As Judge Collyer explained in *Itserve*, the regulation at issue offers multiple ways a petitioning employer can demonstrate a position counts as a specialty occupation.  *Itserve*, 2020 WL 1150186, at *19.  Requiring detailed evidence of day-to-day activities and services to be provided runs afoul of the regulatory language;[5] regardless of any inconsistencies found in the record, it is clear to the Court that the AAO focused its inquiry on proof of non-speculative work. *See Thatikonda*, 2020 WL 2126716, at *5 ("But even assuming that inconsistency in the abstract is a valid basis for denying a petition, it is clear to the Court that the requirement found to be invalid in *Itserve* influenced the agency's decision-making here.").  Furthermore, the AAO ignored Stellar IT's invocation of DOL's OOH and the argument that the proffered position was

---

[4] Plaintiffs make other arguments regarding whether Stellar IT was required to submit "objective evidence" to corroborate the proposed duties, Pls.' Reply at 23–25, and whether USCIS's arguments regarding the non-speculative work requirement are barred by *Chenery*, *id.* at 25–28.  Because the Court remands the case based on the reasoning in *Itserve*, it does not consider these arguments.

[5] USCIS argues that the agency's position should be afforded deference.  *See* Def.'s Mem. at 28–30.  However, because requiring proof of non-speculative work conflicts with the clear regulatory language, *Itserve*, 2020 WL 1150186, at *19 ("The [US]CIS interpretations of the INS 1991 Regulation are plainly erroneous."), the agency interpretation is not controlling, *see Auer v. Robbins*, 519 U.S. 452, 461 (1997) (holding an agency's interpretation of its own regulations is "controlling unless 'plainly erroneous or inconsistent with the regulation.'").

akin to an IT project manager.  The OOH says that an IT project manager position typically

requires "a bachelor's degree in computer or information science and related work experience."

Bureau of Labor Statistics, "Computer and Information Systems Managers," *Occupational*

*Outlook Handbook*, U.S. Bureau of Labor Statistics (April 10, 2020),

https://www.bls.gov/ooh/management/computer-and-information-systems-managers.htm.  This

comparison could potentially satisfy the first prong of 8 C.F.R. § 214.2(h)(4)(iii)(A), that a

"baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry

into the particular position," *see Taylor Made Software, Inc. v. Cuccinelli*, No. 19-cv-202, 2020

WL 1536306, at *5 (D.D.C. Mar. 31, 2020) (noting USCIS's reliance on the OOH under the first

prong), or could be used as evidence under the second prong, that the "degree requirement is

common to the industry in parallel positions among similar organizations," *see Innova Sols., Inc.*

*v. Baran*, 338 F. Supp. 1009, 1020 (N.D. Cal. 2018) (explaining how USCIS uses the OOH

under the second prong).  The first and second prongs offer alternative, and independently

sufficient, means for demonstrating that the position counts as a specialty occupation.

Regardless of which prong should apply to this case, the agency's failure to respond

meaningfully—or at all—to Stellar IT's OOH argument renders its decision arbitrary and

capricious.  *See BNSF Ry. Co. v. Surface Transp. Bd.*, 741 F.3d 163, 168 (D.C. Cir. 2014).

## B.  Employer-Employee Relationship

As an independent reason for denying the petition, the AAO found that Stellar IT failed

to demonstrate that it would have sufficient control over Mr. Krishnamurthy to show a valid

employer-employee relationship.  Between Stellar IT, the vendor Sharp Decisions, and the end-

client Honda, the AAO stated that Stellar IT "ha[d] not sufficiently corroborated who has or will

have actual control over the Beneficiary's work or duties, or the condition and scope of the

14

Beneficiary's services." A.R. 12.  While the agency credited the evidence Stellar IT did present,

the AAO wanted to see evidence showing "who will oversee and direct the work of the

Beneficiary, who will provide the instrumentalities and tools, where the work will be located,

and who has the right or ability to affect the projects to which the Beneficiary is assigned . . . ."

A.R. 14.  The AAO singled out the absence of a contract between Sharp Decisions and Honda

that it assumed contained provisions controlling "the specific requirements of the project," A.R.

13, and that it speculated perhaps "indicate[d] a different manner for the oversight of the

Beneficiary's work," A.R. 14.  Overall, the AAO found that "the record contains inconsistent

and incomplete information about the nature of the Petitioner's claimed supervision and control

of the Beneficiary's work." A.R. 17.

USCIS maintains that this conclusion is reasonable because the record indicates that

Steller IT "was not in any way the controller over Mr. Krishnamurthy's ultimate employment

with Honda as a 'Senior Project Manager.'" Def.'s Mem. at 24.  Noting that the AAO correctly

recognized the key element of who exercises control over the beneficiary, USCIS states that the

decision "laid out five pages of factual reasons why Stellar IT had not proven it had the right of

control over Mr. Krishnamurthy." *Id.* at 25.  Plaintiffs argue that the AAO's focus on actual

control constitutes legal error because the relevant inquiry should only be whether Stellar IT had

the legal right to control Mr. Krishnamurthy.  Pls.' Statement at 19–21.

In light of the reasoning and holding in *Itserve*, with which this Court agrees, the case

must be reconsidered by the agency.  The AAO demanded evidence beyond the documents

showing Stellar IT was responsible for Mr. Krishnamurthy's salary, benefits, training, hiring,

firing, and performance evaluation, and instead required evidence showing "who will oversee

and direct the work of the Beneficiary, who will provide the instrumentalities and tools, where

the work will be located, and who has the right or ability to affect the projects to which the

Beneficiary is assigned." A.R. 14. Such a requirement is inconsistent with the regulatory

language. *Itserve*, 2020 WL 1150186, at *17 ("[USCIS] may not read any single criterion in §

214.2(h)(4)(ii) as mandatory to demonstrate an employer-employee relationship but must

consider each sufficient to establish the relationship."). While the record may contain

inconsistencies with respect to which entity would actually control Mr. Krishnamurthy's day-to-

day work, it is clear with respect to which company may hire, pay, and fire him as evidenced by

the letters from Stellar IT, Sharp Decisions, and Honda. A.R. 303 ("[Mr. Krishnamurthy]

acknowledges that only [Stellar IT] has hired, and will pay, and have the ability to fire [Mr.

Krishnamurthy]; A.R. 311 ("Neither, Sharp Decisions nor Honda North America has any

employment relationship with Kartik Krishnamurthy . . . [Stellar IT] is responsible for his salary,

benefits . . . supervising . . . hiring, firing and performance evaluations."); A.R. 122 ("[Stellar IT]

is the employer of Kartik Krishnamurthy . . . [and] will be responsible for paying, hiring, firing,

supervising, controlling and training [him]."). In light of the reasoning in *Itserve*, 2020 WL

1150186, at *17, with which this Court agrees, the AAO's focus on control beyond these factors

tainted its analysis and renders the decision arbitrary and capricious. *See PAM Squared at

Texarkana, LLC v. Azar*, No. 18-cv-2542, 2020 WL 364782, at *5 (D.D.C. Jan. 22, 2020)

("[W]hen a mistake infects the agency's analysis or the outcome of the adjudication, it crosses

the line into arbitrary and capricious territory.").[6]

---

[6] Because the agency's position is inconsistent with the clear regulatory language, it does
not receive deference. *Itserve*, 2020 WL 1150186, at *17 ("[E]ven evaluating the [US]CIS
interpretation under *Auer*, it is clear that it conflicts with the INS 1991 Regulation and, therefore,
receives no deference.").

## V.  CONCLUSION

For the foregoing reasons, the Court will grant Plaintiffs' Motion for Summary Judgment,

deny Defendant's Cross-Motion for Summary Judgment, and remand the case to USCIS for

reconsideration consistent with this Opinion.[7]  Such reconsideration shall be completed in no

more than ninety days.  An order consistent with this Memorandum Opinion is separately and

contemporaneously issued.


Dated:  June 12, 2020                                                    RUDOLPH CONTRERAS
                                                                        United States District Judge

---

[7] The Court notes that USCIS may consider an additional matter on remand: whether the underlying basis for the petition—Mr. Krishnamurthy's pending application for permanent residency—still allows for a one-year extension of his H-1B visa.  If the pending application has since resulted in a final decision, Mr. Krishnamurthy may not be entitled to a one-year extension beyond the statutory cap.  *See* 8 C.F.R. § 214.2(h)(13)(iii)(D).